UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCHENKER AG,

Plaintiff,

v.

SOCIÉTÉ AIR FRANCE, KONINKLIJKE
LUCHTVAART MAATSCHAPPIJ N.V.,
MARTINAIR HOLLAND N.V., CARGOLUX
AIRLINES INTERNATIONAL S.A., NIPPON
CARGO AIRLINES CO., LTD., ALL NIPPON
AIRWAYS CO., LTD., QANTAS AIRWAYS
LIMITED, and SAS CARGO GROUP A/S,

Defendants.

Case No. 14-CV-04711 (JG) (VVP)

**MEMORANDUM OF LAW IN SUPPORT OF
CERTAIN DEFENDANTS' MOTION TO DISMISS**

Dated:  January 9, 2015

Ankur Kapoor
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
212.350.2700 (telephone)
212.350.2701 (facsimile)
akapoor@constantinecannon.com

Charles J. Simpson, Jr.
ZUCKERT, SCOUTT & RASENBERGER,
L.L.P.
888 17th Street NW, Suite 700
Washington, D.C. 20006
202.298.8660 (telephone)
202.342.0683 (facsimile)
cjsimpson@zsrlaw.com

*Counsel for All Nippon Airways Co., Ltd.*

Heather Lamberg-Kafele
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue NW, Suite 900
Washington, D.C. 20004
202.508.8000 (telephone)
202.508.8100 (facsimile)
hkafele@shearman.com

K. Mallory Brennan
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
212.848.4000 (telephone)
212.848.7179 (facsimile)
mallory.brennan@shearman.com

*Counsel for Cargolux Airlines International
S.A.*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 1

ARGUMENT ............................................................................................................. 3

   I.   Legal Standard for the Application of *Forum Non Conveniens* ........................ 3

   II.   Schenker's Choice of Forum in the United States is Entitled to Very Little Deference .... 4

      A.   Schenker Is a Foreign Corporation..................................................................... 5

      B.   Schenker Is Forum Shopping .............................................................................. 6

   III.   Germany Is an Adequate Alternative Forum ................................................... 8

   IV.   Private and Public Interests Counsel that this Case Should Not Be Heard in the United States ........................................................................................................ 10

      A.   Private Interests Favoring Hearing the Case in Germany ............................. 10

          1.   Access to Evidence and Witnesses; Cost................................................. 11

          2.   Availability of Compulsory Process for Attendance of Unwilling Witnesses ....... 14

      B.   Public Interests Favoring Hearing the Case in Germany ............................... 17

CONCLUSION........................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*,
    No. 00-0478, 2002 WL 272408 (S.D.N.Y. Feb. 26, 2002) ....................................................... 19

*Alfadda v. Fenn*,
    159 F.3d 41 (2d Cir. 1998) ........................................................................................................ 15

*Alnwick v. European Micro Holdings, Inc.*,
    281 F. Supp. 2d 629 (E.D.N.Y. 2003) ...................................................................................... 12

*Alpine A. Asset Mgt. AG v. Comstock*,
    552 F. Supp. 2d 1268 (D. Kan. 2008) ...................................................................................... 15

*Argus Media Ltd. v. Tradition Fin. Services Inc.*,
    No. 09-7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ..................................................... 19

*Barnsdale Cartel Damage Solutions AG v Lufthansa Cargo AG et. al.*, Regional Court of
    Cologne (*Landgericht Köln*),
    31st Civil Court of Law (Case Ref. No. 31 O 555/13) .............................................................. 3

*Baumgart v. Fairchild Aircraft Corp.*,
    981 F.2d 824 (5th Cir. 1993) ............................................................................................ 12, 19

*BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*,
    546 F. Supp. 2d 437 (S.D. Tex. 2008) ....................................................................... 12, 15, 16

*BlackRock, Inc. v. Schroders PLC*,
    No. 07-3183, 2007 WL 1573933 (S.D.N.Y. May 30, 2007) ............................................ 14, 15

*Broad. Rights Intern. Corp. v. Societe du Tour de France, S.A.R.L.*,
    675 F. Supp. 1439 (S.D.N.Y. 1987) .......................................................................................... 6

*Bundesgerichtshof (German Federal Supreme Court, judgment dated 28 June 2011, case
    reference no KZR 75/10 (published in NJW 2012, 928)* .......................................................... 8

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
    155 F.3d 603 (2d Cir. 1998) ........................................................................ ……3, 6, 9

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
    370 F.3d 234 (2d Cir. 2004) ...................................................................................................... 9

*Chirag v. MT Marida Marguerite Schiffahrts,*
  983 F. Supp. 2d 188 (D. Conn. 2013) ....................................................... 9

*DiRienzo v. Philip Services Corp.,*
  294 F.3d 21 (2d Cir. 2002) ........................................................ 5, 11, 15

*Erausquin v. Notz, Stucki Mgt. (Bermuda) Ltd.,*
  806 F. Supp. 2d 712 (S.D.N.Y. 2011) ...................................................... 13

*Fagan v. Deutsche Bundesbank,*
  438 F. Supp. 2d 376 (S.D.N.Y. 2006) .................................................... 8, 14

*Faurecia Exhaust Sys., Inc. v. Walker,*
  464 F. Supp. 2d 700 (N.D. Ohio 2006) ...................................................... 6

*Ford v. Brown,*
  319 F.3d 1302 (11th Cir. 2003) ........................................................... 10

*Forsythe v. Saudi Arabian Airlines Corp.,*
  885 F.2d 285 (5th Cir. 1989) ............................................................. 17

*Geier v. Omniglow Corp.,*
  357 Fed. Appx. 377 (2d Cir. 2009) ......................................................... 4

*Gilstrap v. Radianz Ltd.,*
  233 Fed. Appx. 83 (2d Cir. 2007) ......................................................... 18

*Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.,*
  No. 1-13-2327, 2014 WL 3735919 (Ill. App. July 28, 2014) .................................. 16

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ...................................................................... 10

*In re Air Cargo Ship. Services Antitrust Litig.,*
  No. 06-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ................................. 9, 11

*In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006,*
  574 F. Supp. 2d 272 (E.D.N.Y. 2008) .................................................. 8, 9, 19

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,*
  311 F.3d 488 (2d Cir. 2002) .............................................................. 18

*In re Ski Train Fire in Kaprun Austria on November 11, 2000,*
  499 F. Supp. 2d 437 (S.D.N.Y. 2007) ....................................................... 9

*In re TFT-LCD Antitrust Litigation*,
    787 F. Supp. 2d 1036 (N.D. Cal. 2011) .................................................. 5

*Iragorri v. United Tech. Corp.*,
    274 F.3d 65 (2d Cir. 2001) .................................................. 3, 4, 6, 15

*Kirch v. Liberty Media Corp.*,
    No. 04-667, 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ........................ 9

*Kisano Trade & Invest Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013) .................................................. 7

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2nd Cir.1991) .................................................. 5

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
    841 F. Supp. 2d 769 (S.D.N.Y. 2012) .................................................. 15

*Lust v. Nederlandse Programma Stichting*,
    501 Fed. Appx. 13 (2d Cir. 2012) .................................................. 18

*McLellan v. Am. Eurocopter, Inc.*,
    26 F. Supp. 2d 947 (S.D. Tex. 1998) .................................................. 4

*Medisim Ltd. v. BestMed LLC*,
    No. 10-2463, 2010 WL 2697073 (S.D.N.Y. July 7, 2010) ...................... 14

*Munsell v. La Brasserie Molson Du Quebec Limitee*,
    618 F. Supp. 1383 (E.D.N.Y. 1985) .................................................. 17

*Murray v. British Broad. Corp.*,
    81 F.3d 287 (2d Cir. 1996) .................................................. 17

*Nafziger v. McDermott Int'l, Inc.*,
    467 F.3d 514 (6th Cir. 2006) .................................................. 5

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
    416 F.3d at 155 (2d Cir. 2005) .................................................. 7

*Palm Bay Intern., Inc. v. Marchesi Di Barolo S.P.A.*,
    659 F. Supp. 2d 407 (E.D.N.Y. 2009) .................................................. 3

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................. 4, 5

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003) ................................................................. 8, 10

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
    No. 11-5227, 2012 WL 2995199 (D. N.J. July 23, 2012) ....................... 15

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ..................................................... 1

*Republic of Colombia v. Diaego N.A., Inc.*,
    531 F. Supp. 2d 365 (E.D.N.Y. 2007) ....................................... 11, 12, 13

*S.E.C. v. Sandifur*,
    No. 05-1631, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ......................................... 15,16

*Seguros Comercial Americas S.A. De C.V. v. Am. Pres. Lines, Ltd.*,
    933 F. Supp. 1301 (S.D. Tex. 1996) ..................................................... 16

*USHA Holdings, LLC v. Fran. India Holdings Ltd.*,
    11 F. Supp. 3d 244 (E.D.N.Y. 2014) ................................................... 19

*Van Schijndel v. Boeing Co.*,
    434 F. Supp. 2d 766 (C.D. Cal. 2006) ................................................. 10

*Vivendi S.A. v. T-Mobile USA, Inc.*,
    No. 06-1524, 2008 WL 2345283 (W.D. Wash. June 5, 2008) ................ 14

**Statutes & Rules**

28 U.S.C. §1782 .................................................................................... 11

Federal Rule of Evidence 201(b) ............................................................. 2

**Other Authorities**

Basil Markesinis, Michael Coester, Guido Alpa & Augustus Ullstein, *Compensation for Personal Injury in English, German and Italian Law* (Cambridge Univ. Press 2005) .................. 7

Declaration of Emese Bekessy .......................................................... 2, 13

Declaration of Takahito Hokimoto ................................................... 2, 13

Deutsche Bahn 2013 Annual Report,
http://www.deutschebahn.com/file/6806228/data/2013_dbgroup.pdf .................................. 2, 5, 8

http://globalcompetitionreview.com/reviews/62/sections/210/chapters/2490/germany-private-antitrust-litigation/................................................................................................. 7

http://globalcompetitionreview.com/know-how/topics/72/jurisdictions/17/netherlands/ .......... 10

http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/................................................................................................................ 6

Jens Dammann & Henry Hansmann, *Globalizing Commercial Litigation*,
94 Cornell L. Rev. 1 (2008) ................................................................................... 16

Joni Hersch & W. Kip Viscusi, *Punitive Damages: How Judges and Juries Perform*,
33 J. Leg. Stud. 1 (2004) ......................................................................................... 7

Kevin M. Clermont, *Trial by Jury or Judge: Transcending Empiricism*,
77 Cornell L. Rev. 1124 (1992) .............................................................................. 7

Mary M. Squyres and Nanette Norton,
3 Trademark Prac. Throughout the World ............................................................. 16

Note: *Reassessment of International Application of Antitrust Laws: Blocking Statutes, Balancing Tests, and Treble Damages*,
50 LAW & CONTEMP. PROBS. 197 (1987)......................................................... 8

Preparation of Letters Rogatory, http://travel.state.gov/content/travel/english/legal-considerations/judicial/obtaining-evidence/preparation-letters-rogatory.html ........................ 16

Defendants All Nippon Airways Co., Ltd. ("ANA") and Cargolux Airlines International S.A. ("Cargolux") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by Schenker AG ("Schenker" or "Plaintiff") in the above-captioned action ("Complaint" or "Compl.") on *forum non conveniens* grounds.

## INTRODUCTION

The plaintiff in this case is a German company owned by the German government, many of the defendants and key non-parties are European companies based in Europe, and the majority of the evidence and likely witnesses are in Europe.  This case should be heard in Europe, which is the center of gravity of this matter and far more convenient for the parties collectively.

Plaintiff's own conduct confirms as much.  A Schenker affiliate has sued several of the same defendants on substantively identical allegations in Germany.  According to the press release issued by Schenker's parent company about these parallel actions, the possibility of treble damages under the Sherman Act – which are unavailable in Schenker's home forum – motivated it to sue in the United States, despite having already filed a duplicative action in Germany.  Case law clearly counsels that a foreign plaintiff's choosing to sue in the United States because of the availability of treble damages suggests forum shopping, and further supports dismissal on the grounds of *forum non conveniens*.

## FACTUAL BACKGROUND

Schenker is a German corporation headquartered in Germany (Compl. ¶ 16), and is owned and controlled by the Federal Republic of Germany, through Deutsche Bahn, the German national railway.  *See, e.g., Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 147 (S.D.N.Y.

2004) ("Plaintiffs concede that Deutsche Bahn is an instrumentality of the Republic of Germany."); Deutsche Bahn 2013 Annual Report, at 77 & 283, http://www.deutschebahn.com/file/6806228/data/2013_dbgroup.pdf (identifying the Federal Republic of Germany as the "owner" of Deutsche Bahn, and stating that Deutsche Bahn owns 100% of "Schenker Aktiengesellschaft," which is the same as Schenker AG).[1]

All of the remaining defendants in this action are foreign entities and most are based in Europe: France (Air France), the Netherlands (KLM, Martinair), Luxembourg (Cargolux), Australia (Qantas), and Japan (ANA).  (Compl. ¶¶ 17-19, 21-25).  All of the defendants have offices within Germany and transport cargo to and from Germany.  (*See* Declaration of Takahito Hokimoto ("Hokimoto Decl."), ¶ 4; Declaration of Emese Bekessy ("Bekessy Decl."), ¶ 2-3). None of the defendants or the alleged co-conspirators is based in the United States.  (*See* Compl. ¶ 12).

Much of the focus of the Complaint is on conduct connected to Germany.  Not only is Schenker a German entity owned by the German government, but the Complaint also alleges that the central figure in the alleged conspiracy is Lufthansa Cargo AG ("Lufthansa"), the German flag carrier headquartered in Germany,[2] and that the alleged conspiracy began in Frankfurt, Germany, at a meeting organized by Lufthansa.  (*See* Compl. ¶¶ 71-72).

Given the European focus of this case, it is not surprising that there are at least two substantively similar lawsuits pending in Europe.  In December 2013, DB Barnsdale AG (like Schenker, a subsidiary of Deutsche Bahn AG) instituted litigation in Germany that, like here,

---

[1] The Court may take judicial notice of this fact.  *See* Fed. R. Evid. 201(b) (judicial notice appropriately taken when facts are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[2] There are no fewer than 365 individual references in the Complaint to Lufthansa or Lufthansa Cargo.

alleges claims based on supposed air cargo cartel conduct and, like here, purports to enforce claims assigned, inter alia, by the Schenker group. *See Barnsdale Cartel Damage Solutions AG v Lufthansa Cargo AG et. al.*, Regional Court of Cologne (*Landgericht Köln),* 31st Civil Court of Law (Case Ref. No. 31 O 555/13).   The Schenker-Germany litigation was initially filed against Lufthansa and Qantas and later expanded to name British Airways, Singapore Airlines, Swiss Airlines, Cargolux, SAS, Air Canada, Cathay Pacific, Japan Airlines, and LAN Airlines as defendants.  A substantively related case is also currently pending in the Netherlands; in April, 2011, Air France-KLM commenced a declaratory judgment action against Schenker and certain of its affiliates in the Netherlands based on the same underlying allegations in this suit.

## ARGUMENT

### I.    Legal Standard for the Application of *Forum Non Conveniens*

"[A]ntitrust suits are subject to dismissal under the *forum non conveniens* doctrine." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998). The Second Circuit and this Court use a three-step analysis to determine whether to dismiss on *forum non conveniens* grounds:

> First, a court must determine the degree of deference owed to a plaintiff's choice of forum.  Second, a court must ask whether there is an adequate alternative forum.  If an adequate alternative forum exists, a court must balance the private and public interests at stake to determine if the defendant has overcome the deference owed to the plaintiff's choice of forum.

*Palm Bay Intern., Inc. v. Marchesi Di Barolo S.P.A.*, 659 F. Supp. 2d 407, 410 (E.D.N.Y. 2009) (citing *Iragorri v. United Tech. Corp.,* 274 F.3d 65, 70-75 (2d Cir. 2001)).

Here, all three steps in the *forum non conveniens* analysis favor the dismissal of this case so that it may be heard in Germany, rather than in the United States.

## II.      Schenker's Choice of Forum in the United States is Entitled to Very Little Deference

Schenker's choice of forum is entitled to very little – if any – deference because Schenker

is a foreign corporation engaged in overt forum shopping.  *See Geier v. Omniglow Corp.*, 357

Fed. Appx. 377, 379-80 (2d Cir. 2009) ("The [District] Court properly found that plaintiffs'

choice of forum was entitled to 'very little deference' based on (1) the fact that they chose to

litigate in a foreign forum and (2) the 'strong inference that forum shopping motivated' their

decision to sue in the United States.").  In such circumstances, the traditional presumption in

favor of plaintiff's chosen forum "is not dispositive" and "may be overcome," for "the degree of

deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on

several relevant considerations." *Iragorri*, 274 F.3d at 71.  Under *Iragorri*:

> [W]hen a foreign plaintiff chooses a U.S. forum, it is "much less
> reasonable" to presume that the choice was made for convenience.
> In such circumstances, a plausible likelihood exists that the
> selection was made for forum-shopping reasons. . . .  Even if the
> U.S. district was not chosen for forum-shopping reasons, there is
> nonetheless little reason to assume that it is convenient for a
> foreign plaintiff.
>
> * * *
>
> [T]he more it appears that the plaintiff's choice of a U.S. forum
> was motivated by forum-shopping reasons – such as [i] attempts to
> win a tactical advantage resulting from local laws that favor the
> plaintiff's case, [ii] the habitual generosity of juries in the United
> States or in the forum district, [iii] the plaintiff's popularity or the
> defendant's unpopularity in the region, or [iv] the inconvenience
> and expense to the defendant resulting from litigation in that forum
> – the less deference the plaintiff's choice commands . . . .

*Id.* at 71-72 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256-56 (1981)) (footnotes omitted).[3]

### A.    Schenker Is a Foreign Corporation

It is undisputed that Schenker is a foreign corporation; as such, its choice of forum deserves less deference than normal.  *See Piper Aircraft*, 454 U.S. at 236 (choice of forum "deserves less deference" when the plaintiff is foreign).

The Complaint also asserts that Schenker is bringing claims "as assignee of all relevant claims of its affiliated entities."  (Compl. ¶ 1).  But the Complaint does not specify which of the many Schenker affiliates has assigned claims to Schenker (or even the nationalities of those unnamed affiliates),[4] nor does it allege any facts about Schenker's relationship with its affiliates.  Thus, Schenker cannot rely on its unnamed affiliates to defeat Defendants' motion.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2nd Cir.1991) (in considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to facts alleged in the complaint).  More specifically, a party cannot assert claims on behalf of affiliates without identifying who they are by name.  *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1041 (N.D. Cal. 2011) (requiring plaintiffs to identify the assignors on whose behalf they were asserting claims); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 517 (6th Cir. 2006)

---

[3] The degree of deference warranted also considers the convenience and availability of the witnesses, which are discussed further in Section IV, *infra*.  *See, e.g.*, *McLellan v. Am. Eurocopter, Inc.*, 26 F. Supp. 2d 947, 951 (S.D. Tex. 1998) (recognizing "the significant overlap of factors" in a *forum non conveniens* analysis).  These considerations further tip the balance in favor of affording very little deference to Schenker's choice of forum.

[4] Schenker has at least 500 affiliated entities incorporated throughout the world, including in numerous European countries such as Germany, France, the Netherlands, Sweden, Denmark, the United Kingdom, and Luxembourg. *See* Deutsche Bahn 2013 Annual Report,, *supra*, at 275-87 (listing affiliates of "DB Schenker Logistics," the parent company of Schenker AG).

(affirming dismissal of complaint for failure to "specify which individual plaintiffs were bringing the respective causes of action").

Furthermore, as the only named plaintiff, *see DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002) (focusing on the nationality of the "named plaintiffs" in a *foreign non conveniens* analysis), Schenker is the "real party in interest," *see Piper*, 454 U.S. at 236 (focusing on the nationality of the "real parties of interest" in determining the level of deference afforded to plaintiff's choice of forum); *Capital Currency*, 155 F.3d at 612 ("Because the real parties in interest are foreign corporations, there is not a strong presumption in favor of the plaintiffs' choice of forum."), and the nationalities of Schenker's affiliates should not factor into a *forum non conveniens* analysis.[5]

### B.    Schenker Is Forum Shopping

"[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands," and where a foreign plaintiff sues in the United States, "a plausible likelihood exists that the selection was made for forum-shopping reasons[.]" *Iragorri*, 274 F.3d at 71.  The Court need not look far for direct evidence of forum shopping here:   a Deutsche Bahn press release announcing the commencement of the instant litigation touted that "<u>Treble Damages</u> could increase the total risks for sued Airlines up to more than $3.3 billion."   Press Release: *DB seeks estimated damages of $2.5 billion in lawsuit against airlines in air cargo cartel*,

---

[5] Although the concept of the "real party in interest" traditionally arises "where the real party in interest is a foreigner and the plaintiff is a United States citizen solely by virtue of its place of incorporation," *Broad. Rights Intern. Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1446 (S.D.N.Y. 1987), such as with a shell corporation, at least one court has found broader application.  *See Faurecia Exhaust Sys. Inc. v. Walker*, 464 F. Supp. 2d 700, 710 (N.D. Ohio 2006).  In *Faurecia*, where plaintiffs were (i) a foreign corporation and (ii) its genuine, *i.e.*, non-shell, American subsidiary, the court ruled that the real party in interest was the foreign corporation because the majority of the defendant's interactions were with the foreign corporation.  *Id.*

http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (last accessed Dec. 23, 2014) (emphasis added).  That Schenker voluntarily carved out claims based on U.S.-route cargo services from the global antitrust suit it filed before this case, and that Schenker is willing to litigate duplicative judicial proceedings in Germany and the United States, confirms Schenker's forum shopping in the United States.

Schenker may well perceive such strategic advantages in filing suit in the United States. While treble damages are recoverable for violations of Section 1 of the Sherman Act, the law in Germany only allows for "compensatory damages," and "[n]o punitive or exemplary damages are available."  *See*  Germany:  Private  Antitrust  Litigation, http://globalcompetitionreview.com/reviews/62/sections/210/chapters/2490/germany-private-antitrust-litigation/ (last accessed Dec. 18, 2014).  Additionally, antitrust damages in Germany are determined only by a judge, whereas in the United States, Schenker has the option of a jury trial, and the benefit of the habitual generosity of jury-awarded damages.[6]

Courts have long recognized that the possibility of treble damages or other strategic considerations "might [make] the choice of a United States forum attractive" to foreign defendants, and that this suggests forum shopping.  *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (noting the possibility of RICO treble damages as suggesting forum shopping); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 877 (3d Cir. 2013) ("[I]t is at least worth noting that the possibility of a treble damages" in the United States, coupled with the unavailability of treble damages in plaintiffs' home forum, may

---

[6] *Compare* Basil Markesinis, Michael Coester, Guido Alpa & Augustus Ullstein, *Compensation for Personal Injury in English, German and Italian Law*, 17 (Cambridge Univ. Press 2005) ("The level of awards is influenced by the fact that there is no jury in civil proceedings in Germany.  The amount of compensation is assessed by the judge[.]"), *with* Kevin M. Clermont, *Trial by Jury or Judge: Transcending Empiricism*, 77 Cornell L. Rev. 1124, 1127 (1992) ("Juries are believed to find liability when judges would not" and "to grant higher awards than judges[.]") *and* Joni Hersch & W. Kip Viscusi, *Punitive Damages: How Judges and Juries Perform*, 33 J. Leg. Stud. 1, 2-3 (2004) ("We also find that juries award greater compensatory damages than do judges for any given case type.").

"motivate[] plaintiffs to choose a United States forum.").  This does not, however, make the United States an appropriate forum for Schenker's claims.

## III.      Germany Is an Adequate Alternative Forum

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003); *In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006*, 574 F. Supp. 2d 272, 282 (E.D.N.Y. 2008) ("'The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in rare circumstances when the remedy offered by the other forum is clearly unsatisfactory.'").

Defendants satisfy the first prong of the analysis – amenability to service – as they have offices in, and do business in, the country of Germany and, as previously noted, Schenker has already sued a number of the defendants in Germany.  Moreover, to avoid any doubt, in the event this case is dismissed in favor of Germany, ANA and Cargolux would stipulate to service of process in Germany.

Defendants also satisfy the second prong of the test – German courts would permit litigation of the subject matter in dispute.  Germany permits litigation of competition law claims, and a number of high-profile cartel actions have been litigated in German courts.  *See*, *e.g.*, *Bundesgerichtshof (German Federal Supreme Court, judgment dated 28 June 2011, case reference no KZR 75/10 (published in NJW 2012) 928)*; Deutsche Bahn 2013 Annual Report, *supra*, at 170 (describing civil antitrust lawsuit filed by Deutsche Bahn in Frankfurt, Germany in connection with rail cartel proceedings).

In fact, it has been said that Germany is one of only a few countries which "vigorously enforce[s its] competition laws against conduct outside [its] borders."  Note: *Reassessment of*

*International Application of Antitrust Laws: Blocking Statutes, Balancing Tests, and Treble Damages*, 50 LAW & CONTEMP. PROBS. 197, 199 (1987).

Indeed, "numerous courts have found Germany to be an adequate alternative forum" in a variety of cases, *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006), including actions for negligence and fraud.  *See Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 197 (D. Conn. 2013) ("Numerous district courts within [the Second] Circuit have confirmed that German courts are available to adjudicate negligence claims and that they can do so adequately."); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004).  And Germany has been found to be adequate "despite the differences in pleading and discovery procedures" between the United States and Germany.  *Kirch v. Liberty Media Corp.*, No. 04-667, 2006 WL 3247363, at *6 (S.D.N.Y. Nov. 8, 2006).  There is absolutely no indication that Schenker is "'highly unlikely to obtain basic justice [in the foreign jurisdiction].'" *In re Air Crash*, 574 F. Supp. 2d at 283 (quoting *In re Ski Train Fire in Kaprun Austria on November 11, 2000*, 499 F. Supp. 2d 437, 443 (S.D.N.Y. 2007)).

As the Second Circuit has explained, European courts offer perfectly adequate alternative fora to adjudicate an antitrust matter, even though they provide different remedies and have different antitrust laws.  *See Capital Currency*, 155 F.3d at 609-10.  This Court has observed that "[l]itigants in European courts have . . . gone on to recover for private antitrust claims," such that "litigating private antitrust claims in European courts has only become more accessible and remunerative since *Capital Currency Exchange*."  *In re Air Cargo Ship. Servs. Antitrust Litig.*, No. 06-1775, 2008 WL 5958061, at *26 (E.D.N.Y. Sept. 26, 2008) (report and recommendation), *aff'd in relevant part,* No. 06-1775, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009).

This is particularly true in this case where Schenker has conceded that German courts offer an adequate forum for these claims by already initiating a case in Germany against several of the defendants based on the same underlying facts as this case, seeking to recover billions in damages.

## IV.   Private and Public Interests Counsel that this Case Should Not Be Heard in the United States

In considering the private and public interests, the Court should "weigh defendant's hardships if jurisdiction is retained in the forum of plaintiff's choice against plaintiff's hardships if the motion to dismiss is granted and plaintiff is forced to begin suit anew in a different forum." *Pollux*, 329 F. 3d at 75.  Both interests favor hearing the case in Europe.[7]

### A.   Private Interests Favoring Hearing the Case in Germany

The Supreme Court has said that the private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and

---

[7] Defendants Air France, KLM and Martinair ("AF-KLM") will file a separate motion to dismiss this action in favor of the Netherlands.  *See* AF-KLM Letter dated Dec. 5, 2014, Dkt. No. 33.  Cargolux also suggests that the Netherlands may be an appropriate alternative forum for the claims against Cargolux and certain other defendants in this action.  First, AF-KLM has already sued Schenker for declaratory judgment in the Netherlands based on the same underlying allegations in this suit.  "Actions pending in a foreign forum should be taken into account by courts, as the doctrine of forum non conveniens was designed in part to avoid these inconveniences." *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006).  Second, the Netherlands permits adjudication of the subject-matter of this lawsuit. *See* http://globalcompetitionreview.com/know-how/topics/72/jurisdictions/17/netherlands/ (last accessed January 9, 2015).  Third, this action could be stayed or conditionally dismissed pending a determination of whether the Netherlands court would exercise jurisdiction.  Schenker is already engaged in litigation in both the Netherlands and Germany in cases directly related to the subject matter of this lawsuit.  It would impose no inconvenience for Schenker to continue litigating this case solely in those two fora (and would be significantly more convenient for the other European defendants).

> inexpensive.  There may also be questions as to the enforceability
> of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  "Perhaps the most important 'private interest' of the litigants is access to evidence."  *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).  Here, the relevant factors, each of which cuts in favor of litigating this case in Germany, are (i) the ease of access to evidence, (ii) the availability of compulsory process for attendance of unwilling witnesses, and (iii) the cost of willing witnesses' attendance.

### 1.    Access to Evidence and Witnesses; Cost

As to the factors (i) and (iii), it should be no surprise that few, if any, of the pertinent documents and witnesses in this case are located in the United States,[8] for Schenker is a German entity, Cargolux is a Luxembourgian entity, and ANA is a Japanese entity.  Moreover, the Complaint does not allege that any co-conspirators were based in the United States.  (*See* Compl. ¶ 12).  Rather, the majority of the pertinent documents and witnesses are located in Europe, particularly Germany, which is Schenker's home forum and the location of Lufthansa, the airline that Schenker characterizes as having the most prominent role in the challenged conduct and with which Schenker "does substantially more business" than the other defendants in this case. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, Notice of Objections to Allocation of Lufthansa Settlement Fund and Intention to Appear, ECF No. 814, at 6 n.2 (E.D.N.Y. Nov. 12, 2008).

Given the centrality of Germany to the conduct challenged by Schenker and the proximity between Germany and the majority of the parties and relevant non-parties, the parties collectively will have far easier access, and at a lesser cost, to evidence and witnesses if this case

---

[8] Even if some small part of the relevant evidence were located in the United States, the parties may obtain such evidence under 28 U.S.C. §1782, which permits a district court to compel production of any "document or other thing for use in a proceeding in a foreign or international tribunal."

is litigated in Germany.  *See Republic of Colombia v. Diageo N.A. Inc.*, 531 F. Supp. 2d 365, 404

(E.D.N.Y. 2007) ("In order to most efficiently gather evidence against Defendants, it would

make sense to bring a claim in a . . . forum that is geographically proximate to Defendants'

witnesses and documents."); *DiRienzo*, 294 F.3d at 30 (analyzing the time it took for witnesses to

travel to the courthouse as part of the private-interests analysis); *Alnwick v. European Micro

Holdings, Inc.*, 281 F. Supp. 2d 629, 648 (E.D.N.Y. 2003) (focusing on the proximity of "the

most important witnesses" to the chosen forum).[9]

Several reasons support this position.  First, Defendants may seek documents and call

witnesses from Schenker in Germany in order to support their defenses.  *See Baumgart v.

Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993) (affirming trial court's *forum non

conveniens* analysis which concluded that "'the bulk of the evidence is in Germany and is more

readily accessible there'").  It will also be easier for Schenker's own employees in Germany to

appear in a local German forum rather than in the United States.

Second, the pertinent documents and witnesses of Lufthansa, a key non-party airline, are

likely located in Germany, where Lufthansa is headquartered, and it is probable that Schenker

and/or Defendants will seek those documents and call those witnesses from Lufthansa in order to

support their respective claims and defenses.  *C.f. Republic of Colombia*, 531 F. Supp. 2d at 408

("Defendants are located in Europe, and . . . some evidence and witnesses will presumably be

located there.").  Notably, the Complaint makes repeated reference to the central role played by

---

[9] In fact, "it is unclear how [New York] is a more convenient forum for [Schenker] than [Germany] when [its] principal places of business are in Germany, and [it is] already engaged in parallel litigation there."  *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F. Supp. 2d 437, 446 (S.D. Tex. 2008).

Lufthansa in the alleged conspiracy,[10] (*see*, *e.g.*, Compl. ¶ 72, alleging that Lufthansa was "one of the primary facilitators of the Cartel" who "played the lead role in monitoring Cartel prices and keeping them coordinated"), and also quotes several e-mails sent or received by Lufthansa employees located in Germany.  (Compl. ¶ 69 n.35; ¶ 85 n.56; ¶ 104 n.99; ¶ 107 n.109; ¶ 167 n.226-228; ¶ 170 n.229-234).  Lufthansa is based in Frankfurt – a transportation hub in Germany with easy access to any court where a German proceeding might be filed, yet a seven and a half hour flight to New York.

Third, many of Cargolux's relevant documents and employees that will testify are in Luxembourg City, Luxembourg (where Cargolux is headquartered).  (*See* Bekessy Decl. ¶ 3-4). "[T]he fact that evidence in Defendants' possession is already located [in a certain forum] suggests that it may be cheaper and more expeditious to litigate the dispute [t]here." *Republic of Colombia*, 531 F. Supp. 2d at 407.  Luxembourg City is approximately a 45 minute flight to any number of German airports, yet a 12 hour connecting flight to New York.  *See Erausquin v. Notz, Stucki Mgt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 727 (S.D.N.Y. 2011) ("[T]he ease and expense of transporting witnesses from Luxembourg to [Germany] will be far less burdensome than to New York.").  In the case of ANA, with one exception its relevant employees are located in Japan or other points in Asia; the one exception is a Japanese national currently on assignment in the United States.  (*See* Hokimoto Decl. ¶ 3).

Fourth, the pertinent documents and witnesses of the International Air Transport Association ("IATA") are likely located in Switzerland, where IATA has its Executive Offices, and it is probable that Schenker and/or Defendants will seek those documents and call those

---

[10] As previously stated, there are no fewer than 365 individual references in the Complaint to Lufthansa or Lufthansa Cargo.

witnesses from IATA in order to support their respective claims and defenses.  IATA is mentioned throughout the Complaint as playing a central part of the alleged conspiracy, and for organizing many meetings that formed the basis of the conspiracy in Switzerland.  (Compl. ¶¶ 52, 60, 87, 105, 164).  IATA's headquarters are in Geneva, again an easy flight to Germany but an eight hour flight to New York.

In sum, because the costs and time involved in producing witnesses and documents in Germany would be far less than producing witnesses and documents in the United States, the private factors counsel in favor of dismissal under the doctrine of *forum non conveniens*.  *See BlackRock, Inc. v. Schroders PLC*, No. 07-3183, 2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007) ("Any of the European witnesses willing to appear would need to be transported to New York. With a trial in Germany, transport of [European] witnesses would be considerably less costly, in terms of time and money, and the transport of German witnesses would, of course, not be an issue to consider."); *Vivendi S.A. v. T-Mobile USA, Inc.*, No. 06-1524, 2008 WL 2345283, at *13 (W.D. Wash. June 5, 2008) ("The court recognizes that wherever this case is held witnesses will need to travel; however, the court finds that the cost of transporting most of the witnesses within Europe and a few witnesses from the United States to Europe would be less than the cost of transporting the majority of witnesses from Europe to the west coast of the United States. This factor favors a European forum.").

## 2. Availability of Compulsory Process for Attendance of Unwilling Witnesses

As to factor (ii) of the private-interests analysis, Defendants may face the obstacle of obtaining testimony and documents in the possession of various European non-parties who may be unwilling to travel to the United States in order to participate in this case.  These non-parties include:  (i) key players Lufthansa and IATA, (ii) alleged co-conspirators based in Europe (such

as British Airways, Swiss International Air Lines, Ltd.) (Compl. ¶ 12), and (iii) an alleged

organizer of relevant meetings (Airline Cargo Council of Switzerland).  (Compl. ¶¶ 87, 105, 114,

123).  It is clear that there is no compulsory process by which a United States district court can

compel the testimony of unwilling non-party witnesses located in Germany, Switzerland,

Luxembourg, Japan, or elsewhere.  *See*, *e.g.*, *Medisim Ltd. v. BestMed LLC*, No. 10-2463, 2010

WL 2697073, at *2 (S.D.N.Y. July 7, 2010) ("American courts cannot compel unwilling foreign

witnesses to testify."); *Fagan*, 438 F. Supp. at 383 (American courts cannot compel unwilling

German witnesses to testify); *Princeton Football Partners LLC v. Football Ass'n of Ireland*, No.

11-5227, 2012 WL 2995199, at *8 (D. N.J. July 23, 2012) ("This Court lacks subpoena power

over [d]efendants and other nonparty witnesses who reside in . . . Switzerland.").

Although a United States court may issue letters rogatory to attempt to remedy that

problem, *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776

(S.D.N.Y. 2012), Germany is still better equipped to obtain the testimony of non-party witnesses.

First, a German court could compel the testimony of key witnesses located in Germany.  *See*

*BBC Chartering*, 546 F. Supp. 2d at 447 ("a [German] court may compel the attendance of

unwilling nonparty German witnesses"); *BlackRock*, 2007 WL at *9 ("Compulsory process is

available in Germany for the witnesses who are residents of Germany.").

Second, litigating this case in Europe, where many probable witnesses are located, may

make those European-based witnesses "more willing witnesses, thus obviating the need for

compelling their testimony."  *Alpine A. Asset Mgt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1281

(D. Kan. 2008); *c.f. S.E.C. v. Sandifur*, No. 05-1631, 2006 WL 3692611, at *5 (W.D. Wash. Dec.

11, 2006) ("Forcing an unwilling nonparty witness to fly 4000 miles to New York seems

excessive[.]").

15

Third, the Court of Appeals has noted the preference for live testimony over testimony obtained via letters rogatory. *See DiRienzo*, 294 F.3d at 30 (noting that "[t]he most important problem is the unavailability of process to compel unwilling third-party witnesses to appear in the United States," and stating the "preference for live testimony" over use of letters rogatory); *Iragorri*, 274 F.3d at 75 ("[L]ive testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor.") (quoting *Alfadda v. Fenn,* 159 F.3d 41, 48 (2d Cir. 1998)). Further, "letters rogatory – if answered – 'require substantial deposition testimony. This process is time consuming and, if the parties fail to cooperate, ineffective.'" *BBC Chartering*, 546 F. Supp. 2d at 447 (quoting *Seguros Comercial Americas S.A. De C.V. v. Am. Pres. Lines, Ltd.*, 933 F. Supp. 1301, 1312 (S.D. Tex. 1996)).[11]

Fourth, as one federal district court has observed,

> it seems . . . incredibly burdensome to engage in that lengthy process [of letters rogatory] when Plaintiffs could bring their claim in a country where more witnesses reside and where the parties could take advantage of European Commission Regulation 1206/2001 the purpose of which is to simplify and accelerate the taking of evidence.

*Sandifur*, 2006 WL at *13; *see also Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, No. 1-13-2327, 2014 WL 3735919, at *10 (Ill. App. July 28, 2014) ("The European Council Regulation . . . provides that the direct taking of evidence be secured by 'the most rapid means possible' including by teleconference and videoconference or by sending a representative of the requesting state to the witness' location in the European Union preferably within 90 days."). One treatise states, in regard to Regulation 1206/2001:

---

[11] "Execution of letters rogatory may take a year or more. Letters rogatory are customarily transmitted via diplomatic channels, a time-consuming means of transmission." Preparation of Letters Rogatory, http://travel.state.gov/content/travel/english/legal-considerations/judicial/obtaining-evidence/preparation-letters-rogatory.html (last accessed Dec. 23, 2014).

> As of 2004, European Commission's Council Reg. No. 1206/2001 supplanted the Hague Convention within the European Union. The regulation applies among courts of the European Union. . . . [T]he regulation does not change the rules of evidence within each member states; it merely establishes a means for two states to work together to overcome differences between rules of evidence.

Mary M. Squyres and Nanette Norton, 3 Trademark Prac. Throughout the World § 24:40; *see also* Jens Dammann & Henry Hansmann, *Globalizing Commercial Litigation*, 94 Cornell L. Rev. 1, 23 n.60 (2008) ("According to that regulation, a court in one member state (the requesting court) can request the court of another member state to take evidence, and the requested court cannot, as a general rule, refuse to honor that request.") (citations omitted).  Here, where the majority of the entities and individuals involved are based in Europe, the availability of Regulation 1206/2001 would ease the obtaining of evidence and testimony.

### B.    Public Interests Favoring Hearing the Case in Germany

The Court of Appeals has said:

> The public interest factors . . . include:   the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (citations omitted).   Here, the interest in resolving local controversies locally, *i.e.*, in Germany – which "is likely the most important public interest factor," *Munsell v. La Brasserie Molson Du Quebec Limitee*, 618 F. Supp. 1383, 1387 (E.D.N.Y. 1985) – coupled with the burden on an American jury to decide a European dispute, is paramount, and counsels that Germany has a far greater interest in litigating this case than the United States does.

First, Germany has a strong interest in resolving a dispute brought by a German company against mostly European defendants concerning an alleged conspiracy affecting European commerce in which another German company (Lufthansa) is alleged to have been a major participant.  Germany's interest is particularly strong given that one of the primary litigants is owned by the German government.  *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 291 (5th Cir. 1989) (the fact that litigant Saudi Arabian Airlines was "wholly owned by the Saudi Arabian government" counseled that "Saudi Arabia appears to have a greater interest in resolving this dispute than does the United States").

Second, Germany has a strong interest in addressing an alleged conspiracy that was mostly hatched and carried out in Europe, and particularly in Germany.  According to the Complaint, the alleged conspiracy began in Frankfurt at a meeting organized by Lufthansa, (*see* Compl. ¶ 71), and the vast majority of alleged meetings and communications in furtherance of the alleged conspiracy took place in Europe, specifically Germany and Switzerland, and Asia, and via phone calls and e-mails between employees located in Europe and Asia.  While a single paragraph in the Complaint refers to a few meetings that took place at JFK Airport, (*see* Compl. ¶ 69), such meetings only involved a few of the defendants.  *See Gilstrap v. Radianz Ltd.*, 233 Fed. Appx. 83, 85 (2d Cir. 2007) ("In focusing on the precise issues for *forum non conveniens* purpose . . . a court must determine all the issues that will be tried, not simply the ones that will aid plaintiffs in retaining a specific forum.").

Third, none of the parties is American, and the United States' interest in litigating the case is "weakest in the context of a dispute between a foreign national, who is not a United States resident, and a foreign corporation with minimal presence here[.]"  *Lust v. Nederlandse Programma Stichting*, 501 Fed. Appx. 13, 15 (2d Cir. 2012) (footnote omitted).  This case is

18

similar to *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002), in which the Court of Appeals, in affirming the district court's dismissal on grounds of *forum non conveniens*, stated:

> The case before us simply has no connection with the United States . . . . Petitioner is a citizen of Monaco, and the respondents are the State of Ukraine and a citizen of that nation. The parties to the contract giving rise to the arbitration award are citizens of Russia and Ukraine, respectively.

*Id.* at 500.

Fourth, this case by no means should be considered a "local" American dispute. In fact, here, as in *In re Air Crash*, "there can be no question that overseas events were the primary catalyst for this litigation brought by foreign plaintiffs. Nor can there be any question that the U.S. interest in this litigation pales in comparison to" Germany's. 574 F. Supp. 2d at 288. Thus, "Germany is the focal point," *Baumgart*, 981 F.2d at 837, or "center of gravity" of this case, *USHA Holdings, LLC v. Fran. India Holdings Ltd.*, 11 F. Supp. 3d 244, 275 (E.D.N.Y. 2014), and has a greater interest in resolving this matter.

Finally, "[n]umerous courts have found that the public interest factors often favor dismissal where there is a parallel litigation arising out of the same or similar facts already pending in the foreign jurisdiction." *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09-7966, 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009). Schenker's existing German action against 11 airlines – including three of the original defendants in this action (Qantas, Cargolux, and SAS) – counsels strongly in favor of dismissal of this action. The testimony and evidence that will be taken in the German action likely will overlap substantially with the discovery that would be taken in this action if it proceeds here. There is no reason to burden the parties with duplicative discovery and proceedings on two continents, or to burden the Court with managing

that discovery, when it will already take place in another forum anyway.  *See Abert Trading, Inc. v. Kipling Belgium N.V/S.A.*, No. 00-0478, 2002 WL 272408, at *6 (S.D.N.Y. Feb. 26, 2002) ("A suit is currently pending . . . in Belgium covering essentially the same dispute between the parties.  The interests of judicial economy would best be served by resolving issues in this case with the Belgian case.").

## CONCLUSION

For the above-stated reasons, the Court should dismiss the Complaint on the grounds of *forum non conveniens*.

Dated:  January 9, 2015                                     Respectfully submitted,


                                                             */s/ Ankur Kapoor*
                                                             Ankur Kapoor
                                                             CONSTANTINE CANNON LLP
                                                             335 Madison Avenue, 9th Floor
                                                             New York, NY 10017
                                                             212.350.2700 (telephone)
                                                             212.350.2701 (facsimile)
                                                             akapoor@constantinecannon.com

                                                             Charles J. Simpson, Jr.
                                                             ZUCKERT, SCOUTT & RASENBERGER,
                                                             L.L.P.
                                                             888 17th Street NW, Suite 700
                                                             Washington, D.C. 20006
                                                             202.298.8660 (telephone)
                                                             202.342.0683 (facsimile)
                                                             cjsimpson@zsrlaw.com

                                                             *Counsel for All Nippon Airways Co., Ltd.*


                                                             */s/ Heather Lamberg-Kafele*
                                                             Heather Lamberg-Kafele
                                                             SHEARMAN & STERLING LLP
                                                             801 Pennsylvania Avenue NW, Suite 900
                                                             Washington, D.C. 20004
                                                             202.508.8000 (telephone)

20

202.508.8100 (facsimile)
hkafele@shearman.com

K. Mallory Brennan
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
212.848.4000 (telephone)
212.848.7179 (facsimile)
mallory.brennan@shearman.com

*Counsel for Cargolux Airlines International
S.A.*