UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCHENKER AG,

                    Plaintiff,

        v.

SOCIÉTÉ AIR FRANCE, KONINKLIJKE
LUCHTVAART MAATSCHAPPIJ N.V.,
MARTINAIR HOLLAND N.V., CARGOLUX
AIRLINES INTERNATIONAL S.A., NIPPON
CARGO AIRLINES CO., LTD., ALL NIPPON
AIRWAYS CO., LTD., QANTAS AIRWAYS
LIMITED, and SAS CARGO GROUP A/S.

                    Defendants.

Case No. 14-CV-04711 (JG) (VVP)

 

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT QANTAS AIRWAYS LIMITED'S MOTION TO DISMISS
BASED ON THE STATUTE OF LIMITATIONS**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL & FACTUAL BACKGROUND ....................................................2

III.  ARGUMENT ........................................................................................................4

    A.  The Court May Consider Press Coverage and Other Public Documents to Decide If Schenker Was On Inquiry Notice ...................................................4

    B.  Schenker's Claims Were Only Tolled From February 8, 2007 Until May 24, 2011.......................................................................................................5

    C.  Schenker Cannot Plead Any Fraudulent Concealment Beyond February 15, 2006........................................................................................................7

        1.  Schenker Has Not Adequately Pled Due Diligence .........................................8

        2.  Schenker Has Not Satisfied the Other Requirements of Fraudulent Concealment ...........................................................................................9

            a.  Schenker Has Not Specifically Pled How the Alleged Conspiracy Was Concealed From It Beyond February 15, 2006...............................10

            b.  Schenker Has Not Pled That It Was Ignorant of Its Claims Prior to April 24, 2006 ......................................................................................11

            c.  Schenker Cannot Show That Its Ignorance Was Not Attributable to Its Lack of Diligence...........................................................................12

    D.  Schenker Can Only Recover Damages For Claims That Arose Within The Four-Year Period Before the Complaint Was Filed. ....................................20

        1.  Schenker Has Not Alleged a New Overt Act in Furtherance of the Conspiracy Beyond April 24, 2006 ............................................................20

        2.  Schenker Cannot Use Post-April 24, 2006 Allegations As a Basis to Recover Damages Based On Earlier Acts .....................................................24

IV.   CONCLUSION ...................................................................................................24

i

**TABLE OF AUTHORITIES**

## CASES

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)....................................................6

*Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977) ...........................................................6

*Bankers Trust Co. v. Rhoades*, 859 F. 2d 1096 (2d Cir. 1988)....................................12

*Bastien v. Samuels*, No 14-CV-1561, 2014 U.S. Dist. LEXIS 147347 (E.D.N.Y. Oct. 15, 2014) ....................................................................................................................4

*Benchmark Export Servs. v. China Airlines Ltd.*, No. 10-CV-639 (JG) (VVP)

(E.D.N.Y. Sept. 22, 2010)..............................................................5, 11, 14, 22

*Ca. Pub. Emples. Ret. Sys. v. Caboto-Gruppo Intesa BCI (In re WorldCom Sec. Litig.)*, 496 F.3d 245 (2d Cir. 2007)......................................................................6

*Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 996 F.2d 537 (2d Cir. 1993)..........................................................................................22

*Chambers v. Time Warner, Inc.*, 282 F. 3d 147 (2d Cir. 2002) ....................................23

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987) ........................................................6

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014)................5, 9

*Glonti v. Stevenson*, No. 08-CV-8960, 2009 U.S. Dist. LEXIS 13857 (S.D.N.Y. Feb. 6, 2009) ........................................................................................................12

*Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 499, (S.D.N.Y. 2009) .................8, 13, 24

*Hopkinson v. Estate of Siegal*, No. 10 CV 1743, 2011 U.S. Dist. LEXIS 39966 (S.D.N.Y. Apr. 11, 2011) ..............................................................................................11

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003) ............
................................................................................................................10, 21, 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................................................................13

*In re Merrill Lynch Ltd. Pshps. Litig.*, 7 F. Supp. 2d 256 (S.D.N.Y. 1997) ..................11

*In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000)................8

*Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2013 U.S. Dist. LEXIS 103698 (E.D.N.Y. July 24, 2013) ....................................................................................6

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .........................................................24

*Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105 (S.D.N.Y. 2011)..............................4

*Lanza v. Merrill Lynch & Co.*, 154 F.3d 56 (2d Cir. 1998)..........................................8

*Masters v. Wilhemina Model Agency, Inc.*, No. 02-CV-4911, 2003 WL 1990262, (S.D.N.Y. Apr. 29, 2003)....................................................................................7

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) ..................................9, 12, 20

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987) ................................................................................................................................11

*Simon-Whelan v. Andy Warhol Found. for the Visual Arts*, No. 07-CV-6423, 2009 U.S. Dist. LEXIS 44242 (S.D.N.Y. May 26, 2009).........................................................................7

*Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406 (2d Cir. 2008) ................................................4

*Ulrich v. Moody's Corp.*, No. 13-CV-0008, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. Mar. 31, 2014)..................................................................................................................21, 24

*United States v. Brown*, 740 F. 3d 145 (3d Cir. 2014)....................................................................1

*Vitale v. Marlborough Gallery*, No. 93-CV-6276, 1994 U.S. Dist. LEXIS 9006 (S.D.N.Y. July 5, 1994)..................................................................................................................21

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 Fed. Appx. 695 (2d Cir. 2009)...................8

**STATUTES**

15 U.S.C. § 15b.....................................................................................................................1, 20

**RULES**

Federal Rule 12(b)(6)................................................................................................................1, 4

Fed. R. Civ. P. 9(b) ...................................................................................................................10

I.      INTRODUCTION

Defendant Qantas Airways Limited ("Qantas") moves to dismiss the Complaint ("Compl.") under Federal Rule 12(b)(6) because it was not filed within the Clayton Act's four-year statute of limitations, even after tolling is taken into account.

The Clayton Act provides that a private antitrust action "shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b.   That means that the Plaintiff Schenker AG ("Schenker") cannot recover for acts which occurred prior to April 24, 2006, which is four years before the Complaint was filed (after tolling is taken into account).[1]   At the latest, the four-year statute of limitations began to run on February 15, 2006, the day after which it was reported that the DOJ and foreign antitrust agencies organized raids of the offices of multiple air cargo carriers worldwide ("DOJ raids").   The Complaint acknowledges that Schenker discovered the existence of the alleged conspiracy no later than February 2006 when the DOJ raids were conducted.   Compl. ¶ 191.   Thus, as a matter of law, its claims are time-barred.

If Schenker was not put on notice about the conspiracy beforehand (which Qantas believes it was), the DOJ raids indisputably put Schenker on inquiry notice of a possible conspiracy to fix surcharges, and, starting on that date, Schenker had the obligation to perform due diligence with respect to the rates it had been charged by Qantas. But Schenker did not

---

[1]      The four-year statute of limitations under the Clayton Act equals 1,461 days ((365 X 4) + 1 leap day).  *US v. Brown*, 740 F. 3d 145, 149 (3d Cir. 2014) (noting that four years equals 1,461 days).  From April 24, 2006 until February 8, 2007 (when the first Complaint against Qantas was filed) is a period of 290 days (including the start date but not the end date).  Between May 24, 2011 (when Schenker opted out of the class action settlement with Qantas) and August 7, 2014 is a period of 1171 days (including the start date, but not the end date).  290 days + 1171 days = 1461 days = Four years.

perform any due diligence, as the Complaint acknowledges.  Nor has it pled how it satisfied the diligence requirement with specifics, as required.

If Schenker had performed such due diligence, and combined its knowledge of the DOJ raids with previously available information from public sources as well as its own extensive knowledge of the cargo industry, it would have had a legitimate basis to file a complaint against Qantas as of February 15, 2006.

## II.    PROCEDURAL & FACTUAL BACKGROUND

In short summary, Schenker's Complaint alleges that Qantas and other cargo airlines worldwide agreed to set fuel surcharges in unison in direct relation to a fuel index that Lufthansa Airlines (based in Germany) published on a regular basis on its website.

Defendant Qantas is an air cargo carrier based in Australia.  Compl. ¶ 22.   Plaintiff Schenker is a freight-forwarder based in Germany.   Compl. ¶ 16.   Schenker pled guilty to antitrust violations in the United States on December 9, 2011; that plea concerned a conspiracy to raise shipping rates on routes from Germany, China and Hong Kong to the United States.[2] Schenker's plea covered activity from July 2004 to December 2007.[3]

On February 14, 2006, the Department of Justice ("DOJ") and European Commission organized office raids of multiple airline carriers (but not Qantas) around the world for participating in an alleged price-fixing conspiracy.[4]

---

[2]      Plea Agreement, *U.S. v. Schenker AG*, No. 10-CR-271 (D.D.C. Dec. 9, 2011)(ECF No. 21) *available at* http://www.justice.gov/atr/cases/f278300/278378.pdf.

[3]      *Id.*

[4]      *See, e.g.* Tobias Buck et. al., *Airlines raided in worldwide cargo cartel probe*, Financial Times, Feb. 15, 2006, *available at*    http://www.ft.com/cms/s/0/e5413ac0-9d8c-11da-b1c6-0000779e2340.html#axzz3Kl5MosdN (Ex. 1); *EU-US cartel probe hits airlines*, BBC News, Feb. 14, 2006 *available at* http://news.bbc.co.uk/2/hi/business/4713722.stm (Ex. 2).

Multiple class action complaints asserting claims under the Sherman Act were filed against air cargo carriers in the days after the DOJ raids were announced.   The first complaints were filed on February 17, 2006, three days after the raids took place.[5]  These initial complaints named at least 16 separate air cargo carriers based in 14 different countries as defendants, but Qantas was <u>not</u> named in those complaints.[6]

Qantas was first named as a defendant in the Air Cargo class action on February 8, 2007 ("Air Cargo Class Action").[7]  On November 27, 2007, about nine months after Qantas was first named as a defendant in the Air Cargo Class Action, the DOJ announced that Qantas would plead guilty to certain antitrust violations.[8]  Qantas' guilty plea was entered on January 14, 2008, and this plea encompassed activities by Qantas from January 1, 2000, to February 14, 2006.[9]  This guilty plea did not reference any activity in furtherance of the conspiracy beyond February 14, 2006, the day of the DOJ raids.

---

[5]     Complaint, *Animal Land, Inc. v. Air Canada et. al.*, No. 06-CV-0725, 2006 U.S. Dist. Ct. Pleadings LEXIS 30421 (E.D.N.Y., Feb. 17, 2006); Complaint, *Fleurchem, Inc. v. British Airways, et. al.*, No. 06-CV-0706, 2006 U.S. Dist. Ct. Pleadings LEXIS 884 (E.D.N.Y., Feb. 17, 2006).

[6]     The defendants named in the Complaint in *Animal Land, Inc. v. Air Canada et. al.*, No. 06-CV-0725, 2006 U.S. Dist. Ct. Pleadings LEXIS 30421 (E.D.N.Y. Feb. 17, 2006) included: Air Canada, Atlas Air Worldwide Holdings, Inc., Polar Air Cargo, Inc., AMR Corp., American Airlines, Inc., Asiana Airlines Inc., Air France-KLM, British Airways, PLC, Cargolux Airlines International SA, Cathay Pacific Airways Limited, KLM Royal Dutch Airlines, Japan Airlines Co., Deutsche Lufthansa AG, All Nippon Airways Co., Ltd., and Nippon Cargo Airlines Co., Ltd., SAS AB, SAS Cargo Group A/S, Korean Air Lines Co. Ltd, LAN Airlines, SA, (f/k/a LAN Chile S.A.), Singapore Airlines, Ltd., UAL Corp., and United Airlines.

[7]     First Consolidated Amended Complaint, *In re Air Cargo Shipping Services Antitrust Litigation*, No. 1:06-md-01775-JG-VVP, (E.D.N.Y. Feb. 8, 2007), ECF No. 271 (Ex. 3).

[8]     DOJ Press Release, *Qantas Airways Agrees To Plead Guilty...*, Nov. 27, 2007, *available at* http://www.justice.gov/atr/public/press_releases/2007/227988.htm.

[9]     Plea Agreement. *U.S. v. Qantas Airways Limited*, No. 07-CR-322 (D.D.C. Jan. 14, 2008) *available at* http://www.justice.gov/atr/cases/f229200/229266.htm.

Qantas signed a settlement agreement with plaintiffs in the Air Cargo Class Action on January 13, 2011.[10]  Schenker opted out of the Air Cargo Class Action settlement on May 24, 2011.[11]  The Qantas settlement was granted final approval on July 15, 2011.[12]  More than three years later, Schenker filed the instant Complaint against Qantas and other carriers on August 7, 2014.

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed Because the Statute of Limitations Has Expired

A motion to dismiss based on a statute of limitations may be filed under Federal Rule 12(b)(6).  *Bastien v. Samuels*, No 14-CV-1561, 2014 U.S. Dist. LEXIS 147347 (E.D.N.Y. Oct. 15, 2014).  A court should grant a motion to dismiss based on a statute of limitations when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008)(internal citations omitted).

In deciding when the statute of limitations began to run, a district court may "take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called "storm warnings" were adequate to trigger inquiry notice as well as other matters." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)(italics in original); *Koch v. Christie's International PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011)(same).

---

[10]     Motion for Preliminary Approval of Settlement with Qantas,  *In re Air Cargo Shipping Services Antitrust Litigation*, No. 1:06-md-01775-JG-VVP, (E.D.N.Y. Jan. 19, 2011), ECF No. 1372-3.
[11]     Schenker Complaint (ECF No. 1), ¶ 5.
[12]     Order,  *In re Air Cargo Shipping Services Antitrust Litigation*, No. 1:06-md-01775-JG-VVP, (E.D.N.Y. July 15, 2011)(ECF No. 1524).

4

In this regard, when evaluating Schenker's complaint, "conclusory allegations or conclusions of law 'couched' as factual allegations need not be accepted as true." *Benchmark Export Servs. v. China Airlines Ltd.*, No. 06-MDL-1775, Slip. Op. at *10 (E.D.N.Y. Sept. 22, 2010)(ECF No. 1270)("*Benchmark*")(Ex. 4).[13]   As the Second Circuit explained — in a case concerning the air cargo industry where the underlying facts and complaint were virtually identical to the Schenker complaint — "[a]lthough factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014)("*DPWN Holdings*"). Based on this principle, the Second Circuit found:

> DHL's claim of lack of knowledge in this case is contradicted by several allegations in its complaint. For example, paragraph 40 alleges that members of IATA...adopted Resolution 116ss to set fuel surcharges, paragraph 44 alleges that the carriers...implemented the resolution, paragraphs 54 and 58 allege that the airlines raised fuel surcharges in parallel in conformity with the Resolution, paragraph 20 alleges that the surcharges increased at a greater rate than the increase in prices of aviation fuel, and paragraphs 70 and 74 allege that many of the increases occurred in a coordinated fashion.

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014).

Not only are all of these allegations contained in the instant Complaint, Schenker is a freight forwarder, just like DPWN Holdings (an affiliate of DHL Express), and therefore has been intimately involved and aware of air cargo industry activities.

### B.   Schenker's Claims Were Only Tolled From February 8, 2007 Until May 24, 2011

---

[13]   The Honorable Judge Gleeson adopted this Report and Recommendation on November 1, 2010. (Case No. 06-MDL-1775, Dkt. Entry on Nov. 1, 2010).

Schenker's statute of limitations against Qantas were tolled starting on the date that Qantas was first named a defendant in the Air Cargo Class Action on February 8, 2007.[14] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).[15]

This tolling ended as soon as Schekner opted out of the proposed class on May 24, 2011. Compl., ¶ 5.  *Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2013 U.S. Dist. LEXIS 103698 at *14 (E.D.N.Y. July 24, 2013) (holding that tolling ends and the statute of limitations begins to run once a proposed class member opts out of a class action); *Ca. Pub. Emples. Ret. Sys. v. Caboto-Gruppo Intesa BCI (In re WorldCom Sec. Litig.)*, 496 F.3d 245, 255 (2d Cir. 2007)(same).

Therefore, Schenker's statute of limitations was tolled only from February 8, 2007 until May 24, 2011.  Since Schenker's statute of limitations began to run on February 15, 2006 (as explained below),[16] Schenker was obligated to file its complaint against Qantas, at the latest, by

---

[14]     First Consolidated Amended Complaint, *In re Air Cargo Shipping Services Antitrust Litigation*, No. 1:06-md-01775-JG-VVP, (E.D.N.Y. Feb. 8, 2007), ECF No. 271. (Ex. 3).
[15]     Even though earlier class action suits were filed against other defendants generally based on the same underlying conduct, such lawsuits do not operate to toll the statute of limitations against Qantas. *Cullen v. Margiotta*, 811 F.2d 698, 726 (2d Cir. 1987) (stating that "commencement of a suit against others is insufficient to give a nondefendant notice of the assertion of claims against him"); *Arneil v. Ramsey*, 550 F.2d 774, 782 (2d Cir. 1977)(stating that the statute of limitations is not suspended "from running in favor of a person not named as a defendant in the class suit [at issue]").
[16]     Qantas does not concede that the Statute of Limitations could not have begun to run at an earlier date.

June 1, 2014.[17]   But it did not do so, and instead waited until August 7, 2014, to file its

Complaint, and thus it was filed outside the statute of limitations.[18]

> C. **Schenker Cannot Plead Any Fraudulent Concealment Beyond February 15, 2006**

"[I]n order to toll the statute of limitations under the fraudulent concealment doctrine,

Plaintiffs must...allege that they were ignorant of the antitrust violation and that their ignorance

was not the result of a lack of due diligence."   *Simon-Whelan v. Andy Warhol Found. for the*

*Visual Arts*, No. 07-CV-6423, 2009 U.S. Dist. LEXIS 44242 at *22, 2009 WL 1457177

(S.D.N.Y. May 26, 2009). "The concealment requirement is satisfied only if the plaintiff shows

that he neither knew nor, in the exercise of due diligence, could reasonably have known of the

offense." *In re Nine W. Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000).

---

[17]    From February 15, 2006 (when the cause of action accrued) until February 8, 2007 (when the first Complaint was filed against Qantas) is a period of 358 days (including the start date but not the end date).  From May 24, 2011 (the day Schenker opted out of the Qantas settlement in the Air Cargo Class Action) until June 1, 2014 is a period of 1103 days (not including the start date or end date).  358 days  + 1103 days = 1,461 days = four years.

[18]    Furthermore, plaintiff has also not filed its complaint within the time-limit prescribed by 15 U.S.C. § 16(i).  That statute suspends the statute of limitations until one year after the pendency of a civil or criminal investigation by the United States for a civil case based on the same underlying facts as in the government action.  However, the U.S. obtained its last guilty plea in a matter related to Schenker's Complaint on June 24, 2011, from EVA Airways.  Compl. ¶177 (listing alleged co-conspirators and dates of their guilty pleas).   The last guilty pleas obtained    from    individuals    was    filed    on    December    8,    2011.   *See* http://www.justice.gov/opa/pr/cargolux-airlines-international-executives-plead-guilty-fixing-surcharge-rates-air-cargo.  Therefore, since the suspension of the statute of limitations only lasts one year beyond the end of a United States proceeding, such suspension of the statute of limitations would have ended, at the latest, by December 8, 2012.  As the statute requires that any private damage claims be brought during the suspension of the statute of limitations (i.e. one year after the investigation concludes), or four years from accrual (in this case on February 15, 2006), that exemption does not apply here.

As explained below, Schenker has not sufficiently plead due diligence, or any of the elements of fraudulent concealment beyond February 15, 2006, and therefore is not entitled to any tolling beyond that date.

### 1.    Schenker Has Not Adequately Pled Due Diligence

"A plaintiff in an antitrust suit is required to show due diligence." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 F. Appx. 695, 698 (2d Cir. 2009).  Furthermore, "[p]laintiffs must plead due diligence with specificity." *In re Nine West Shoes Antitrust Litigation*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000).  "General assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the pleading requirements." *Masters v. Wilhemina Model Agency, Inc.*, No. 02-CV-4911, 2003 WL 1990262, at *2 (S.D.N.Y. Apr. 29, 2003).  *See also Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 521 (S.D.N.Y. 2009) (finding that "brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception" does not plead due diligence with particularity).

"Due diligence is not adequately pled if plaintiffs...make no allegation of any specific inquiries of [Defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'" *Hinds Cnty.*, 620 F. Supp. 2d at 520-522.

When due diligence is not alleged with specificity, and the complaint is filed outside the statute of limitations, the complaint must be dismissed.  *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 60 (2d Cir. 1998) (affirming dismissal of RICO claims where plaintiffs "did not allege ... that they exercised due diligence; they make no allegation of any specific inquiries of [defendant], let alone detail ... such inquiries....").

Schenker's Complaint openly acknowledges that it did not perform any due diligence because it was "lulled" into believing that the surcharge increases were a result of independent

activity. Compl. ¶ 204. Therefore, "Schenker accepted the increases without undertaking further inquiry". Comp. ¶ 204.

Elsewhere in the Complaint, Schenker alleges that it performed due diligence in a single sentence, Compl. ¶ 191, but it does not specify how or in what manner such due diligence was performed.[19] It does not allege that it inquired directly with any party, or conducted any sort of independent research. In such cases, the Court need not accept as true Schenker's claim that it performed due diligence. *DPWN Holdings,* 747 F.3d at 151-52.

Here, there were clear "storm warnings" of Qantas' alleged involvement in a price-fixing scheme by February 15, 2006. At that date, if not before, the "duty to inquire" and perform due diligence arose, but Schenker did not fulfill it. Therefore, Schenker has not adequately pled due diligence.

### 2. Schenker Has Not Satisfied the Other Requirements of Fraudulent Concealment

Even if the Court does find that Schenker has pled due diligence with specificity, the Court should still dismiss the Complaint because Schenker failed to properly plead the other elements of fraudulent concealment. In order to plead fraudulent concealment, a plaintiff must demonstrate: "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)("*Hendrickson*"). All three elements must be shown for fraudulent concealment to apply. *Id.*

---

[19] Schenker merely pleads that "Schenker did not discover and could not have discovered, through the exercise of reasonable diligence, which Schenker in fact exercised..." Compl. ¶ 191.

Allegations of fraudulent concealment must comply with Federal Rule of Civil Procedure 9(b), under which "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).   None of the three requirements of *Hendrickson* are met with regards to allegations of fraudulent concealment after February 15, 2006.

### a.   Schenker Has Not Specifically Pled How the Alleged Conspiracy Was Concealed From It Beyond February 15, 2006

Fraudulent concealment can be shown either by demonstrating "that the defendant took affirmative steps to prevent the plaintiffs' discovery of his claim of injury or that the wrong itself was of such a nature as to be self-concealing." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 223 (E.D.N.Y. 2003).  Here, plaintiff can do neither.

First, from the face of the Complaint, Schenker cannot show the conspiracy was "self-concealing" after February 15, 2006, when the DOJ raids were announced.  Even though Qantas was not was not one of the companies raided on February 15, 2006, there were other publically available documents sufficient to show Schenker that cargo airlines industry-wide were following the fuel index published by Lufthansa, and that Qantas may have been involved (as described below).

Second, Schenker has not pled any acts of affirmative concealment by the defendants after February 15, 2006.  Schenker only claims that "[d]uring the course of the Cartel and thereafter, Defendants and other Cartel members represented to Schenker that its Fuel and Security Surcharges were intended to, and necessary to, cover increasing fuel and security related costs." Compl. ¶ 190.  The Complaint also states that "[t]he Surcharges in question announced by Defendants and reported in public sources were consistently ascribed by Defendants and their co-conspirators to normal market forces and considerations, including

increases in costs." Compl. ¶ 199.  Schenker also claims the conspiracy was concealed because fuel surcharge announcements were staggered by airlines.  Compl. ¶ 96.

But after the DOJ raids, when it became public knowledge that airlines were being investigated for alleged price-fixing of fuel surcharges, there was no reason for Schenker to rely on such statements by the airlines.  "[O]nce a plaintiff becomes aware of direct contradictions between the defendant's representations and other materials available to the plaintiff, plaintiffs are thereby left with reason to be suspicious of defendant, and it is no longer reasonable for them to defer to the defendant's representations." *In re Merrill Lynch Ltd. Pshps. Litig.*, 7 F. Supp. 2d 256, 275 (S.D.N.Y. 1997)(internal citations omitted).[20]

In fact, this Court found that "[t]he announcements of surcharges or increases now raise a red flag in the overall context of the complaint . . . . Given the government investigations and admissions of liability on the part of many, it makes sense in retrospect that the surcharge announcements and increases should have triggered some inquiries on the plaintiffs' part." *Benchmark,* No. 06-MDL-1775, Slip. Op. at *36 (E.D.N.Y. Sept. 22, 2010) (ECF No. 1270) (Ex. 4).

### b.    Schenker Has Not Pled That It Was Ignorant of Its Claims Prior to April 24, 2006

---

[20]    Schenker may argue that Qantas denied that it was under investigation.  Such a statement would be true if issued before May 2006.  But such a denial is not sufficient to toll the statute. Indeed, even if Schenker could point to statements by Qantas (which it did not make) denying the existence of the conspiracy after the DOJ raids, the fact that a party denies its conduct was illegal is not considered an affirmative act of concealment.  *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-219 (4th Cir.1987) (affirming dismissal of Sherman Act claims on grounds that statute of limitations would not be tolled simply because defendant "fail[ed] to own up to illegal conduct").  "A defendant's mere denial of wrongdoing will not dispel a plaintiff's duty to inquire." *Hopkinson v. Estate of Siegal*, No. 10 CV 1743, 2011 U.S. Dist. LEXIS 39966 (S.D.N.Y. Apr. 11, 2011).  Thus, the mere denial of an investigation could not toll the statute.

The second requirement under *Hendrickson* is that the plaintiff "remained in ignorance of [its] cause of action until some point within four years of the commencement of his action..." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). In this case, this means Schenker must plead, and prove, that it was unaware of its claims until after April 24, 2006, which is four years before it filed its Complaint (after tolling is taken into account).[21]

Here, the Complaint acknowledges that Schenker discovered, or could have discovered, the conspiracy in February 2006, at the time when the DOJ raids were announced. (Compl. ¶ 191).[22] Schenker did not plead, and should not be heard to argue now, that there was an "exception" for discovery of its claim against Qantas. Therefore, as a matter of law, Schenker cannot claim it was ignorant of its claims until after April 24, 2006, and it cannot claim fraudulent concealment.

### c.   Schenker Cannot Show That Its Ignorance Was Not Attributable to Its Lack of Diligence

Third, Schenker cannot show that its "continuing ignorance was not attributable to lack of diligence on [its] part." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). Furthermore, "[t]he statute [of limitations] is not tolled for a plaintiff's leisurely discovery of the full details of the alleged scheme." *Glonti v. Stevenson*, No. 08-CV-8960, 2009 U.S. Dist. LEXIS 13857 at *28, 2009 WL 311293 (S.D.N.Y. Feb. 6, 2009). In other words, the statute of limitations runs from the date a plaintiff "discovered or should have discovered that injury." *Bankers Trust Co. v. Rhoades*, 859 F. 2d 1096, 1103 (2d Cir. 1988).

---

[21]   *Supra*, n. 1.

[22]   The Complaint states: "Schenker did not discover...the existence of the conspiracy alleged herein until February 2006 at the earliest, when the investigations of the DOJ and foreign antitrust regulators became public..." Compl. ¶ 191.

This case is similar to *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 707 (S.D.N.Y. 2013)(dismissing claims under Commodity Exchange Act for not being filed within the statute of limitations).  In that case, the court found that the plaintiffs were on notice of their claims after it became generally known that the LIBOR rate was set artificially. *Id.*

Here, after February 15, 2006, it became known that the various fuel indexes published and utilized by multiple defendants were likely artificial, and that multiple defendants may have been using the same underlying fuel index.  Therefore, Schenker had a duty to investigate whether Qantas was also a part of this alleged scheme.  But it did not do so.

If Schenker had performed due diligence (which it did not), there was sufficient information for Schenker to file a complaint against Qantas as of February 15, 2006.  Thus, Schenker's cause of action accrued on February 15, 2006 and its statute of limitations began to run.

To determine whether the plaintiff was on inquiry notice, the court must evaluate whether the "totality of the circumstances", including public media reports, revealed probable illegal activity by the defendant.  *Hinds County, Miss. v. Wachovia Bank, NA*, 885 F. Supp 2d 617, 627 (S.D.N.Y. 2012).

As of February 15, 2006, Schenker knew the following facts (as alleged in its Complaint):

13

1) In January 2000, the International Air Transport Association ("IATA"), of which Qantas is a known member, applied to DOT for antitrust immunity to implement a Resolution to set fuel surcharges in unison among air cargo airlines (Compl. ¶ 62, 77);[23]

2)  In March 2000, the DOT rejected IATA's application for antitrust immunity to set fuel surcharges in unison, denying IATA and its member airlines any immunity (Compl. ¶ 77);[24]

3) After the DOT's decision, the defendants (including Qantas) continued to impose fuel surcharges on Schenker in parallel fashion, and such fuel surcharges were frequently identical (Compl. ¶¶ 69, 114, 115, 122, 124, 127, 129, 134, 135, 140).[25]

Furthermore, as of February 15, 2006, Schenker knew, or should have known, all of the following facts contained in public documents (of which the Court may take judicial notice per Qantas' Request for Judicial Notice, and accompanying Declaration and Exhibits):

1) In February 2000, it was reported that the European Shippers Council had made a formal complaint to the European Commission's antitrust authority regarding new fuel surcharges that were being imposed by air cargo airlines;[26]

2) In 2003, the Hong Kong Civil Aviation Department publically announced that Qantas and more than 50 other air cargo carriers were using a common fuel-index to calculate

---

[23]    Application For Approval of Agreements By the International Air Transport Association, Jan. 28, 2000, DOT-OST-2000-6837-0001, *available at* http://www.regulations.gov/#!documentDetail;D=DOT-OST-2000-6837-0001 (Ex. 5).

[24]    DOT Order, March 14, 2000, 2000 DOT Av. LEXIS 133, DOT-OST-2000-6837-0002, *available at* http://www.regulations.gov/#!documentDetail;D=DOT-OST-2000-6837-0002 (Ex. 6); Compl. ¶ 77.

[25]    As the Honorable Judge Pohorelsky found in an earlier decision, "Clearly [plaintiffs] were on notice of the fact that the airlines were simultaneously imposing surcharges; that is not in question." *Benchmark*, No. 06-MDL-1775 (JG) (VVP), Slip. Op. at *36 (E.D.N.Y. Sept. 22, 2010)(ECF No. 1270)(Ex. 4).   The Honorable Judge Gleeson adopted that Report and Recommendation on November 1, 2010. (No. 06-MDL-1775, Dkt. Entry at 11/1/2010).

[26]    Europe Information Service, *Commission Begins Cartel Investigation Into Aviation Fuel Tax*, European Report, Feb. 12, 2000. (Ex. 7).

surcharges on flights to/from Asia and the rest of the World (including the United States).[27]   The

Report stated:

> Some airlines also recover the recent increase in fuel costs for carrying cargo
> through a surcharge calculated in accordance with a trigger mechanism
> approved by CAD [Hong Kong Civil Aviation Department]. The mechanism
> is based on a fuel price index which averages the fuel prices in five major
> spotmarkets, i.e. Rotterdam, Mediterranean, Singapore, US-Gulf and US West
> Coast. Under this CAD approved mechanism, 60 airlines levy a surcharge of
> HK$0.80 and HK$1.60 per kg respectively for carriage of cargo to/from Asia
> and rest of the world (Annex B).[28]

3)  In March 2005, the Australian Financial Review reported that Qantas was "widely

expected to increase its surcharge by US5¢ a kilogram in line with Lufthansa's  Benchmark

Freight Index, raised by that amount this week", showing that Qantas' index followed the

Lufthansa index (as alleged in the Complaint);[29]

4) The DOJ and European Commission had raided the offices of multiple air cargo

carriers around the world on allegations of price-fixing of fuel surcharges.[30]

5) The Financial Times reported on February 15, 2006, that the "investigation focused on

the way in which the [air cargo] industry imposes surcharges for items such as fuel and

security".[31]

---

[27]     Hong Kong Civil Aviation Department, Legislative Council Panel on Economic Services,
Fuel Surcharge by Airlines, LC Paper No. CB(1)1198/02-03(06), March 31, 2003, *available at*
http://www.legco.gov.hk/yr02-03/english/panels/es/papers/es0331cb1-1198-6e.pdf (Ex. 8).
[28]     *Id.*
[29]     Tansy Harcourt, *Consumers Suffer Sharp End of Oil Spike*, Australian Financial Review,
March 10, 2005 (Ex. 9).
[30]     *See, e.g. EU-US cartel probe hits airlines*, BBC News, Feb. 14, 2006
http://news.bbc.co.uk/2/hi/business/4713722.stm (Ex. 2).
[31]     Tobias Buck et. al., *Airlines raided in worldwide cargo cartel probe*, Financial Times,
Feb. 15, 2006, *available at* http://www.ft.com/cms/s/0/e5413ac0-9d8c-11da-b1c6-
0000779e2340.html#axzz3Kl5MosdN (Ex. 1).

6) On February 15, 2006, the New York Times reported that a spokesman for the Justice Department described the investigation into anti-competitive practices among air cargo carriers as "industry-wide".[32]

In addition to the above facts, which Schenker should have known if it conducted due diligence, multiple press articles published from 2000 to February 15, 2006 (the day after the DOJ raids), stated or referenced the fact that a common fuel index was used throughout the air cargo industry, including the following:

1)   In February 2000, Air Cargo World magazine reported:

> The world's air carriers may be getting more shipper opposition to fuel surcharges than they bargained for. Shippers in the United States and Europe appear to be putting up resistance to widespread surcharges that many airlines will add to their cargo rates this month, and European shippers are already asking the European Commission to investigate potential "collusion" by the airlines.
>
> "The European Air Shippers Council is taking aim at a recent International Air Transport Association resolution on jet fuel pricing that several airlines cited in announcing their surcharges. *It would be unlawful in most other industry sectors, or at least in relatively mature trading nations, to act as the airlines have acted in adding the surcharges," said Chris Welsh, secretary of the EASC. . . .*
>
> But several airlines have also cited a fuel price index set up by IATA, essentially arguing that the surcharges were triggered by events outside their control. "The price has clearly exceeded the fuel index target recommended by (IATA) for implementing fuel surcharges," Lufthansa Cargo said. [Italics added].[33]

---

[32]      Paul Meller, *Big Airlines Raided in Cargo Price-Fixing Inquiry*, N.Y. Times, Feb. 15, 2006, *available at* http://query.nytimes.com/gst/fullpage.html?res=9D06EED6123EF936A25751C0A9609C8B63. (Ex. 10)

[33]      *Surcharges Fuel Disputes*, Air Cargo World, Feb. 2000, at p. 4. (Ex. 11).

2)   An article from February 2000, also published in Air Cargo World magazine, notes that "almost 20 airlines...have notified their customers of a fuel surcharge, many of who based their action on IATA Resolution 116SS".[34]

3)   In article published on May 12, 2002, an executive for Malaysia Airlines reported that it was a "normal practice among airlines" to calculate their cargo fuel surcharge according to the IATA index;[35]

4)   On February 21, 2003, the South China Morning Post explained that many airlines followed the fuel index published each week by Lufthansa Cargo:

> Cargo airlines are slapping an additional 40 HK cents a kilogram fuel surcharge on long-haul air freight with the likelihood of another increase next month because the price of jet fuel has rocketed in the past several months. *The fuel index, published each week by Lufthansa Cargo,* looks at the average of price of jet fuel in the five most important international spot markets - Rotterdam, the Mediterranean, Singapore, United States-Gulf and the US west coast. The index uses a base rate of 53.35 US cents per gallon of jet fuel.  *"Most of the BAR airlines will choose to follow [the surcharge] if fuel prices go up. But remember, the surcharge can also fall if fuel prices go back down," Mr [Leung] said"* [Italics added].[36]
> …
> *"Dragonair cargo manager Alan Lai said: "I think all the airlines have lowered their rates in February and won't raise them again until later in March"* [Italics added].[37]

5)   In February 2003, the Journal of Commerce reported that "many European airlines" were raising their air cargo surcharges in unison, and that such surcharges were based on a common "fuel index":  "*A fuel index used by many European airlines* topped 165

---

[34]   David Wirsing, *Forwarders Forum: Gas*, Air Cargo World, Feb. 2000, at p. 64 (Ex. 12).
[35]   Eirmalasare Bani, *MAS well buffered against oil price spike*, Business Times (Kuala Lumpur), Apr. 12, 2002 (Ex. 13).
[36]   Brackets in original.  Mr. Leung is identified as a Cathay Pacific Cargo manager in the article.
[37]   Joseph Lo, *Shippers hit with higher fuel-cost surcharges...,* South China Morning Post (Hong Kong), Feb 21, 2003  (Ex. 14).

17

during the past two weeks, triggering the surcharge increase to 15 cents. If the index goes

above 190, the carriers would raise the surcharge to 20 cents" (italics added).[38]

6)   On February 24, 2003, an article in Traffic World magazine reported:

> KLM Cargo will increase its fuel surcharge from 10 cents to 15 cents per
> kilo actual weight. The airline said the increase is a result of rising fuel
> prices. *In recent weeks, the fuel index used by most European airlines
> exceeded KLM's trigger point for implementing the 15-cent surcharge*.
> [Italics added].[39]

7)   On May 10, 2004, the Financial Times reported:

> *In Hong Kong, 72 airlines will increase fuel surcharges on cargo by a
> third, starting tomorrow.*  Charges on long-haul routes will increase from
> HKDollars 1.20 (USDollars 0.15) a kilogram to HKDollars 1.60, while
> those for short-haul flights will rise from 60 HK cents to 80 cents - the
> highest levels allowed. *Australia's Qantas is also set to increase its fuel
> surcharge from 20 to 25 Australian cents per kilo of freight from May 15.*
> [Italics added].[40]

8)   An article from May 11, 2004 in Oil Daily magazine explained how the Lufthansa

Fuel Index operated:

> Germany's Lufthansa raised its freight cargo fuel surcharge from 0.15 to
> 0.20 per kilogram (53 per lb) on May 10, after its in-house "fuel price
> index" went above 190 points -- equivalent to roughly $42/bbl -- for two
> weeks in a row late last month.

> Under an automatic pricing mechanism adopted in early 2002, Lufthansa
> levies a 0.05/kg (13/lb) surcharge whenever the index -- made up of the
> average price of jet in Rotterdam, the Mediterranean, Singapore, the US
> Gulf and the US West Coast -- goes above 115 points for two weeks. The
> surcharge then increases by 0.05/kg as the index passes 135, 165 and 190
> points, up to a maximum of 0.20/kg -- and falls in similar steps.[41]

---

[38]     Bruce Barnard and William Armbruster, *Airlines hike cargo fuel surcharges as crude
soars*, Journal of Commerce (New York), Feb. 14, 2003 (Ex. 15).
[39]     Angela Greiling Keane, *Fuel Surcharges Raised*, Traffic World, Feb 24, 2003 (Ex. 16).
[40]     John Burton et. al., *Asian Carriers to Increase Surcharges*, Financial Times, May 10,
2004  (Ex. 17).
[41]     *Jet Fuel Surcharge*, Oil Daily, May 11, 2004 (Ex. 18).

8)  In October 2004, an article in Airline Business magazine mentioned Qantas as one of several airlines raising fuel surcharges, and also stated:

> Cargo does indeed provide a model that the passenger business might copy. Here many airlines have for years been systematically raising or lowering surcharges according to the fuel price. *The acknowledged standard is Lufthansa Cargo,* whose fuel index, based on an average of the five world spot prices, has been displayed each week on its website since August 2001, and which triggers surcharges in 5c/kg steps. As of late August, the index was close to triggering the highest 30c/kg surcharge."
> *"Anti-trust issues come into play here, but Edward Hernandez, senior vice-president sales and marketing for US cargo carrier Polar Air Cargo, admits that the Lufthansa index "is a tool that the industry accepts and is used as a benchmark by many of our customers."* [Italics added].[42]

9)     Lufthansa stated publically on March 7, 2005 that "[t]he methodology and transparency of the Fuel Price Index has become a major indicator in the airfreight business..."[43]

The most logical conclusion from these facts, viewed objectively in total, is that Qantas may have been a part of the alleged surcharge conspiracy and everyone in the air cargo industry was well aware of each carrier's probable participation (depending on whether they were adopting fuel surcharges in accordance with other airlines).  By February 15, 2006, all arrows clearly pointed to Qantas' potential involvement in this "industry-wide" conspiracy, as described by a Department of Justice spokesman.[44]  Starting on February 15, 2006, Schenker should have made inquiries and investigated whether Qantas was a part of the potential conspiracy.

---

[42]     Peter Conway, *Oil pressure*, Airline Business, Oct. 2004, at p. 38 (Ex. 19).
[43]     Lufthansa Cargo raises fuel surcharge, Lufthansa News, Mar. 7, 2005, *available at* http://www.sec.gov/Archives/edgar/vprr/0000/0500/05006604.pdf (Ex. 20).
[44]     Paul Meller, *Big Airlines Raided in Cargo Price-Fixing Inquiry*, N.Y. Times, Feb. 15, 2006,                                   *available*                                   *at* http://query.nytimes.com/gst/fullpage.html?res=9D06EED6123EF936A25751C0A9609C8B63 (Ex. 10).

Schenker may argue that it was not aware, and could not have discovered, that Qantas was a part of the alleged conspiracy until August 17, 2006, when Qantas announced in a financial report filed with the Australian securities exchange that it had received a subpoena from the Department of Justice relating to the antitrust investigation.[45]  But that argument ignores all of the public evidence that was available, as described above, that identified Qantas by name.[46]

Therefore, it is clear that Schenker cannot show that its "continuing ignorance was not attributable to lack of diligence on [its] part." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).  Schenker knew or should have known of its potential claims against Qantas by February 15, 2006.

**D.      Schenker Can Only Recover Damages For Claims That Arose Within The Four-Year Period Before the Complaint Was Filed**

If the Court decides that Schenker has not pled due diligence or fraudulent concealment, then it must next conclude that it cannot recover damages for any acts which took place prior to four years before the Complaint was filed.  The Clayton Act provides that a private antitrust action "shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b.   That means that Schenker cannot recover for acts which occurred prior to April 24, 2006, which is four years before the Complaint was filed (after tolling is taken into account).[47]

**1.      Schenker Has Not Alleged a New Overt Act in Furtherance of the Conspiracy Beyond April 24, 2006**

---

[45]      Qantas Airways Limited, Preliminary Final Report for the Year Ended 30 June 2006, *available at* http://www.asx.com.au/asxpdf/20060817/pdf/3y0js820k641f.pdf (p. 8-9).

[46]      *See, e.g.,* Hong Kong Civil Aviation Department, Legislative Council Panel on Economic Services, Fuel Surcharge by Airlines, LC Paper No. CB(1)1198/02-03(06), March 31, 2003, *available at* http://www.legco.gov.hk/yr02-03/english/panels/es/papers/es0331cb1-1198-6e.pdf (Ex. 8).

[47]      *Supra*, n. 1.

"[T]o restart the statute of limitations plaintiff must allege an overt act which (1) is a new and independent act that is not merely a reaffirmation of a previous act; and (2) inflict[s] new and accumulating injury on the plaintiff." *Vitale v. Marlborough Gallery*, No. 93-CV-6276, 1994 U.S. Dist. LEXIS 9006 at *17, 1994-1 Trade Cas. (CCH) P70,654 (S.D.N.Y. July 5, 1994)(internal citations omitted).

"[T]he focus is on the timing of the causes of action, *i.e.,* the defendant's overt acts, as opposed to the effects of the overt acts." *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 261 F.Supp.2d 188, 229 (E.D.N.Y. 2003) (citation omitted). Therefore, "the performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act". *Id.* And "[j]ust because plaintiff alleges that [an] agreement was entered into ... [and] continued in effect...that assertion does not restart the statute of limitations." *Ulrich v. Moody's Corp.,* No. 13-CV-0008, 2014 U.S. Dist. LEXIS 145898 at *98 (S.D.N.Y. Mar. 31, 2014).

Plaintiff has not adequately or plausibly alleged a new overt act beyond April 24, 2006. The only allegations plaintiff makes that the conspiracy continued past April 24, 2006 consist of three wholly conclusory statements that do not plausibly plead an antitrust violation, nor constitute a new overt act:

1) "On or about May 1, 2006, a United employee met with Qantas' Vice President of Freight for the Americas in Las Vegas and discussed rates." Compl. ¶ 142.

2) "Between May 3 and 11, 2006, just a few days after United's meeting with Qantas, Qantas announced still another increase in its Surcharges, putting the Fuel Surcharge at USD 0.60 per kilogram effective on or about May 17, 2006. United also increased its Fuel Surcharge, as did Air France, Cargolux, KLM, and Lufthansa Cargo." Compl. ¶ 143.

3) "The Cartel members' Fuel Surcharge remained at USD 0.60 per kilogram until approximately mid-October 2006, when they reduced the Fuel Surcharge to USD 0.55 per kilogram." Compl. ¶ 144.

Such allegations are inadequate for numerous reasons. First, the Complaint does not allege that United Airlines ("UA") was a member of the air cargo surcharge conspiracy or cartel. Compl. ¶ 12. Thus, the allegation that a Qantas employee met a UA employee to discuss "rates" should not be viewed as an act in furtherance of the conspiracy. Additionally, UA has never pled guilty to any antitrust conspiracy involving the price-fixing of cargo fuel surcharges as alleged in the Complaint.

Second, allegations of parallel pricing, without more, are not sufficient to allege a new overt act in furtherance of the conspiracy. "[T]he core of *Twombly* is that parallel conduct coupled with only a bare assertion of conspiracy does not give rise to a plausible claim under the Sherman Act." *Benchmark,* No. 06-MDL-1775, Slip. Op. at *13 (E.D.N.Y. Sept. 22, 2010)(ECF No. 1270)(Ex. 4).

Third, the Complaint does not specify what rates were discussed at the alleged meeting between Qantas and UA, nor does it allege that any agreement concerning such "rates" was made at this meeting. An allegation that parties discussed "rates", but did not reach an agreement concerning prices, does not plausibly plead an antitrust violation. "The mere opportunity to conspire does not by itself support the inference that . . . an illegal combination actually occurred." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993).

Fourth, the Complaint does not even identify the fuel surcharge charged by UA after the May 2006 meeting with Qantas, or how long after Qantas' announcement that UA decided to

raise its fuel surcharge.  Compl. ¶ 143.  The mere act of air cargo carriers' raising fuel surcharges is not enough to allege a new "overt act" in furtherance of a conspiracy beyond April 24, 2006.

Fifth, in support of its assertion in paragraph 142, the instant Complaint cites a separate third-party complaint by DPWN Holdings (i.e. DHL) against United Airlines ("DPWN Complaint").[48]  The DPWN Complaint, in turn, cites a document produced by Qantas in the Air Cargo Class Action.  That document is merely a reimbursement request for a meeting between a Qantas employee and a United employee, and specifically states that the meeting with UA was to "discuss prorates".[49]  "Prorates" refer to the lawful sharing of revenue pursuant to code-share or interlining agreements among airlines (i.e,, in order for a cargo shipment to travel from Point A to Point B on multiple airlines, those airlines must reach agreements on how to split the revenue that is paid as one fee by the shipper).  Thus, the fact that two airlines met to discuss prorate agreements does not plausibly allege a new overt act in support of a conspiracy regarding air cargo surcharges. And the Complaint makes no allegations that such Prorate agreements or discussions were unlawful.

Sixth, even if the prices of defendants' air cargo surcharges after April 24, 2006 were set according to a pre-existing agreement that was made prior to April 24, 2006, the "performance of an allegedly anticompetitive, preexisting contract is not a new predicate act".  *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 261 F.Supp.2d 188, 229 (E.D.N.Y. 2003).

Therefore, for all of the reasons described above, the claim that a Qantas representative met with a UA representative in May 2006 is not sufficient to plead a new overt act in

---

[48]    Second Amended Complaint, *DPWN/Holdings (USA), Inc. v. United Air Lines, Inc., et. al.*, No. 11-CV-0564 (E.D.N.Y. May 6, 2014)(ECF No. 54).

[49]    QAL-01-080083 to QAL-01-080092 (Ex. 21).  The Court may consider this document on a motion to dismiss because it was incorporated by reference in the Complaint when it cited to the third-party complaint. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152 (2d Cir. 2002).

furtherance of the alleged antitrust conspiracy beyond April 24, 2006.  As a result, Schenker's claim must be dismissed in its entirety, because there no acts for which it can recover damages within the limitations period.

### 2.   Schenker Cannot Use Post-April 24, 2006 Allegations As a Basis to Recover Damages Based On Earlier Acts

Even if Schenker's post-April 24, 2006 allegations are sufficient to allege a new overt act (which they are not), Schenker cannot "use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).  And "the commission of a 'separate and new overt act' will not permit the plaintiff to recover for the injury caused by the old overt acts that do not fall within the limitations period." *Hinds Cnty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 398 (S.D.N.Y. 2010)(internal citations omitted). "The continuing violation exception only allows a plaintiff to recover damages caused by overt acts committed within the limitations period." *Ulrich v. Moody's Corp.*, No. 13-CV-0008, 2014 U.S. Dist. LEXIS 145898 at *96 (S.D.N.Y. Mar. 31, 2014).

So if the Court concludes, contrary to Qantas' position above, that Schenker has pled adequate new overt acts in furtherance of the conspiracy beyond April 24, 2006, then Schenker should still be barred from seeking any damages related to acts which took place prior to April 24, 2006.

## IV.   CONCLUSION

Schenker's Complaint may be dismissed for multiple reasons.  First, Schenker's Complaint admits it discovered its claims in February 2006.  Second, Schenker admits it did not perform due diligence.  Third, Schenker has not pled due diligence with specificity.  Fourth,

Schenker has not pled that it remained in ignorance of its claims until after April 24, 2006.  Fifth, if Schenker had performed due diligence, it should have known of its claims against Qantas by February 15, 2006.   And sixth, Schenker has not adequately pled any new overt acts in furtherance of the conspiracy after April 24, 2006. Thus, Schenker's claims are barred by the statute of limitations, and the Complaint must be dismissed in its entirety.

Dated: January 9, 2015                         Respectfully submitted,


/s/ W. Todd Miller
W. Todd Miller (admitted pro hac vice)
Ishai Mooreville (admitted pro hac vice)
Baker & Miller PLLC
2401 Pennsylvania Ave, NW
Suite 300
Washington, DC 20037
202-663-7820
Fax: 202-663-7849
Email: TMiller@bakerandmiller.com
Email: IMooreville@bakerandmiller.com

*Counsel for Qantas Airways Limited*

25