## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SCHENKER AG, | ) | |
| | ) | |
| Plaintiff, | ) | The Honorable John Gleeson |
| | ) | |
| v. | ) | Civil Action No. 14 CV 04711 (JG) (VVP) |
| | ) | |
| SOCIÉTÉ AIR FRANCE, | ) | |
| KONINKLIJKE LUCHTVAART | ) | |
| MAATSCHAPPIJ N.V., MARTINAIR | ) | |
| HOLLAND N.V., CARGOLUX | ) | |
| AIRLINES INTERNATIONAL, S.A., | ) | |
| NIPPON CARGO AIRLINES CO., | ) | |
| LTD., ALL NIPPON AIRWAYS CO., | ) | |
| LTD., QANTAS AIRWAYS LIMITED, | ) | |
| and SAS CARGO GROUP A/S, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### SCHENKER AG'S MEMORANDUM OF LAW IN OPPOSITION TO ALL NIPPON AIRWAYS CO., LTD. AND CARGOLUX AIRLINES INTERNATIONAL S.A.'S MOTION TO DISMISS THE COMPLAINT

Sheldon T. Zenner (*pro hac vice*)
Mary Ellen Hennessy (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061

James J. Calder
Mark T. Ciani
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: 212.940.8800
Facsimile:  212.940.8776

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................. 3

ARGUMENT ........................................................................................................ 5

I.    SCHENKER'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE. ..................... 6

    A.    Schenker Has Valid Reasons to Pursue Claims in this Court. ............................... 6
    B.    Schenker's Assignors Are Entitled to Deference .................................................. 10

II.   GERMANY IS AN INADEQUATE FORUM. ................................................................. 12

III.  PRIVATE AND PUBLIC FACTORS WEIGH IN FAVOR OF THIS COURT. ............ 15

    A.    Private Factors Favor Schenker's Choice of Forum. ........................................... 15

        1.    Schenker's Private Interest Favors Litigating in this Court. ...................... 16
        2.    The Relative Ease to Access Sources of Proof and Cost Concerns Favor Litigating in this Court. ................................................................ 17
        3.    The Availability of Witnesses Favors Litigating in this Court. ................. 20

    B.    Public Interest Factors Favor Schenker's Choice of Forum. ............................... 22

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775-JG-VVP, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ..............13, 15, 22

*In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006*,
574 F. Supp. 2d 272 (E.D.N.Y. 2008) ...................................................................................23

*Alcoa S.S. Co., Inc. v. M/V Nordic Regent*,
654 F.2d 147 (2d Cir. 1980)...................................................................................................10

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
782 F. Supp. 215 (S.D.N.Y. 1992) ........................................................................................22

*Alnwick v. European Micro Holdings, Inc.*,
29 Fed. Appx. 781 (2d Cir. 2002) ..........................................................................................19

*Alpine A. Asset Mgt. AG v. Comstock*,
552 F. Supp. 2d 1268 (D. Kan. 2008) ..............................................................................20, 21

*Am. Cyanamid Co. v. Picaso-Anstalt*,
741 F. Supp. 1150 (D.N.J. 1990) ...........................................................................................19

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.*,
No. 09-7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ..................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................5

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
228 F. Supp. 2d 348 (S.D.N.Y. 2002)....................................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................5

*Bodner v. Banque Paribas*,
114 F. Supp. 2d 117 (E.D.N.Y. 2000) ...................................................................................17

*Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998)...................................................................................................11

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
370 F.3d 234 (2d Cir. 2004)...................................................................................................12

*Chirag v. MT Marida Marguerite Schiffahrts*,
   983 F. Supp. 2d 188 (D. Conn. 2013) ...................................................................12

*In re CINAR Corp. Sec. Litig.*,
   186 F. Supp. 2d 279 (E.D.N.Y. 2002) ...........................................................20, 23

*In re CRT Antitrust Litig.*,
   No. CV 07-5944, 2014 WL 2581581 (N.D. Cal. June 9, 2014) ...........................24

*In re Dewey & LeBoeuf LLP*,
   No. 12-12321 (MG), 2014 WL 7330979 (Bankr. S.D.N.Y. Dec. 22, 2014) ..........20

*DiRienzo v. Philip Servs. Corp.*,
   294 F.3d 21 (2d Cir. 2002)............................................................................ *passim*

*Elcan Indus., Inc. v. Cuccolini, S.R.L.*,
   No. 13CV4058, 2014 WL 1173343 (S.D.N.Y. Mar. 21, 2014)..........................6, 24

*EMS Acquisition Corp. v. Structure Probe Inc.*,
   No. 07-03084, 2008 WL 375108 (E.D. Pa. Feb. 11, 2008) ...................................7

*Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*,
   325 P.3d 70 (Utah 2014) ....................................................................................10

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*,
   806 F. Supp. 2d 712 (S.D.N.Y. 2011)......................................................10, 12, 17

*Fagan v. Deutsche Bundesbank*,
   438 F. Supp. 2d 376 (S.D.N.Y. 2006)..................................................................12

*Forsythe v. Saudi Arabian Airlines Corp.*,
   885 F.2d 285 (5th Cir. 1989) ..............................................................................23

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
   717 F.2d 602 (D.C. Cir. 1983) ..............................................................................7

*Geier v. Omniglow Corp.*,
   357 Fed. Appx. 377 (2d Cir. 2009).......................................................................8

*Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*,
   No. 1-13-2327, 2014 WL 3735919 (Ill. App. Ct. July 28, 2014) ..........................21

*Gross v. British Broad. Corp.*,
   386 F.3d 224 (2d Cir. 2004).............................................................................6, 9

*Guidi v. Inter-Cont'l Hotels Corp.*,
   224 F.3d 142 (2d Cir. 2000)................................................................................24

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..................................................................................15, 19, 24

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001)...................................................................... *passim*

*Kensington Int'l Ltd. v. Société Nationale Des Pétroles Du Congo*,
    No. 05 CIV. 5101 (LAP), 2006 WL 846351 (S.D.N.Y. Mar. 31, 2006) *rev'd in
    part on other grounds*, 505 F.3d 147 (2d Cir. 2007) ...............................................9

*Kirch v. Liberty Media Corp.*,
    No. 04 CIV. 667 (NRB), 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ................................12

*Kisano Trade & Invest. Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013).....................................................................................8, 9

*Laker Airways Ltd. v. Pan American*,
    568 F. Supp. 811 (D.D.C. 1983) .........................................................................17, 18

*Lony v. E.I. Du Pont de Nemours & Co.*,
    935 F.2d 604 (3d Cir. 1991).......................................................................................18

*Mandanes v. Mandanes*,
    981 F. Supp. 241 (S.D.N.Y. 1997) ..........................................................................22

*Manela v. Garantia Banking Ltd.*,
    940 F. Supp. 584 (S.D.N.Y. 1996) .....................................................................16, 18

*Medisim Ltd. v. BestMed LLC*,
    No. 10-2463, 2010 WL 2697073 (S.D.N.Y. July 7, 2010)................................16, 18

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F. Supp. 2d 505 (D. Del. 1999).............................................................................21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................................22

*Munsell v. LaBrasserie Molson Du Quebec Ltd.*,
    618 F. Supp. 1383 (E.D.N.Y. 1985) .........................................................................22

*Nafziger v. McDermott Intern., Inc.*,
    467 F.3d 514 (6th Cir. 2006) ....................................................................................11

*Norex Petroleum Ltd. v. Access Indus.*,
    416 F.3d 146 (2d Cir. 2005)......................................................................5, 8, 9, 15

*Online Payment Solutions Inc. v. Svenska Handelsbanken AB*,
    638 F. Supp. 2d 375 (S.D.N.Y. 2009).......................................................................11

*Piper Aircraft v. Reyno*,
   454 U.S. 235 (1981) .......................................................................................12, 15, 22

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ..................................................................................................15

*Rafton v. Rydex Series Funds*,
   No. C 10-1171 CRB, 2010 WL 2629579 (N.D. Cal. June 29, 2010) .......................7

*Rahl v. Bande*,
   328 B.R. 387 (Bankr. S.D.N.Y. 2005) .....................................................................19

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013) ......................................................................10

*Rodriguez v. Creative Concepts Inc.*,
   No. 3:12-cv-2978-P, 2013 WL 2370569 (N.D. Tex. May 30, 2013) .......................18

*S.E.C. v. Sandifur*,
   No. C05-1631, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006)..............................21

*Sangeorzan v. Yangming Marine Transp. Corp.*,
   951 F. Supp. 650 (S.D. Tex. 1997) ...........................................................................17

*Shipping Corp. of India v. Am. Bureau of Shipping*,
   603 F. Supp. 801 (S.D.N.Y. 1985) ...........................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   787 F. Supp. 2d 1036 (N.D. Cal. 2011) ....................................................................11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ..................................................................................21

*Virgin Atlantic Airways Ltd. v. British Airways PLC*,
   872 F. Supp. 52 (S.D.N.Y. 1994) ..................................................................17, 22, 23

*Vivendi v. T-Mobile USA, Inc.*,
   No. CO6-1524JLR, 2008 WL 345283 (W.D. Wash. June 5, 2008) .........................21

**Statutes**

15 U.S.C. § 1 ....................................................................................................................3

Act Against Restraints of Competition [GWB] § 33(4) ................................................14

German Code of Civil Procedure [ZPO] § 21 ...............................................................12

German Code of Civil Procedure [ZPO] § 32 ...............................................................13

**Other Authorities**

*Comparative Study of "Residual Jurisdiction" in Civil and Commercial Disputes in the EU, National Report for: Germany*, NATIONAL REPORT ON RESIDUAL JURISDICTION, 13 .................................................................................................13

European Commission Regulation 1206/2001 .........................................................21

Fed. R. Civ. P. 30(b)(6)...................................................................................19, 20, 22

Plaintiff Schenker AG ("Schenker"), by its counsel, respectfully submits this memorandum of law in opposition to defendants, All Nippon Airways Co., Ltd.'s ("Nippon") and Cargolux Airlines International S.A.'s ("Cargolux") (collectively, "Defendants"), motion to dismiss Schenker's Complaint on *forum non conveniens* grounds (the "Motion").

## PRELIMINARY STATEMENT

Defendants' Motion is not predicated on a failure to state a claim as the fact that Defendants violated the antitrust laws of the United States by conspiring to fix the prices of surcharges imposed on Defendants' airfreight shipping services is not at issue.[1]   Instead, invoking the doctrine of *forum non conveniens*, Defendants seek to avoid this Court's jurisdiction based on an argument that Germany is a more appropriate forum in which to litigate Schenker's antitrust claims.  However, contrary to Defendants' Motion, the law is clear that a plaintiff's choice of forum is entitled to considerable deference where, as here, the plaintiff has valid reasons for selecting a U.S. forum.  Defendants completely ignore the fact that Schenker chose to litigate in the United States because its injuries occurred here and because this Court already has extensive familiarity with this case, due to its oversight of the related class action, *In re Air Cargo Shipping Servs. Antitrust Litigation*, No. 06-MD-01775-JG-VVP (E.D.N.Y.) ("*Air Cargo*").  They further ignore the United States' interest in seeking to redress antitrust injuries occurring on its own soil.  These paramount interests alone compel a denial of Defendants' Motion.

---

[1]   Defendants and their co-conspirators pleaded guilty to criminal charges in connection with their participation in that alleged conspiracy.  Defendants also agreed to significant settlements with class action plaintiffs regarding the civil antitrust claims filed in this Court relating to that conspiracy, after losing their bid to defeat those claims at the motion to dismiss stage.  Schenker opted out of those settlements and now seeks relief in this Court for the antitrust injury it suffered.  *See* Compl. ¶¶ 177, 188, 214.

Further, Defendants cannot show, as they must, that Germany is an adequate jurisdiction with regard to all the claims Schenker asserts in this case. This fact is a further independent and fundamental ground for denying their Motion, regardless of the deference afforded to Schenker's choice of forum.

Moreover, Defendants have also not identified any private interest of their own warranting litigating this dispute in Germany. Nor have they identified any public reason why Germany is more convenient than this Court to litigate claims asserting a global price-fixing conspiracy. Instead, Defendants offer an irrelevant consideration: that a Schenker affiliate's proceeding in Germany, which seeks damages under European law, is an indication that a German court is a more appropriate forum for this dispute. It is unclear, however, whether a German court would hear a claim based on the U.S.-related injuries alleged herein, much less that it would have jurisdiction over *all* the claims asserted in this case, and Defendants have not conclusively demonstrated the contrary. Accordingly, Defendants have presented no reason to dismiss this case based on *forum non conveniens*.

Schenker's Complaint alleges a massive global conspiracy. No court in the world will provide perfect convenience to all parties and non-parties. But this Court has the advantage of already overseeing discovery in *Air Cargo*, and access to that discovery will reduce the burden on parties and non-parties alike. Moreover, Schenker and the United States' interests in having Schenker's U.S. injuries redressed in a U.S. court are compelling. Accordingly, no court is a more convenient forum for this dispute than this Court, and the Court should deny Defendants' Motion.

## FACTUAL BACKGROUND

### The Parties

Plaintiff Schenker is a German corporation that provides logistical and freight forwarding support to customers transporting goods around the world, including to, from and within the United States.  Compl. ¶ 16.[2]  Schenker is the assignee of the legal right to prosecute and recover damages in this action on behalf of "all of the Schenker affiliated companies that purchased U.S. Airfreight Shipping Services from Defendants," including Cargolux and Nippon, during the period from late 1999 until 2006 and thereafter (the "Relevant Period").  *Id.* ¶ 16.  Defendant Cargolux is a Luxembourgian company; defendant Nippon is a Japanese company.  *Id.* ¶¶ 21, 25. Defendants provide airfreight shipping services to, from and within the United States.  *Id.* During the Relevant Period, Schenker purchased millions of dollars of Defendants' services, which included the artificially inflated surcharges at issue in this case.  *Id.*

### This Court's Administration Over *Air Cargo*

In early 2006, a multitude of antitrust class action lawsuits were filed in the United States, naming as defendants numerous airfreight carriers, including Defendants.  *See* Trans. Order, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 1:06-MD-01775-CBA-VVP (J.P.M.L. June 20, 2006), ECF No. 1.  These antitrust class action lawsuits alleged that, between late 1999 or early 2000 through at least 2006, certain air carrier defendants conspired to fix the global prices of airfreight shipping services through artificially inflated surcharges in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  *See, e.g.*, Compl. ¶¶ 1–3, 68–74, *Animal Land, Inc. v. Air Canada*, 1:06-cv-00725-JG-VVP (E.D.N.Y. Feb. 17, 2006), ECF No. 1.  These lawsuits were all consolidated as *Air Cargo* and a Consolidated Amended Complaint was filed on

---

[2]     The Complaint is attached as Exhibit A to the Declaration of Mary Ellen Hennessy, dated January 30, 2015 ("Hennessy Decl.").

February 8, 2007.  First Consol. Am. Compl., *Air Cargo*, 06-MD-01775-JG-VVP (Feb. 8, 2007), ECF No. 271 ("*Air Cargo* Compl.").

This Court has presided over *Air Cargo* for almost a decade and has extensive familiarity with the facts and issues of case.  In addition, the *Air Cargo* parties have undertaken far-reaching discovery, which this Court has administered.  *See* Mem. and Order, *Air Cargo*, 06-MD-01775-JG-VVP (Mar. 19, 2013), ECF No. 1821 ("over 12 million pages of documents, including all documents produced to DOJ during its criminal investigation of the air cargo industry," have been produced).

The *Air Cargo* plaintiffs and Nippon executed a settlement agreement providing that Nippon would pay $10.4 million to settle the claims asserted against it.  Compl. ¶ 188.  Similarly, Cargolux agreed to pay $35.1 million to be released from *Air Cargo*.  *Id.*  On May 24, 2011, Schenker excluded itself from those settlements.  Compl. ¶ 214.

**The Complaint in this Case**

On August 7, 2014, Schenker exercised its right as an "opt out" from the Nippon and Cargolux settlements and filed this case, which alleges a substantially identical conspiracy to that alleged in *Air Cargo*.  *Compare* Compl. ¶¶ 217–233 *with Air Cargo* Compl. ¶¶ 225–260.  Both complaints allege injuries arising out of illegal surcharges imposed on airfreight shipping services for flights to, from and within the United States.  *Compare* Compl. ¶¶ 217–233 *with Air Cargo* Compl. ¶¶ 225–260.  Both allege a global conspiracy involving participants from at least twenty-five countries, including the United States, and meetings to further the conspiracy occurring in at least ten countries, including the United States.  *See* Compl. *passim*; *Air Cargo* Compl. ¶¶ 23–68.

The claims asserted by Schenker in this case relate, and are limited, to claims based on U.S. laws and transactions involving commerce to, from and within the United States. No foreign laws are at issue; no commerce that does not touch upon the United States is encompassed by Schenker's claims. *See* Compl. ¶¶ 217–233.

In December 2013, Schenker's affiliate, Barnsdale Cartel Damage AG ("Barnsdale"), filed a lawsuit in Germany (the "German Action") against the defendants named in this action, among others, with the exception of Nippon. While the German Action is founded upon the same conspiracy alleged in this case, it only seeks redress for injuries Schenker suffered *outside* of the United States. Any claims relating to services provided by any defendant to, from or within the United States are specifically excluded from the German Action. *See* Hennessy Decl. ¶ 5.

## ARGUMENT

In evaluating a motion to dismiss, a court must accept the factual allegations in the complaint as true, and determine whether they "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Schenker clearly states such a claim and Defendants do not contest it. Instead, they argue that the Complaint should be dismissed on *forum non conveniens* grounds. Courts in the Second Circuit undertake a three-part inquiry in assessing a *forum non conveniens* motion:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir. 2001)).

5

It is Defendants' burden to demonstrate that Schenker's chosen forum is inconvenient. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002). Further, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) (quoting *Iragorri*, 274 F.3d at 71–72). As Defendants have not met their burden of demonstrating that Germany would be a more convenient forum, their Motion should be denied.

## I.   SCHENKER'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE.

A plaintiff's choice of forum should "rarely be disturbed." *Elcan Indus., Inc. v. Cuccolini, S.R.L.*, No. 13CV4058, 2014 WL 1173343, at *6 (S.D.N.Y. Mar. 21, 2014) (internal quotation omitted). As explained by the Second Circuit in *DiRienzo*:

> We held in *Iragorri* that the "first level of inquiry" in a *forum non conveniens* analysis is to determine what deference is owed a plaintiff's choice of forum. Ordinarily a strong favorable presumption is applied to that choice. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. In *Iragorri* we ruled that a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference.

294 F.3d at 28 (internal quotations and citations omitted).

### A.   Schenker Has Valid Reasons to Pursue Claims in this Court.

Defendants argue that Schenker is entitled to very little, if any, deference because it is a German company that purportedly has engaged in forum shopping. Mov. Br. at 4–8.[3] However, courts in the Second Circuit afford foreign plaintiffs deference if they have valid reasons to pursue claims in the United States. As the Second Circuit instructed in *Iragorri*, courts should

---

[3]   "Mov. Br." refers to the Memorandum of Law in Support of Certain Defendants' Motion to Dismiss, dated January 30, 2015, ECF No. 38-1.

consider whether the plaintiff's forum choice was motivated by a "tactical advantage" or "legitimate reasons."  274 F.3d at 73.  Here, Schenker has clear and legitimate reasons for filing this action in this Court.

Schenker opted out of the *Air Cargo* class settlements with respect to Defendants and then filed its claim in the same court, based on the same alleged global conspiracy.  Thus, Schenker cannot legitimately be accused of angling for a "tactical advantage" when it brought this opt-out action against Defendants, based on the same alleged facts, in the same court that has heard and decided issues relating to the same claims.  This is especially true given the scope of relevant discovery that has been produced in *Air Cargo*.  *See supra* 4.  Indeed, it would be forum shopping to bring the case anywhere else.

Additionally, Schenker's injuries occurred within the United States.  When the injury is localized to the United States, courts do not recognize accusations of forum shopping.  *See DiRienzo*, 294 F.3d at 28 ("[P]laintiffs offered a quite valid reason for litigating in federal court: this country's interest in having United States courts enforce United States securities laws"); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 609–10 (D.C. Cir. 1983) (finding that there was no forum shopping in part because the injury occurred during transport to the United States and thus there is "a strong national interest in the litigation and seeing that justice is done"); *Rafton v. Rydex Series Funds*, No. C 10-1171 CRB, 2010 WL 2629579, at *2–*4 (N.D. Cal. June 29, 2010) (affording "substantial weight" to class action plaintiff's choice of forum in part because the injury occurred in the forum).

Moreover, the United States is an appropriate forum as all parties involved do substantial business here.  Compl. ¶¶ 16–26; *see EMS Acquisition Corp. v. Structure Probe Inc.*, No. 07-03084, 2008 WL 375108, at *3 (E.D. Pa. Feb. 11, 2008) (forum shopping allegations

lacked merit where both parties advertised and conducted business in the forum).  In fact, both Cargolux and Nippon supported the transfer of the numerous class action suits underlying *Air Cargo* to this Court.[4]  As held by the Judicial Panel on Multidistrict Litigation:

> We are persuaded that the Eastern District of New York is an appropriate transferee forum for this litigation.  Several defendants have a presence and conduct substantial business in the Eastern District of New York, and some relevant witnesses and documents may be located there.  Moreover, this district provides a locale that is both easily accessible and enjoys the support of the numerous parties to this litigation.

Trans. Order, *Air Cargo*, 1:06-MD-01775-CBA-VVP (J.P.M.L. June 20, 2006), ECF No. 1; *see also DiRienzo*, 294 F.3d at 29 ("[P]laintiffs' decision to pursue consolidated litigation in the Southern District of New York seems to stem from *defendants*' motion by the Judicial Panel to transfer the separate cases to this particular district.  *Iragorri* teaches that we should focus on this circumstance.").

Ignoring these valid reasons to litigate in the United States, Defendants argue that Schenker is forum shopping because it can obtain treble damages in the United States.  *See* Mov. Br. at 6–7.  That fact alone hardly demonstrates forum shopping.  Indeed, that charge could be made whenever *any* foreign plaintiff brings an antitrust claim for injuries suffered in the United States.  Furthermore, speculation that the plaintiff's choice of forum was solely dictated by the potential for treble damages is disregarded where, as here, the "totality of the circumstances" suggests a bona fide connection to the United States.[5]  *See Kensington Int'l Ltd. v. Société*

---

[4]     Defendants cite *Geier v. Omniglow Corp.*, 357 Fed. Appx. 377 (2d Cir. 2009), for the proposition that Schenker's choice of forum is entitled to little deference. Mov. Br. at 4. There, however, the court could not identify any legitimate reasons for the plaintiffs' U.S. lawsuit as every plaintiff was foreign and the single accident at issue occurred in Austria. *Geier*, 357 Fed. Appx. at 379–80.  Here, as discussed, Schenker had numerous legitimate reasons. *See supra* at 6–8.

[5]     Defendants cite *Kisano Trade & Invest. Ltd. v. Lemster*, 737 F.3d 869 (3d Cir. 2013), and *Norex*, 416 F.3d 146, to support their argument. Mov. Br. at 7. In *Norex*, the Second

*Nationale Des Pétroles Du Congo*, No. 05 CIV. 5101 (LAP), 2006 WL 846351, at \*6 (S.D.N.Y. Mar. 31, 2006) *rev'd in part on other grounds*, 505 F.3d 147 (2d Cir. 2007) (holding that a foreign plaintiff was entitled to a "substantial amount of deference" despite defendant's speculation that plaintiff was forum shopping based on treble damages because plaintiff alleged damages under federal law stemming from sales of oil within the United States, it was involved in related cases regarding the same matter in the same court, and the witnesses and evidence would hail from "numerous countries, including the United States").

Indeed, viewed objectively, Defendants' request that this Court dismiss this action—an opt-out action filed in the same court where Defendants have already litigated these claims—in favor of a forum to which these Japanese and Luxembourgian Defendants have no connection—and in the process *avoid* treble damages—says far more about Defendants' "forum shopping" than it does Schenker's. *See, e.g.*, *Gross*, 386 F.3d at 233 ("[D]efendants as much as plaintiffs may be concerned with litigation tactics or forum shopping rather than convenience"); *Iragorri*, 274 F.3d at 75 ("[D]efendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum."); *DiRienzo*, 294 F.3d at 29 (Defendants' "current claims

---

Circuit noted that "the possibility of a RICO treble damages award might have made the choice of a United States forum attractive to Norex," but nevertheless afforded the foreign plaintiff substantial deference in its *forum non conveniens* analysis because, *as in this case*, "a number of circumstances demonstrate[ed] that genuine convenience did inform Norex's choice of a New York forum." 416 F.3d at 155. *Kisano* is not to the contrary. There, the court afforded the foreign plaintiff less deference because, unlike here, the plaintiff "had little connection with the United States." 737 F.3d at 876. In contrast, Schenker, including in particular its U.S.-based assignor-affiliates, Schenker, Inc. and BAX Global, Inc. ("BAX"), have significant contacts with the United States. *See* Compl. ¶ 16; Hennessy Decl. ¶ 3.

of inconvenience raise questions as to their underlying motives").  Schenker's choice of forum—as a plaintiff with "legitimate reasons" to select this forum—is owed considerable deference.

### B.   Schenker's Assignors Are Entitled to Deference.

Schenker's citizenship, however, is not this Court's only consideration in assessing the deference to which a plaintiff's choice of forum is entitled.  Schenker brings its Complaint on behalf of "all of the Schenker affiliated companies that purchased U.S. Airfreight Shipping Services [*i.e.*, services relating to air cargo shipments to, from and within the United States] from Defendants during the Relevant Period."  Compl. ¶ 16.  These affiliates include Schenker, Inc., a New York corporation located in New York, and BAX, a Delaware corporation admitted to do business in New York.  Hennessy Decl. ¶ 3.

Courts have recognized that when a plaintiff brings a claim as an assignee, the assignor's citizenship effects the deference to the assignee-plaintiff's choice of forum.  *See, e.g.*, *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 325 P.3d 70, 79 (Utah 2014) (relying on *Iragorri* to hold that a foreign plaintiff-assignee's choice of forum was owed deference because the suit had a "strong[ ] factual connection" to the forum and it was the assignor's "home jurisdiction and presumably the jurisdiction [the assignor] itself would have chosen if it were suing on its own behalf").

Defendants contend that this Court cannot consider Schenker's affiliates' citizenship, as they are not named in the Complaint.  However, "[i]n deciding a *forum non conveniens* challenge, a court may rely on evidence outside the pleadings, including affidavits."  *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011) (citing *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980) (en banc)); *see also RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013).  Assignors

Schenker, Inc. and BAX are United States corporations, and thus they too have valid reasons to have their claims heard in a United States forum.  *See* Hennessy Decl. ¶ 3.

Even if Defendants were correct that a party cannot assert claims on behalf of unnamed affiliates, Mov. Br. at 5, Schenker has identified its assignors.  Unlike *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036 (N.D. Cal. 2011), which Defendants cite in support of this proposition, the Complaint appropriately and factually alleges that the assignors are affiliates of Schenker who purchased U.S. Airfreight Shipping Services.[6]  Compl. ¶¶ 1, 16.  Common sense dictates that Defendants know to whom they provided shipping services to, from and within the United States during the Relevant Period, and therefore have adequate notice of the assignors' identities.[7]

Finally, essentially conceding that Defendants are fully aware that Schenker, Inc. and BAX would be among the relevant assignors, Defendants argue that in any event Schenker's assignors should not be considered because, as the named plaintiff, Schenker is the "real party in interest."  Mov. Br. at 6.  Again, this is not the law: in a situation involving assignors, courts do not assume that the named plaintiff is the sole "real party in interest."[8]  *See, e.g.*, *Online Payment*

---

[6]  In *In re TFT-LCD*, the court granted the plaintiffs leave to amend their complaint to identify the assignors, "[g]iven the complexity of this MDL and the fact that the assigned claims overlap to some degree with claims alleged by other plaintiffs in this MDL. . . ." 787 F. Supp. 2d at 1041.  Here, there is no similar overlap or complexity.

[7]  Defendants also cite *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514 (6th Cir. 2006), for the same argument.  Mov. Br. at 5.  That case is equally inapposite: It has nothing to do with the pleading requirements of a plaintiff suing on behalf of others; rather, it merely stands for the proposition that plaintiffs must plead which individual plaintiffs are claiming which causes of action.  *Nafziger*, 467 F.3d at 520.

[8]  The other cases Defendants cite are factually inapposite, and in any event actually support Schenker's position.  *See DiRienzo*, 294 F.3d at 28 (faulting the district court for giving only "passing reference to the weight entitled" to a representative plaintiff's choice); *Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 612 (2d Cir. 1998) (In "a suit about two English banks' refusal to do business in England" with two English companies, "England was the correct forum").

*Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 381 (S.D.N.Y. 2009) (holding that an assignor was the "real party in interest"); *see also Piper Aircraft v. Reyno*, 454 U.S. 235, 242 (1981) (looking beyond the named representative to the "real parties of interest," the beneficiary estates of Scottish citizens killed in an airplane crash in Scotland).

## II.   GERMANY IS AN INADEQUATE FORUM.

Even if this Court does not afford Schenker's forum selection deference, Defendants' Motion fails for another reason: Germany is an inadequate forum. Defendants bear the burden of demonstrating adequacy. *E.g.*, *Erausquin,* 806 F. Supp. 2d at 724. Defendants' offer to stipulate to service of process in Germany does not come close to satisfying their burden to demonstrate that German courts would have jurisdiction over *all of Schenker's claims which are based on U.S. transactions*. Mov. Br. at 8–9. And Defendants' generalized assertions about what German courts "would permit" "in a variety of cases" do not fill that void. *Id.* at 8, 9; *see Shipping Corp. of India v. Am. Bureau of Shipping*, 603 F. Supp. 801, 804 (S.D.N.Y. 1985) ("Dismissal of an action on the grounds of *forum non conveniens* is available only if there exists an adequate alternative forum that possesses jurisdiction *over the entire action* and over all the named defendants.") (internal quotations and citation omitted) (emphasis added).

Here, neither Defendant has German citizenship and so there is no so-called 'anchor' defendant that would establish a German court's jurisdiction over these claims.[9]   *See* German

---

[9]   The cases Defendants cite do not suggest otherwise—*all* involve at least one German defendant to be a part of a potential German action. *See Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 380 (S.D.N.Y. 2006) (defendant "is alleged to be the 'German National Bank'"); *Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 196 (D. Conn. 2013) (noting that a "necessary" defendant was "German-based" partnership); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 236 (2d Cir. 2004) (defendant was "a German banking institution"); *Kirch v. Liberty Media Corp.*, No. 04 CIV. 667 (NRB), 2006 WL 3247363, at *1 (S.D.N.Y. Nov. 8, 2006) (naming Deutsche Bank AG as a defendant).

Code of Civil Procedure [ZPO] § 21 (providing that defendants may be sued in the place where they reside); *see also* Michael Molitoris and Amelie Abt, *Comparative Study of "Residual Jurisdiction" in Civil and Commercial Disputes in the EU, National Report for: Germany*, NATIONAL REPORT ON RESIDUAL JURISDICTION, 13 ("A person without a domicile in Germany cannot be sued here simply because another person is already conducting proceedings here.").[10] Moreover, while some of the shipments at issue may have originated from or ended in Germany, the Complaint alleges a *global* conspiracy.  A German court is unlikely to accept jurisdiction over claims relating to shipments that do not touch upon Germany.  *See* ZPO § 32 ("For complaints arising from tort, the court in the jurisdiction of which the tortious act was committed shall have jurisdiction.").

For example, German courts likely lack jurisdiction over shipments transported by Defendant Nippon between the United States and Tokyo, as they lack any nexus with Germany or even the European Union.  *See* ZPO § 32.  Certainly, this Court cannot exercise jurisdiction over claims that have no impact on U.S. commerce, and Defendants have offered no evidence that German courts would be any more able to adjudicate Schenker's U.S. claims that do not touch Germany or Europe.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775-JG-VVP, 2008 WL 5958061, at *12 (E.D.N.Y. Sept. 26, 2008) *adopted in relevant part*, No. 06-MD-1775-JG-VVP, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009) *aff'd*, 697 F.3d 154 (2d Cir. 2012) ("The FTAIA removes from the reach of the Sherman Act export activities and other commercial activities taking place abroad, unless those activities adversely affect domestic commerce, imports to the United States, or the exporting activities of persons engaged in such activities within the United States.").

---

[10]     *Available at* http://ec.europa.eu/civiljustice/news/docs/study_resid_jurisd_germany_en. pdf.

Defendants point to the German Action, brought by Barnsdale against Lufthansa Cargo AG, among others, to argue that Schenker's affiliate's decision to file in Germany reflects a concession by Schenker that Germany would be an adequate forum to hear *this* case.  Mov. Br. at 10.  That German Action is based on a November 9, 2010 Decision of the European Commission ("EC Decision"),[11] which constitutes a conclusive finding that numerous air carriers, including Cargolux, illegally conspired to fix airfreight surcharges prices.  Compl. ¶ 6; *see* Act Against Restraints of Competition [GWB] § 33(4)[12] ("Where damages are claimed for an infringement of [relevant antitrust laws], the court shall be bound by a finding that an infringement occurred, to the extent such a finding was made in a final decision by . . . the Commission of the European Community").  Victims of that conspiracy (such as Barnsdale) have used that conclusive evidence of liability as the basis upon which to seek damages related to the findings of the EC Decision from those defendants.  Hennessy Decl. ¶ 5.  Barnsdale thus need not prove liability in the German Action, as Schenker must here.  In effect, the German Action is a damages trial.

Tellingly, Defendants do not suggest that this case be transferred to the German Action— as they know the German Action is an action for damages suffered by Schenker *outside the United States*.  Indeed, the German Action expressly *excludes* any claims for damages based on shipments to, from or within the United States.  *See* Hennessy Decl. ¶ 5.  Thus, a proper analysis of the German Action demonstrates that this Court, not Germany, is the appropriate forum to hear this case.

---

[11]    *Airfreight* (Case C.39258) Commission Decision 2014/C 371/09 [2010].  To date, an official translation of the EC Decision is not available.  A summary of the Decision is available here: http://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:52014 XC1018(03)&from=EN.

[12]    *Available at* http://www.gesetze-im-internet.de/englisch_gwb/englisch_gwb.html.

In sum, Defendants have not conclusively established that Germany has jurisdiction over *all* the claims alleged in this case, as is their burden, and their Motion should be denied.  *See Norex*, 416 F.3d at 157 ("If the movant fails to carry this burden [of demonstrating the availability of an adequate forum], the *forum non conveniens* motion must be denied regardless of the degree of deference accorded plaintiff's forum choice.").

## III.   PRIVATE AND PUBLIC FACTORS WEIGH IN FAVOR OF THIS COURT.

Even if Schenker were afforded little deference in its forum selection, and even if Germany were deemed an adequate forum, which it is not, this Court still must consider whether private and public interests weigh in favor of Defendants.  *Id.* at 153; *see also Piper*, 454 U.S. at 241 n.6.  Here, both those interests weigh heavily in favor of this forum.[13]

### A.     Private Factors Favor Schenker's Choice of Forum.

Private interest factors include the interest of the litigants in having the case tried in a particular forum, as well as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Iragorri*, 274 F.3d at 73–74 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)); *see also Air Cargo*, 2008 WL 5958061, at *27.

Here, Defendants identify themselves and a couple of non-parties, Lufthansa and the International Air Transport Association ("IATA"), as parties to whom Germany may be more

---

[13]   Defendants attempt to shoehorn the Air France Defendants' abstention argument, advanced in a separate motion, into the *forum non conveniens* analysis.  Mov. Br. at 10 n.7.  Abstention and *forum non conveniens* considerations call for different analyses. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722–23 (1996) (holding that "traditional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain").  Accordingly, Defendants' footnote addressing the Dutch action—an action in which Schenker is a defendant but ANA and Cargolux are not—is irrelevant to Defendants' Motion.

convenient.[14]   Not only do they fail to show that even those identified parties would be more convenienced by litigating this dispute in Germany, they ignore the bigger picture:  This global conspiracy involves dozens of participants from all areas of the world.  While no jurisdiction will provide convenience to all parties, this Court is best positioned to reduce the burden on the most parties due to the extensive discovery that has taken place in *Air Cargo*, this Court's previous oversight of that action and the substantive discovery rules and procedures available herein.  For the reasons that follow, private interests overwhelmingly favor a denial of Defendants' Motion.

## 1.   Schenker's Private Interest Favors Litigating in this Court.

Defendants Nippon, a Japanese company, and Cargolux, a Luxembourgian company, have not shown any private interest in litigating in Germany, a forum foreign to both of them.  Moreover, Defendants have failed to demonstrate that any theoretical loss of evidence would result in prejudice to them.  *Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 592–93 (S.D.N.Y. 1996) (rejecting defendants' assertion that an alleged key witnesses would not testify in New York because defendants failed to show that the witness was unwilling or that they would be prejudiced by the loss of his testimony).  Conversely, Defendants improperly ignore Schenker's undeniable interest in seeing its injury redressed in a court native to the country in which its injury occurred, based upon the laws of that country.  *See supra* at 6–8.

---

[14]   To the extent Defendants assert that individual testimony is crucial to this case, Defendants' own authority confirms that they have insufficiently demonstrated any inconvenience to the parties or witnesses for purposes of establishing their *forum non conveniens* assertions.  As held in *Medisim Ltd. v. BestMed LLC*, No. 10-2463, 2010 WL 2697073, at *2 (S.D.N.Y. July 7, 2010), "to succeed on a transfer motion, the moving party must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (Citation omitted).  Here, Defendants have not specifically identified any key witnesses, nor summarized what those hypothetical witnesses' testimony would cover.  *See* Mov. Br. 12–14.

## 2.   The Relative Ease to Access Sources of Proof and Cost Concerns Favor Litigating in this Court.

Defendants also argue that "the ease of access to evidence" and "the cost of willing witnesses' attendance" are interests served best if this case were litigated in Germany.[15]  Mov. Br. at 11.  But courts have given very little consideration to this factor where the parties, as here, are in the business of air transport and can "easily transport witnesses and documents to whichever forum is designated."  *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 61 (S.D.N.Y. 1994); *Laker Airways Ltd. v. Pan American*, 568 F. Supp. 811, 814 (D.D.C. 1983) (parties were airlines so the time and expense of transporting witnesses would be minimal); *see also Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 133–34 (E.D.N.Y. 2000) (finding that, although many relevant documents were located in France, technological advances "severely undercut" defendants' *forum non conveniens* contention).

To the extent this Court gives any weight to the location of documents and witnesses, Defendants argue, without support, that "the majority of the pertinent documents and witnesses are located in Europe, particularly Germany. . . ."  Mov. Br. at 11.  However, "over 12 million pages of documents" have already been produced in *Air Cargo*.  Mem. and Order, *Air Cargo*, 06-MD-01775-JG-VVP (Mar. 19, 2013), ECF No. 1821.  Moreover, the Complaint's allegations, which must be taken as true, assert a *global* conspiracy, not a German conspiracy, in which meetings were held in furtherance of the conspiracy in at least ten countries throughout North America, Asia, Europe and Africa.  *See Sangeorzan v. Yangming Marine Transp. Corp.*, 951 F.

---

[15]   Defendants cite *Erausquin*, 806 F. Supp. 2d at 727, for the proposition that, "the ease and expense of transporting witnesses from Luxembourg to [Germany] will be far less burdensome than to New York."  Mov. Br. at 13.  But in *Erausquin*, "most, if not all, the potential witnesses reside[d in or nearby] Luxembourg."  806 F. Supp. 2d at 727.  In this case, to the extent the evidence is not already in New York, evidence will hail from across the globe.

Supp. 650, 655–56 (S.D. Tex. 1997) ("Because of the nature of this case [involving witnesses and evidence in several countries], it . . . will be expensive and riddled with inconveniences wherever it is tried" and so dismissing the case would "simply shift inconveniences").

Undeterred, Defendants offer four reasons why documents and testimony will be more accessible in Germany than in the United States.  First, Defendants suggest that they "may seek documents and call witnesses from Schenker in Germany in order to support their defenses." Mov. Br. at 12.  The mere possibility that Defendants "may" seek discovery is hardly substantive support for their Motion.  *See Medisim*, 2010 WL 2697073, at *2.  In any event, Defendants' argument ignores that Schenker has chosen to litigate in the United States, and by virtue of initiating litigation here, has consented to discovery in the United States.  *See Laker Airways*, 568 F. Supp. at 815 ("It might be added in the *forum non conveniens* context that the plaintiff has not complained that this court is not a convenient forum; surely the defendants cannot register that complaint for plaintiff."); *Manela*, 940 F. Supp. at 592 ("[P]laintiff undoubtedly is aware that trying his case in New York will entail greater expense to him in transporting witnesses and the like").

Defendants' second and third reasons concern potential access to non-party witnesses, including Lufthansa and IATA.  Mov. Br. at 12–13.  However, Schenker and Defendants should be able to secure the "wealth of information" obtained in *Air Cargo*'s discovery by applying to this Court for a modification of the protective order in that case.  Mem. and Order, *Air Cargo*, 06-MD-01775-JG-VVP (Mar. 19, 2013), ECF No. 1821; *see Rodriguez v. Creative Concepts Inc.*, No. 3:12-cv-2978-P, 2013 WL 2370569, at *5 (N.D. Tex. May 30, 2013) ("a prior production may make it as easy to access documents in the place produced as the place originally stored"); *cf. Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991)

("[W]henever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal on the grounds of *forum non conveniens* greatly increases").

Moreover, Rule 30(b)(6) of the Federal Rules of Civil Procedure may be used to compel testimony on behalf of a corporation or other entity on any relevant topic.[16]  *Am. Cyanamid Co. v. Picaso-Anstalt*, 741 F. Supp. 1150, 1157 (D.N.J. 1990) (in a case brought against a European entity, citing Fed. R. Civ. P. 30(b)(6) to hold: "As to the availability of compulsory process, there can be little doubt that this Court is capable of summoning all of the relevant personnel involved on both sides of the case.").  Accordingly, Defendants have not demonstrated that a German court would provide a more convenient forum to access the relevant evidence than this Court. *See Rahl v. Bande*, 328 B.R. 387, 406–07 (Bankr. S.D.N.Y. 2005) ("Although related litigation in the same forum is not a *Gilbert* factor and should not be considered decisive, it is relevant with respect to access to sources of proof and will be considered accordingly.") (internal citation omitted).

Finally, Defendants argue that their own documents and witnesses are located abroad. Mov. Br. at 13.  Nippon is located in Japan, which is essentially equidistant from the United States and Germany.  Neither location is more convenient than the other, and Nippon does not argue otherwise.  With respect to both Cargolux and Nippon, they have previously been involved in the discovery process in *Air Cargo*.  Accordingly, neither Defendant is likely to be less burdened by litigating in the United States because they can benefit from the 'head start' that *Air Cargo* provides.  *See, e.g.*, *Alnwick v. European Micro Holdings, Inc.*, 29 Fed. Appx. 781, 783 (2d Cir. 2002) (When "the parties have already engaged in extensive discovery . . . the

---

[16]     In that regard, the Court may take judicial notice of the fact that Lufthansa Cargo has offices in New York and IATA has offices in Washington, D.C.

presumption against dismissal on the grounds of *forum non conveniens* greatly increases")
(internal quotations and citation omitted).

### 3.    The Availability of Witnesses Favors Litigating in this Court.

Defendants further argue that they "*may* face the obstacle of obtaining testimony and
documents in the possession of various European non-parties who *may* be unwilling to travel to
the United States." Mov. Br. at 14 (emphasis added).  To support their position, Defendants note
that "a German court could compel the testimony of key witnesses located in Germany." *Id.* at
15.  However, Defendants only identify a single German non-party, Lufthansa, and Defendants
do not assert that it would be a "prohibitive" expense or inconvenience for Lufthansa witnesses
to provide testimony in New York—nor could they, as Lufthansa provides flights to and from the
United States. *In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG), 2014 WL 7330979, at *11
(Bankr. S.D.N.Y. Dec. 22, 2014); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 301
(E.D.N.Y. 2002).   And again, Rule 30(b)(6) may be used by the parties to obtain relevant
testimony from Lufthansa officers and/or agents in the United States, as Lufthansa conducts
business and has offices in New York.

Defendants also contend that "litigating this case in Europe, where many probable
witnesses are located, *may* make those European-based witnesses more willing witnesses, thus
obviating the need for compelling their testimony." Mov. Br. at 15 (internal quotations omitted)
(emphasis added).  Again, Defendants have no evidence to support this speculation, nor do they
explain why an unwilling witness who cannot be compelled to testify in either of two
jurisdictions would choose to voluntarily testify in one but not another.[17] *See Mentor Graphics*

---

[17]    Defendants cite *Alpine A. Asset Mgt. AG v. Comstock*, 552 F. Supp. 2d 1268 (D. Kan.
2008), to support their argument that European witnesses will be more likely to submit to
the jurisdiction of Germany than the United States.  Mov. Br. at 15.  That case, however,
does not support Defendants' argument, as there, the "vast majority" of witnesses resided

*Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 512 (D. Del. 1999) (defendants failed to show that certain witnesses would not be more apt to travel to a closer jurisdiction because defendants failed to provide any statements, declarations, or other evidence suggesting that the witnesses would prefer one forum over another).

Finally, Defendants incorrectly argue that letters rogatory is an inadequate alternative to live testimony. *See* Mov. Br. at 16–17. As an initial matter, any global conspiracy such as that alleged herein will always include discovery challenges. *See, e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006) (in the context of a global conspiracy, "any forum will necessarily face some difficulty in securing evidence from abroad"). However, where "[t]he international implications of [a particular] litigation are unavoidable," letters rogatory are "an adequate means to compel documents and witness testimony from abroad in this country and elsewhere."[18] *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 362 (S.D.N.Y. 2002). Thus, given the discovery available to the parties via *Air Cargo*, and the

---

in Switzerland, the alternative forum to the United States. 552 F. Supp. 2d at 1280. Here, witnesses reside all over the globe.

[18]   In fact, contrary to Defendants' assertions, European Commission Regulation 1206/2001 does not offer a better alternative, and the cases cited by Defendants do not suggest otherwise. Defendants purport to quote *S.E.C. v. Sandifur*, No. C05-1631, 2006 WL 3692611, at *16 (W.D. Wash. Dec. 11, 2006), about the advantages of Regulation 1206/2001, but the language quoted actually derives from *Vivendi v. T-Mobile USA, Inc.*, No. CO6-1524JLR, 2008 WL 345283 (W.D. Wash. June 5, 2008). *See* Mov. Br. at 16. *Vivendi* provides that 1206/2001 "slightly favors" litigating in Europe, where nearly all of the witnesses were European, and the domestic litigation was on the west coast of the United States. 2008 WL 2345283, at *13. Here, witnesses, including those of the named Defendants, reside around the globe and the litigation is more centrally located in New York. Defendants also cite *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, No. 1-13-2327, 2014 WL 3735919 (Ill. App. Ct. July 28, 2014). Relying on Illinois state law, that court determined that Regulation 1206/2001 was a preferable means of eliciting testimony from uncooperative European witnesses when 21 of the 25 witnesses in the case resided in Europe. *Id.* at *9. That is not the case here, and Defendants have not demonstrated the contrary.

scope of Rule 30(b)(6), Defendants' complaints about letters rogatory do not demonstrate that Germany is a more convenient forum.

### B.    Public Interest Factors Favor Schenker's Choice of Forum.

Public interest concerns also favor Schenker's choice of forum.  *See Piper*, 454 U.S. at 241 n.6; *see also Air Cargo*, 2008 WL 5958061, at *27.  Defendants concede that "the interest in resolving local controversies locally . . . is likely the most important public interest factor," but claim that Germany is that locale.  Mov. Br. at 17.  However, the antitrust injury suffered by Schenker *relating to the United States* is at the heart of this case.[19]  Compl.  ¶¶ 217–233.  Thus, the United States, not Germany, has a "definite interest in correcting wrongs committed on its soil, and in deterring similar actions by other . . . corporations."  *Mandanes v. Mandanes*, 981 F. Supp. 241, 267 (S.D.N.Y. 1997); *see also Virgin Atlantic*, 872 F. Supp. at 62 (holding that, although some of the conduct occurred in the United Kingdom, public interest factors weighed in favor of the U.S. forum because the antitrust conduct affected the United States and violated U.S. law); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 225 (S.D.N.Y. 1992) (holding that the court had a "substantial interest in affording United States citizens a forum, in enforcing the federal securities laws, and in preserving the integrity of [U.S.] markets"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 653 (1985) (holding that the Sherman Act's mandatory treble damages provision is an "especially powerful deterrent" to antitrust violators, and that "every violation of the antitrust laws is a blow to the free-

---

[19]    Defendants contend that Schenker's German citizenship renders this case of "local interest" to Germany.  Mov. Br. at 18.  Defendants' authority supports a contrary conclusion.  In *Munsell v. LaBrasserie Molson Du Quebec Ltd.*, 618 F. Supp. 1383 (E.D.N.Y. 1985), the court held that public factors weighed in support of dismissal of the New York action in favor of Canada as "the action arose solely in Canada, concerns Canadian citizens, and is governed by Canadian law."  618 F. Supp. at 1388.  Similarly, here, Schenker's claims are based on U.S. transactions, concern global and U.S. citizens, and U.S. law governs—confirming the United States as the appropriate "local" forum.

enterprise system envisaged by Congress") (citation omitted).[20]

Completely disregarding Schenker's U.S. injuries, Defendants argue that Germany has a strong interest in "resolving a dispute brought by a German company" and in "addressing an alleged conspiracy that was mostly hatched and carried out in Europe, and particularly in Germany." Mov. Br. at 18. But again, the conspiracy alleged is a global one, encompassing at least ten countries on four continents and Defendants' attempt to re-characterize it as German-centric is belied by the allegations of the Complaint which must be taken as true. In fact, Defendants concede that Asia and Switzerland were also focal points of the conspiracy, and that meetings occurred within the United States, including in New York, in furtherance of the conspiracy. *Id.*

Even if Defendants were correct that Germany were the focal point of the conspiracy, which they are not, there is still a strong public interest in having the case adjudicated in the United States because the conduct had an effect in this forum and violated the laws of this country. *Virgin Atlantic*, 872 F. Supp. at 62 (holding that, even though some of the antitrust conduct occurred in, and impacted, the United Kingdom, the United States had a "strong interest" in the litigation because the conduct violated federal antitrust laws and affected competition in the United States); *CINAR*, 186 F. Supp. 2d at 279 (U.S. courts have a "special interest in preserving the integrity of American financial markets"). Defendants' case is not to the contrary. *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285 (5th Cir. 1989)

---

[20]    Defendants improperly compare this case to cases where the injuries occurred outside of the United States. *See, e.g.*, *In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006*, 574 F. Supp. 2d 272, 288 (E.D.N.Y. 2008) (dismissing case on *forum non conveniens* grounds where plaintiffs were Brazilian nationals and case concerned air crash that "was the largest aviation accident in Brazil's history at the time").

(finding that, unlike here, when a foreign government-owned party is a *defendant*, the foreign government's interest may be greater).

Defendants finally argue that interests of judicial economy favor litigating in Germany because duplicative parallel litigation is already proceeding there.[21]   Mov. Br. at 19–20.   The Second Circuit, however, has instructed that, "[t]he existence of related litigation . . . is not listed as a relevant factor in *the forum non conveniens* analysis laid out in *Gilbert*."   *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000); *see also DiRienzo*, 294 F.3d at 31 (related, foreign litigation is of "little weight").   Moreover, the actions are not in fact "parallel," as the parties and claims are not the same.   Revealingly, Defendants did not move for dismissal based on the doctrine of abstention, essentially conceding that the actions are not parallel.   Further, Defendants have not established that *any* German court would have jurisdiction over *all* of Schenker's claims, as Schenker's claims include shipments that have no nexus to Germany or even the European Union.   In any event, hypothetically similar litigation overseas does not diminish the district courts' "virtually unflagging obligation to exercise the jurisdiction given them."   *Elcan*, 2014 WL 1173343, at *7.

And ultimately, as discussed above, this Court's experience with the facts and issues of this case, as it concerns nearly identical allegations as those made in *Air Cargo*, weighs strongly against dismissal.   *See In re CRT Antitrust Litig.*, No. CV 07-5944, 2014 WL 2581581, at *5

---

[21]   Defendants cite *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09-7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009), for the proposition that a parallel foreign proceeding is a relevant public factor.   Mov. Br. at 19.   Even *Argus*, however, cautioned that "this fact need not weigh heavily in the analysis" and ultimately held, despite the parallel proceeding, that "public interest factors do not tilt strongly in favor of dismissal under forum non conveniens" because the complaint was not one that "has absolutely no relation to the forum" and because the claim arose under U.S. law.   *Id.* at *6.   Here, Schenker's claim is based on U.S. transactions and involves solely U.S. law; as in *Argus*, this outweighs any potential relevance of an allegedly related foreign proceeding.

(N.D. Cal. June 9, 2014) (public factors weigh in favor of the plaintiff because "[t]his litigation has proceeded before [this Court] for years, with the Court . . . now being well acquainted with the parties and issues in this case").

**CONCLUSION**

For the reasons set forth above, Defendants' Motion on the ground of *forum non conveniens* should be denied in its entirety.


Dated:  January 30, 2015                Respectfully submitted,

                                        By:     /s/Sheldon T. Zenner

                                                Sheldon T. Zenner (*pro hac vice*)
                                                Mary Ellen Hennessy (*pro hac vice*)
                                                Thomas P. Peabody (*pro hac vice*)
                                                KATTEN MUCHIN ROSENMAN LLP
                                                525 West Monroe Street
                                                Chicago, Illinois 60661-3693
                                                Telephone: 312.902.5200
                                                Facsimile: 312.902.1061
                                                Email: sheldon.zenner@kattenlaw.com
                                                        maryellen.hennessy@kattenlaw.com

                                                James J. Calder
                                                Mark T. Ciani
                                                KATTEN MUCHIN ROSENMAN LLP
                                                575 Madison Avenue
                                                New York, New York  10022-2585
                                                Telephone: 212.940.8800
                                                Facsimile:  212.940.8776
                                                Email: james.calder@kattenlaw.com

                                                *Attorneys for Schenker AG*

25