UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCHENKER AG,

Plaintiff,

v.

SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V., MARTINAIR HOLLAND N.V., CARGOLUX AIRLINES INTERNATIONAL S.A., NIPPON CARGO AIRLINES CO., LTD., ALL NIPPON AIRWAYS CO., LTD., QANTAS AIRWAYS LIMITED, and SAS CARGO GROUP A/S.

Defendants.

Case No. 14-CV-04711 (JG) (VVP)

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT QANTAS AIRWAYS LIMITED'S MOTION TO DISMISS**
**BASED ON THE STATUTE OF LIMITATIONS**

W. Todd Miller (admitted pro hac vice)
Ishai Mooreville (admitted pro hac vice)
Baker & Miller PLLC
2401 Pennsylvania Ave, NW
Suite 300
Washington, DC 20037
202-663-7820
Fax: 202-663-7849
Email: TMiller@bakerandmiller.com
Email: IMooreville@bakerandmiller.com

*Counsel for Qantas Airways Limited*

**TABLE OF CONTENTS**


I. Schenker Has Still Not Sufficiently Pled Fraudulent Concealment Beyond February 14, 2006 .....3

II. This Court Should Decide Qantas' Motion On the Present Record Because Discovery Will Not Aid the Court's Analysis .....5

III. The Relate-Back Doctrine is Not Applicable in a Separately Filed Proceeding .....6

IV. Schenker's Claims Are Not Indefinitely Tolled under the Government Tolling Provision For Fugitives Outside U.S. Jurisdiction.....8

**TABLE OF AUTHORITIES**

**CASES**

*Corcoran v. Sinclair,* No. 97-CV-9286, 1999 U.S. Dist. LEXIS 3732 (S.D.N.Y. Mar. 29, 1999) ....................7

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 995 F. Supp. 2d 125 (E.D.N.Y. 2014) ....................7

*Benchmark Export Servs. v. China Airlines Ltd.*, No. 10-CV-639, 2010 U.S. Dist. LEXIS 146377 (E.D.N.Y. Sept. 22, 2010)....................4, 5, 9

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987) ....................7

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012)....................6

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) ....................6

*Falik v. Parker Duryee Rosoff & Haft*, 869 F. Supp. 228 (S.D.N.Y. 1994) ....................4

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y. 2011) ....................7

*Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322 (1978) ....................8, 9

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)....................3

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, No. 00-CV-7804, 2004 U.S. Dist. LEXIS 3892 (S.D.N.Y. Mar. 9, 2004) .................... 6-7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ....................6

*In re Merrill Lynch Ltd. Pshps. Litig.*, 7 F. Supp. 2d 256 (S.D.N.Y. 1997) ....................4

*Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518 (S.D.N.Y.1977) ....................1

*Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538 (2010) ....................7

*LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136 (E.D.N.Y. 2010)....................3

*Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008) ....................5

*Strada v. City of New York*, No. 11-CV-5735, 2014 U.S. Dist. LEXIS 94687 (E.D.N.Y. July 11, 2014) ....................7

*United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984)....................1

*United States v. Schenker AG*, No. 10-CR-271 (D.D.C. Dec. 9, 2011) ....................5

**STATUTES**

15 U.S.C. § 16(i) ....................8, 10

**RULES**

Fed. R. Civ. P. 9(b) ....................5
Fed. R. Civ. P. 11 ....................5
Fed. R. Civ. P. 15(c) ....................6

This Court must accept Schenker's own allegations: that Schenker learned of its claims in February 2006, quote, "at the earliest". Compl. ¶ 191. Schenker's Complaint does not distinguish between when it learned of its claims against each defendant; it does not state that it discovered its claims against Qantas at some later date; and it does not state that Schenker was ignorant of its claims against Qantas until four years before it filed its Complaint (April 24, 2006). The phrase "at the earliest" has no legal significance: if Schenker discovered its claims in February 2006, it could not then have re-discovered them again at some later date.[1]

Faced with its own words, Schenker has tried to impermissibly amend (and contradict) its own Complaint via its Opposition Brief.[2] But this Court is required to accept Schenker's very own allegations – that its discovery of its claims took place in February 2006. Thus, Schenker's claim is time-barred and discovery is unnecessary to resolve Qantas' Motion.

In addition, even accepting Schenker's improper attempts to restate its own Complaint, Schenker still fails to address the central issue: was there sufficient information publically available for Schenker to file a plausible Complaint against Qantas by February 15, 2006?

The answer, as demonstrated in Qantas' Motion to Dismiss (Mot.), is a resounding and undeniable "yes". As described in Qantas' Motion, IATA (of which Qantas is a known member) applied for immunity to implement surcharges according to a common index in January 2000, but the DOT publically rejected this application in March 2000. That same year, shippers were already making complaints to the European Commission about alleged price-fixing of surcharges. (Mot., Ex. 7, ECF No. 39-11). Then, in 2003, the Hong Kong Civil Aviation

---

[1] "[P]leadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed..." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).

[2] *See, e.g. Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 526 (S.D.N.Y. 1977) (a party may not amend pleading through statements in briefs).

Department issued notice that 60 airlines, including Qantas, were calculating their fuel surcharge through a common fuel index, including on flights between Asia and the "rest of the world" (e.g. the United States). (Mot., Ex. 8, ECF No. 39-12). And in March 2005, the Australian Financial Review reported that Qantas was planning to raise its fuel surcharge in line with Lufthansa's fuel index. (Mot., Ex. 9, ECF No. 39-13). Countless other articles described how a common fuel index was used throughout the air cargo industry before February 2006. (Mot., Exs. 1, 11-20).

It is irrelevant that Qantas was not raided on February 14, 2006, and was not issued a subpoena by the Department of Justice until May 2006, because there was enough publically available information for Schenker to have filed a lawsuit against Qantas by February 15, 2006, and certainly to have been on inquiry notice of its potential claims.

As Schenker concedes, Qantas was not named as a defendant in the *Air Cargo* Class Action until February 8, 2007 (Mot., Ex. 3)("February 2007 Complaint"). The contents of that February 2007 Complaint are instructive here. First, that February 2007 Complaint against Qantas did not plead any fraudulent concealment beyond February 2006. (Mot. Ex. 3, ¶ 137). Second, that February 2007 Complaint was filed before Qantas pled guilty to any antitrust violation. *Id.* In fact, no airline pled guilty to antitrust violations until August 1, 2007, at the earliest.[3] Thus, the only intervening change between February 15, 2006 (when the raids were announced) and February 8, 2007 (when the first Complaint against Qantas was filed) was that Qantas revealed it had received a subpoena from the Department of Justice.

But the mere fact that Qantas had received a subpoena was not a necessary predicate for Schenker to file a plausible claim against Qantas. In fact, the February 2007, Complaint filed against Qantas makes no mention of any subpoena served on Qantas. That is because the receipt

[3] http://www.justice.gov/atr/public/press_releases/2007/224928.htm.

of a subpoena is not an independent fact that makes the existence of an antitrust conspiracy more or less likely. "[N]either mere participation in an investigatory interview nor the receipt of a subpoena is necessarily probative of [an antitrust] conspiracy…" *LaFlamme v. Societe Air Fr.*, 702 F. Supp. 2d 136, 154 (E.D.N.Y. 2010); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (issuing subpoenas and initiation of investigation "carries no weight in pleading an antitrust conspiracy claim").

Thus, the same allegations asserted against Qantas in the February 2007 Complaint could *also* have been filed on February 15, 2006 against Qantas and still would have plausibly alleged that Qantas was a part of the same conspiracy. And all this could have been based on information in the public domain. This is what dooms Schenker's protestations of its lack of knowledge about Qantas' role, notwithstanding its signed pleading to the contrary.

## I. Schenker Has Still Not Sufficiently Pled Fraudulent Concealment Beyond February 14, 2006

While Qantas' Motion points this Court to publically available information that indicates the cargo industry's knowledge of a potential conspiracy among air cargo carriers well before February 14, 2006, Qantas need not dispute, for the purposes of this Motion, Schenker's allegations that defendants engaged in fraudulent concealment up until February 14, 2006. It is a red-herring.

The relevant period for purposes of Schenker's argument is after February 14, 2006, and Schenker's Complaint does not sufficiently plead fraudulent concealment after that date. Therefore, its statute of limitations began to run on February 15, 2006.

Schenker's insistence that one of the largest freight forwarders in the world, with affiliates located in every major country including Australia, was not aware, and could not have

learned, of Qantas' potential involvement in the conspiracy after February 15, 2006, is not supported by the public record and is implausible.

After the DOJ raids were reported on February 15, 2006, to not recognize the potential scope of the conspiracy would have required deliberate and willful ignorance. "[O]nce a plaintiff becomes aware of direct contradictions between the defendant's representations and other materials available to the plaintiff, plaintiffs are thereby left with reason to be suspicious of defendant, and it is no longer reasonable for them to defer to the defendant's representations." *In re Merrill Lynch Ltd. Pshps. Litig.*, 7 F. Supp. 2d 256, 275 (S.D.N.Y. 1997)(internal citations omitted), *aff'd*, 154 F.3d 56 (2d Cir. 1998).[4] Schenker did not plead, because it could not, any facts demonstrating that it engaged in any effort to determine the scope of the alleged conspiracy once the raids took place in February 2006.

The *Benchmark* decision, adopted by this Court, involved similar legal issues but a different set of facts. *Benchmark Exp. Sevs. v. China Airlines, Ltd. (In re Air Cargo Shipping Servs. Antitrust Litig.),* No. 10-CV-639, 2010 U.S. Dist. LEXIS 146377 (E.D.N.Y. Sept. 22, 2010)("*Benchmark*"). In *Benchmark*, plaintiffs' complaint was filed on February 12, 2010, which the Court stated were "just barely" filed within four years of discovery of their claims on February 14, 2006. *Id.* at *160-161.

The *Benchmark* plaintiffs also acknowledged in their Complaint that there was no fraudulent concealment beyond February 2006,[5] even though two of the airlines sued in that case

---

[4] *See also Falik v. Parker Duryee Rosoff & Haft*, 869 F. Supp. 228, 233 (S.D.N.Y. 1994) (stating that "[o]nce a plaintiff has constructive notice of a fraud, neither reassurances from the defendants nor fraudulent concealment will relieve the plaintiff of [their] duty of reasonable diligence.").

[5] Complaint, *Benchmark et. al. v. China Airlines et. al.,* No. 10-cv-00639 (Feb. 12, 2010) ECF No. 1, ¶ 174.

(Malaysia Airlines and Air India) have never pled guilty to participating in an air cargo conspiracy in the United States. Therefore, the *Benchmark* decision did not have reason to consider whether plaintiffs had pled fraudulent concealment *beyond* February 14, 2006.

Thus, Schenker has failed to plead the elements of fraudulent concealment beyond February 15, 2006 with particularity, as required under Federal Rule of Civil Procedure 9(b) and the statute of limitations began to run as of that date.[6]

## II. This Court Should Decide Qantas' Motion On the Present Record Because Discovery Will Not Aid the Court's Analysis

Qantas' Motion should be decided on the Record before the Court because Schenker's Complaint admits that it discovered its claims in February 2006. To allow Schenker to have a "do over" on its very own pleading and construct implausible allegations of its lack of knowledge of Qantas' involvement, in the face of the very public information that put Schenker on inquiry notice of its potential claims even before the February 2006 raids, would be to turn Fed. R. Civ. P. 11 and related rules on their head.

It is well-settled law that a court should grant a motion to dismiss based on a statute of limitations when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008)(internal citations omitted). *See also* Qantas' concurrently filed Reply in Support of the Request for Judicial Notice. And "courts can readily

---

[6] Schenker has pled guilty to agreeing with other freight forwarders to fix rates charged to their customers during a time period (2004 to December 2007) that overlaps with the period during which Schenker alleges that defendants were fixing rates charged to it. Thus, Schenker had good reason *not* to conduct due diligence into the fuel surcharges charged by Qantas, so as to avoid raising suspicions of its own conspiracy to raise rates. *See United States v. Schenker AG*, No. 10-CR-271 (D.D.C. Dec. 9, 2011)(ECF No. 21), *available at* http://www.justice.gov/atr/cases/f278300/278378.pdf.

resolve the issue of inquiry notice as a matter of law on a motion to dismiss..." *Id.* at 412. *See, e.g. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 706-07 (S.D.N.Y. 2013)(finding plaintiffs were on inquiry notice on motion to dismiss).

The *DPWN Holdings* action has important factual differences and therefore the decision there to allow claims to proceed to discovery should not be applied here. In that action, the plaintiff filed its complaint on February 4, 2011, against United Airways ("United"), and "[t]he parties agree[d] that the limitations period should be measured from February 14, 2006, the date of the dawn raids." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 149 (E.D.N.Y. 2012). The real issue in that case was whether the plaintiff had, or should have had, knowledge of its antitrust claims against United by February 1, 2006, the date that United's bankruptcy reorganization plan became effective and two weeks before the raids by the antitrust enforcement agencies. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 149 (2d Cir. 2014). Thus, while it might have been uncertain there what the plaintiff knew by February 1, 2006, it is undeniable that all freight forwarders should have known by February 15, 2006, after the raids, that there was an industry-wide alleged conspiracy to fix fuel surcharges.

## III. The Relate-Back Doctrine is Not Applicable in a Separately Filed Proceeding

Though Schenker has only filed one Complaint in this case, it argues that Federal Rule 15(c), governing "relation back of amendments" to complaints should entitle them to tolling from February 17, 2006, even though Qantas was not named as a defendant until February 8, 2007. But this argument has been soundly rejected, because the "relate back" provisions of Rule 15(c) do not apply to entirely new filed cases. *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, No. 00-CV-7804, 2004 U.S. Dist. LEXIS 3892, at *12, (S.D.N.Y. Mar. 9, 2004). There, the Court said that "[p]laintiffs' argument has one fundamental flaw: the issuer complaint

is not an amended pleading, but rather an entirely new complaint. By its terms, Rule 15(c) simply does not apply to complaints filed in separate lawsuits." *Id.* *See also Corcoran v. Sinclair,* No. 97-CV-9286, 1999 U.S. Dist. LEXIS 3732, at *32 (S.D.N.Y. Mar. 29, 1999)(stating that "[a] lawsuit...may not relate back to a complaint filed in a prior action").

As Qantas stated in its original Motion, the filing of class action suits against other defendants does *not* toll the statute of limitations against Qantas. *See, e.g. Cullen v. Margiotta*, 811 F.2d 698, 726 (2d Cir. 1987) (stating that "commencement of a suit against others is insufficient to give a nondefendant notice of the assertion of claims against him"); *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624 n.1 (S.D.N.Y. 2011)(stating that "tolling does not extend to persons not named as defendants in the prior class action suit.") Thus, Schenker's claims are only tolled from the date that Qantas was first named as a Defendant, which was February 8, 2007, and Schenker cannot claim relation back to entirely separate cases against other defendants filed prior to February 8, 2007.[7]

## IV. Schenker's Claims Are Not Indefinitely Tolled under the Government Tolling Provision For Fugitives Outside U.S. Jurisdiction

[7] The primary case relied upon by Schenker, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 557 (2010)("*Krupski*"), is not applicable here because *Krupski* did not even address the question of whether class action tolling can extend to non-Defendants or whether a new complaint can relate back to a complaint filed in a separate action. *Id.*

Multiple courts have held that, even post-*Krupski,* Rule 15(c) only allows relation back for a "mistake concerning the proper party's identity". *Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 995 F. Supp. 2d 125, 130-31 (E.D.N.Y. 2014). *See also Strada v. City of New York*, No. 11-CV-5735, 2014 U.S. Dist. LEXIS 94687 at *33, n. 7 (E.D.N.Y. July 11, 2014)(holding that "a 'mistake' as described in Rule 15(c) does not cover instances where a party fails to timely name a John Doe defendant.")

Here, there was no case of mistaken identity for not including Qantas in the February 2006 complaints – plaintiffs simply omitted Qantas as a defendant for lack of due diligence, or other unknown reasons.

Schenker argues that tolling should apply on the basis that six air cargo employees are currently fugitives from justice. At this point, it is doubtful that such individuals will ever voluntarily submit themselves to arrest in the U.S, and Schenker has not submitted any evidence that shows there have been attempts to extradite them from abroad or that other proceedings have taken place. But under Schenker's logic, any Air Cargo opt-out plaintiffs' claims should be tolled indefinitely, perhaps decades, until these fugitives return to the U.S. (or pass away), by which time most of the witnesses to these events would have either faded memories or be deceased.

The statute only allows tolling "during the pendency" of a criminal proceeding, and one year thereafter. 15 U.S.C. § 16(i). But where a fugitive remains outside U.S. custody, and the government has taken no action besides filing an indictment more than three years before Schenker's Complaint was filed, the proceeding cannot reasonably be said to be "pending" for the purposes of the statute. To hold otherwise would be completely contrary to Congress' intention to make it "a statute of repose" so as to promote "certainty and predictability". *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334-335 (1978). In that decision, the Supreme Court quoted the 1955 Senate Report that enacted the statute:

> While the committee believes it important to safeguard the rights of plaintiffs by tolling the statute during the pendency of Government antitrust actions, it recognizes that in many instances the long duration of such proceedings taken in conjunction with a lengthy statute of limitations may tend to prolong stale claims, unduly impair efficient business operations, and overburden the calendars of courts. The committee believes the provision of this bill *will tend to shorten* the period over which private treble-damage actions will extend by requiring that the plaintiff bring his suit within 4 years after it accrued or within 1 year after the Government's case has been concluded.
>
> While the committee considers it highly desirable to toll the statute of limitations during a Government antitrust action and to grant plaintiff a reasonable time thereafter in which to bring suit, *it does not believe that the undue prolongation of*

> *proceedings is conducive to effective and efficient enforcement of the antitrust laws.*

S. Rep. No. 619, 84th Cong., 1st Sess., 6 (1955)(italics added) (quoted in *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334 (1978)). Furthermore, "Congress did not intend that the statute of limitations should be done away with altogether" as a result of the statute. *Benchmark*, 2010 U.S. Dist. LEXIS 146377, at *173 (E.D.N.Y. Sept. 22, 2010).

Here, the last guilty plea obtained from a *corporate* defendant was from EVA Airways on June 24, 2011. (Compl. ¶ 177). And the last guilty plea obtained from *individuals* was from two Cargolux employees on December 8, 2011.[8] The indictments to which Schenker points all pre-date these actions and there has been no further activity in those cases since the indictments were returned. Thus, it is real stretch to call cases that have simply been docketed, without further activity for over 2 ½ years, to be ongoing.

Ignoring these indictments as they relate to Qantas would be completely consistent with the statute and its purpose. The statute tolls the limitations period for one year after the conclusion of an *actual* investigation so as to give a plaintiff adequate time to "study the Government's case, estimate his own damages, assess the strength and validity of his suit, and prepare and file his complaint." S. Rep. No. 619, 84th Cong., 1st Sess., 6 (1955). The purpose of tolling is therefore to help civil plaintiffs gather evidence for their claims, but any of the conceivable information that could be obtained from such fugitives is already available from other sources. The persons who are still fugitives are 1) Maria Christina Ullings, who worked for Martinair Cargo (owned by Air France-KLM) in the Netherlands (a fugitive since September

[8] http://www.justice.gov/atr/public/press_releases/2011/278133.htm.

21, 2010);[9] 2) Yoshio Kunugi and Naoshige Makino, who worked for Nippon Cargo in the U.S. and Japan, and Takao Fukuchi, who worked for Japan Airlines in Japan (fugitives since November 26, 2010);[10] and 3) Marc Boudier and Jean Charles Foucault, who worked for Air France Cargo in France (fugitives since April 26, 2011).[11] As demonstrated by the docket sheets appended to plaintiff's opposition, there has been no substantive activity in any of these cases since the filing of the indictments, (Pl's Opp., Exs. B-D), and therefore such cases should not be deemed to be "pending" for purposes of tolling against third-parties.

Perhaps most importantly, the employers for all of these fugitives have already pled guilty to antitrust violations, and therefore any information that may aid plaintiff's case could be obtained from their employers' guilty pleas, or via 30(b)(6) depositions or discovery from such entities, since the fugitives' records from the period of 1999 through 2006 (defined as the "Relevant Period" in Schenker's Complaint) are likely still in their companies' possession.

Therefore, the government investigation tolling provision, 15 U.S.C. § 16(i), should not apply to outstanding warrants for fugitives who are unlikely to ever be arrested and who do not possess any information that could not be obtained from other sources. If tolling is allowed to continue forever, it would render the statute effectively a nullity in this case, and in any other large global antitrust investigation where outstanding warrants may remain pending for decades.

---

[9] http://www.justice.gov/atr/cases/f262800/262880.htm. Case No. 10-cr-00406 (N.D. Ga.).

[10] http://www.justice.gov/atr/cases/f265300/265301.pdf. Case No. 10-cr-00478 (N.D. Ga.).

[11] http://www.justice.gov/atr/cases/f270900/270909.htm. Case No. 11-cr-00308 (N.D. Ill.).

Dated: February 6, 2015

Respectfully submitted,

/s/ W. Todd Miller
W. Todd Miller (admitted pro hac vice)
Ishai Mooreville (admitted pro hac vice)
Baker & Miller PLLC
2401 Pennsylvania Ave, NW
Suite 300
Washington, DC 20037
202-663-7820
Fax: 202-663-7849
Email: TMiller@bakerandmiller.com
Email: IMooreville@bakerandmiller.com

*Counsel for Qantas Airways Limited*

Certificate of Service

I, Ishai Mooreville, hereby certify that I served the foregoing Reply Memorandum of Law on all parties registered with the ECF System on February 6, 2015.

Signed: /s/ Ishai Mooreville
Ishai Mooreville