UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHENKER AG,<br><br>        Plaintiff,<br><br>    v.<br><br>SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V., MARTINAIR HOLLAND N.V., CARGOLUX AIRLINES INTERNATIONAL S.A., NIPPON CARGO AIRLINES CO., LTD., ALL NIPPON AIRWAYS CO., LTD., QANTAS AIRWAYS LIMITED, and SAS CARGO GROUP A/S,<br><br>        Defendants. | Case No. 14-CV-04711 (JG) (VVP) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
CERTAIN DEFENDANTS' MOTION TO DISMISS**

Dated:  February 6, 2015

Ankur Kapoor
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
212.350.2700 (telephone)
212.350.2701 (facsimile)
akapoor@constantinecannon.com

Charles J. Simpson, Jr.
ZUCKERT, SCOUTT & RASENBERGER, L.L.P.
888 17th Street NW, Suite 700
Washington, D.C. 20006
202.298.8660 (telephone)
202.342.0683 (facsimile)
cjsimpson@zsrlaw.com
*Counsel for All Nippon Airways Co., Ltd.*

Heather Lamberg-Kafele
Alexandra V. Filippova
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue NW, Suite 900
Washington, D.C. 20004
202.508.8000 (telephone)
202.508.8100 (facsimile)
hkafele@shearman.com
sasha.filippova@shearman.com

K. Mallory Brennan
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
212.848.4000 (telephone)
212.848.7179 (facsimile)
mallory.brennan@shearman.com
*Counsel for Cargolux Airlines International S.A.*

# **TABLE OF CONTENTS**

I.     Schenker's Choice of Forum in The United States
is Entitled to Very Little Deference ................................................................................ 1

II.    Germany is an Adequate Alternative Forum ..................................................................... 4

III.   Private Interest Factors Counsel that this Case
Should Not Be Heard in the United States......................................................................... 6

IV.   Public Interest Factors Counsel that this Case
Should Not Be Heard in the United States......................................................................... 8

V.    Conclusion ......................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**                                                         **Page(s)**

*Accord Tjontveit v. Den Norske Bank ASA*,
   997 F. Supp. 799 (S.D. Tex. 1998) ........................................................................................ 4

*Alnwick v. European Micro Holdings, Inc.*,
   29 Fed. Appx. 781 (2d Cir. 2002) .......................................................................................... 7

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
   155 F.3d 603 (2d Cir.1998) .................................................................................................... 3

*Carney v. Singapore Airlines*,
   940 F. Supp. 1496 (D. Ariz. 1996) ........................................................................................ 7

*Chirag v. MT Marida Marguerite Schiffahrts*,
   983 F. Supp. 2d 188 (D. Conn. 2013) .................................................................................... 3

*Colavito v. Apfel*,
   75 F. Supp. 2d 385 (E.D. Pa. 1999) ....................................................................................... 2

*De Aguilar v. Boeing Co.*,
   11 F.3d 55 (5th Cir. 1993) ..................................................................................................... 2

*Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*,
   325 P.3d 70 (Utah 2014) ....................................................................................................... 3

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*,
   No. 13-C-00435, 2014 WL 4100445 (N.D. Ill. Aug. 20, 2014) ............................................. 6

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ................................................................................. 2

*In re Air Cargo Ship. Servs. Antitrust Litig.*,
   No. 06-1775, Final Judgment, Exh. A, Att. 2, ECF 1530-1 (July 22, 2011) .................... 2, 7

*In re Enron Corp.*,
   349 B.R. 115 (S.D.N.Y. 2006) ............................................................................................... 8

*Lony v. E.I. Du Pont de Nemours & Co.*,
   935 F.2d 604 (3d Cir. 1991) .................................................................................................. 7

*Montgomery County, Md. v. Jaffe, Raitt, Heuer & Weiss, P.C.*,
   897 F. Supp. 233 (D. Md. 1995) ........................................................................................... 2

*Online Payment Solutions Inc. v. Svenska Handelsbanken AB*,
 638 F. Supp. 2d 375 (S.D.N.Y. 2009) .................................................................................... 4

*Pain v. United Technologies Corp.*,
 637 F.2d 775 (D.C. Cir. 1980) ................................................................................................ 2

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ................................................................................................................ 4

*Reilly v. Natwest Markets Group Inc.*,
 181 F.3d 253 (2d Cir. 1999) .................................................................................................... 8

*Schertenleib v. Traum*,
 589 F.2d 1156 (2d Cir. 1978) .................................................................................................. 4

*Tri-State Hosp. Supply Corp. v. U.S.*,
 226 F.R.D. 118 (D.D.C. 2005) ................................................................................................ 8

*Turedi v. Coca Cola Co.*,
 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ..................................................................................... 4

*U.S. v. Taylor*,
 166 F.R.D. 356 (M.D.N.C. 1996) ........................................................................................... 8

*Vivendi S.A. v. T-Mobile USA, Inc.*,
 No. C06-1524JLR, 2008 WL 2345283 (W.D. Wash. June 5, 2008) ....................................... 8

*Wultz v. Bank of China Ltd.*,
 298 F.R.D. 91 (S.D.N.Y. 2014) ............................................................................................... 8

**Statutes and Authorities**

Federal Rule of Civil Procedure 30(b)(6) ................................................................................. 7, 8

**Other Authorities**

Summary of Commission Decision (Nov.9, 2010) ........................................................................ 6

Martin Buntscheck and Hanna Stichweh, "*The European Antitrust Review 2015*,"
 The Global Antitrust Review, ch. 31 (2015) ........................................................................... 5

EU Regulation No. 1215 (2012) ..................................................................................................... 5

EU Commission Regulation No. 1206 (2001) ............................................................................... 8

*The Convenient Forum Abroad*,
 20 Stan. L. Rev. 57 (1967) ...................................................................................................... 3

This case involves allegations of a global antitrust conspiracy against an international group of non-U.S. defendants, including All Nippon Airways Co., Ltd. ("ANA") and Cargolux Airlines International S.A. ("Cargolux") (collectively, "Defendants"), with a Euro-Germanic center of gravity: plaintiff Schenker AG ("Schenker") is a German company owned by the German government, many of the defendants and key non-parties[1] are European companies based in Europe, and the majority of the evidence and likely witnesses are in Europe.[2] Nonetheless, Schenker – relying on the American nationality of a mere <u>two</u> of its several hundred affiliate-assignors, needlessly speculating on whether a German court would assert jurisdiction as to this matter, and exaggerating the connection between this case and the United States – avers that there are superior reasons for litigating this matter in the United States, rather than in Germany. For the reasons detailed below, Schenker is incorrect. Given the totality of the circumstances, Germany is a more convenient forum.

**I.     Schenker's Choice of Forum in the United States is Entitled to Very Little Deference**

Throughout its brief, Schenker exaggerates the connection between this matter and the United States, doubling-down on its demonstrated eagerness to litigate in the one country that awards treble damages for antitrust injuries.[3]

First, Schenker's principal argument for deference to its choice of a U.S. forum is that Schenker's "injuries occurred here." Sch. Br. at 1. To support this argument, Schenker produces

---

[1] Schenker's dismissive description of Lufthansa and IATA in its brief as merely "a couple of non-parties," Schenker Brief ("Sch. Br.") at 15, is misleading and at odds with their Complaint, which characterizes both the former – mentioned no less than 365 times in the Complaint – and the latter as central figures in the alleged conspiracy. *See* Defendants' Brief ("Defs. Br.") at 12-14. Similarly, to say that "Defendants only identify a <u>single</u> German non-party, Lufthansa" is equally misleading. Sch. Br. at 20 (emphasis added).

[2] None of the alleged co-conspirators is an American entity.

[3] *See* Defs. Br. at 6-7 (describing Deutsche Bahn press release trumpeting the availability of treble damages in the United States).

1

the declaration of its counsel, which cherry-picks,[4] from among the galaxy of Schenker's affiliate-assignors, all of <u>two</u> American entities. *See* Hennessy Decl. ¶ 3. Whatever injuries are alleged to have occurred in the United States are outweighed by the alleged injuries to seemingly hundreds of Schenker affiliate-assignors outside the United States. Schenker "cannot expect the court to defer automatically to [its] forum choice merely because one" – or in this case, two – "of [its] number is an American resident." *Pain v. United Technologies Corp.*, 637 F.2d 775, 798 (D.C. Cir. 1980). There were approximately 900 Deutsche Bahn "opt-outs" from the class settlements, *see*, *e.g.*, Final Judgment, Exh. A, Att. 2, ECF 1530-1, *In re Air Cargo Ship. Servs. Antitrust Litig*, No. 06-1775 (Jul. 22, 2011),[5] of which only two are identified as U.S. companies.[6] *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004), is instructive. There, plaintiffs proffered a chart indicating which plaintiffs were United States residents, but did not "adduce[] evidence that the [United States] is convenient for the more than 100 plaintiffs who do not reside in the United States." *Id.* at 1190. The court concluded: "[b]ecause the court cannot determine whether the current forum is in fact convenient for those foreign plaintiffs, and because foreign plaintiffs significantly outnumber resident U.S. plaintiffs, it cannot afford plaintiffs' choice of forum substantial weight." *Id.*

Second, Schenker repeatedly describes the United States' interest in enforcing its laws as a persuasive factor in a *forum non conveniens* analysis. *See*, *e.g.*, Sch. Br. at 7.[7] But, as Schenker

---

[4] *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) (speculating that plaintiffs' attorney affidavits were used in an "artful . . . pleading in order to avoid the consequences of federal *forum non conveniens* law").

[5] Schenker seeks to emphasize this Court's familiarity with *Air Cargo*, yet ANA and Cargolux settled *Air Cargo* in 2010 and Schenker and its affiliates opted-out in 2011.

[6] As plaintiffs can be expected to put forth their strongest possible case, *see*, *e.g.*, *Montgomery County, Md. v. Jaffe, Raitt, Heuer & Weiss, P.C.*, 897 F. Supp. 233, 239 (D. Md. 1995); *Colavito v. Apfel*, 75 F. Supp. 2d 385, 399 n.21 (E.D. Pa. 1999), their failure to identify any further American assignors suggests that there are no other American assignors.

[7] Schenker also makes this statement in the context of its discussion of the public interest factors. *See* Sch. Br. at 22.

2

acknowledges, that interest is founded on "the United States' interest in seeking to redress antitrust injuries occurring on its own soil." Sch. Br. at 1. Further, "[t]he United States' general interest in applying its laws is not 'a determinative factor to be considered in weighing convenience.'" *Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 198 (D. Conn. 2013) (quoting *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC,* 155 F.3d 603, 611 (2d Cir.1998)).

Third, Schenker relies on a single case from the Supreme Court of Utah for the proposition that "[c]ourts have recognized that when a plaintiff brings a claim as an assignee, the assignor's citizenship affects the deference to the assignee-plaintiff's choice of forum." Sch. Br. at 10. Yet in that case the court looked to the American assignor's citizenship only because the foreign assignee "did not have the option of bringing suit in its home jurisdiction" as "that jurisdiction had no connection to the facts of this case." *Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 325 P.3d 70, 79 (Utah 2014) (emphasis added). Very much to the contrary here, Schenker has the option of bringing such an action in its home jurisdiction, Germany, and indeed has done so. Further to that point, because Schenker, unlike the *Energy Claims* assignee-plaintiff, has also sued on its own behalf, *see* Compl. ¶ 1, it can hardly be said that Germany has "no connection" to injuries allegedly suffered by a German company.

In other words, Schenker is not a "nominally foreign" assignee-plaintiff controlled by American assignor interests, a situation in which it may be appropriate to look past the assignee's citizenship. *See* Note: *The Convenient Forum Abroad*, 20 Stan. L. Rev. 57, 71 (1967) ("a few federal courts have rejected *forum non conveniens* attacks and have retained jurisdiction in suits brought by nominally 'alien' plaintiffs" where those plaintiffs were "controlled by American interests"). As such, this Court should disregard Schenker's suggestion that two American

3

assignors are the "real parties in interest" in this case. And even if the Court considers the nationality of Schenker's assignors, the vast majority of them are not U.S. entities and Schenker still is entitled only to very little deference in its choice of a U.S. forum.

The other cases on which Schenker relies – *Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375 (S.D.N.Y. 2009), and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) – actually undermine Schenker's position. There, the courts looked to the citizenship of the foreign assignors, not because they were assignors, but because they were the "real parties in interest," *see* 638 F. Supp. 2d at 381; 454 U.S. at 261, and thus actually afforded less deference to the choice of forum. *Accord Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 804-05 (S.D. Tex. 1998) ('"[C]ourts have generally refused to give special deference to the domestic forum choice of a nominally American plaintiff' . . . suing as an assignee, subrogee or representative of a foreign company.") (citations omitted). Here, in contrast, the "real party in interest" is Schenker, a foreign assignee.

## II. Germany is an Adequate Alternative Forum

Schenker contends that Germany is an inadequate alternative forum, and a German court is unlikely to accept jurisdiction,[8] because Defendants are not German companies and the German action filed by its affiliate, Barnsdale, is different from this case. *See* Sch. Br. at 12-15. These arguments misapply the law and obscure the true nature of the German action.

---

[8] The Court has the discretion to dismiss this case subject to a German court asserting jurisdiction for "conditional *forum non conveniens* dismissals are standard in the Second Circuit." *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 529 n.2 (S.D.N.Y. 2006). Even if a German court "refuses jurisdiction notwithstanding defendant's consent, plaintiff is still protected by the conditional nature of the dismissal." *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978).

4

According to Schenker, a German court would not exercise jurisdiction because the case lacks a German "anchor" defendant. Sch. Br. at 12. Schenker misapprehends the law.[9] Although EU law permits, in certain circumstances, jurisdiction over multiple defendants in the country where a so-called "anchor" defendant is domiciled, there is no anchor defendant <u>requirement</u>. *See* Martin Buntscheck and Hanna Stichweh, "*The European Antitrust Review 2015*," The Global Antitrust Review, ch. 31 (2015), *available at* http://globalcompetitionreview.com/reviews/62/sections/210/chapters/2490/germany-private-antitrust-litigation/#fono2 (last accessed Feb. 4, 2015). The mere existence of the German action, which was originally initiated without an anchor, effectively concedes this point.

Indeed, Schenker's claims here are inconsistent with its position in the German action, where Barnsdale on Schenker's behalf claims injury in Germany based on global routes that did not touch Germany or even the EU. No credible reason to segregate out only those global routes touching the United States has been offered. Specifically, Barnsdale asserts claims in Germany based on innumerable worldwide shipments that did not originate, terminate, or pass through Germany or Europe – <u>all</u> international routes are included, other than U.S. and Canadian routes. Bekessey Reply Decl. ¶ 5. Schenker attempts to disguise this fact, arguing that this case concerns U.S. routes and that a German court would not have jurisdiction over Schenker's U.S. claims because the routes "do not touch Germany or Europe." Sch. Br. at 13. Schenker cannot have it both ways. If, as Schenker asserts, a German court has jurisdiction to hear claims concerning non-German – and even non-European – routes, it must necessarily have jurisdiction to consider routes to and from the United States.

---

[9] For civil and commercial claims asserted against Cargolux after January 20, 2015, in a court within the European Union (which Schenker's would be if the claims asserted herein were filed in Europe), jurisdictional issues would be covered by European Regulation No. 1215/2012.

Schenker also claims that the German action is only a "damages trial." Sch. Br. at 14. That is incorrect. Barnsdale must prove that the cartel identified in the EC Decision was effective and that the entities on whose behalf the German suit is brought were affected by the cartel. Higher Regional Court of Munich, Decision of Feb. 21, 2013, U 5006/11 Kart (holding that an EC decision is binding only with respect to the existence of an infringement; "[i]t does not cover the other requirements of a damages claim, which have to be shown by a third party" in a separate suit"). And as Schenker repeatedly reminds the Court, Schenker has asserted a global conspiracy; the allegations in the German action go far beyond the scope of the EC Decision, which is limited to routes within the "European Economic Area." *See* Summary of EC Decision, *available at* http://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:52014XC1018(03)&from=EN. As to all claims concerning non-EEA routes, the plaintiff bears the full burden of proving the existence of a cartel – just as Schenker would in this case.

Moreover, U.S. courts have consistently found that Germany is an adequate alternative forum for numerous different types of lawsuits, and Germany is "among the 13 nations whose courts have been consistently deemed to be adequate alternative fora." *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, No. 13-C-00435, 2014 WL 4100445, at *8-9 (N.D. Ill. Aug. 20, 2014) (noting the absence of authority for rejecting Germany as inadequate).

### III. Private Interest Factors Counsel that this Case Should Not Be Heard in the United States

Schenker claims that "Defendants have also not identified any private interest of their own warranting litigating this dispute in Germany." Sch. Br. at 2 (emphasis added). This is, of course, incorrect. Rudimentary geography and arithmetic demonstrates that Germany is a far more convenient forum to resolve this dispute. For example, Luxembourg City, where Cargolux

6

is headquartered, is less than an hour's flight to a number of German airports, yet a 12 hour connecting flight to New York. *See* Defs. Br. at 13.[10]

Schenker also avers that, because Cargolux and ANA "have previously been involved in the discovery process" in *Air Cargo*, "neither Defendant is likely to be burdened by litigating in the United States because they can benefit from the 'head start' that *Air Cargo* provides," and quotes *Alnwick v. European Micro Holdings, Inc.*, 29 Fed. Appx. 781 (2d Cir. 2002), for the proposition that prior "extensive discovery" counsels against *forum non conveniens* dismissal. *See* Sch. Br. at 19-20. There are several problems with these statements. First, Defendants have not been parties to *Air Cargo* since they settled in 2010. Second, even if the discovery documents in *Air Cargo* are made available in this case, the "12 million pages of documents" to which Schenker alludes, *see* Sch. Br. at 4 & 17, covered all facets of *Air Cargo*, and it is unknown how many of those documents actually pertain to Defendants.[11] Third (and most notably), in both *Alnwick* and the seminal case on which it relied, *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991), the courts were referring to discovery that had already occurred in that very case, not in a separate prior case.

Finally, Schenker relies on Rule 30(b)(6) to support its position that the presence in Europe of the majority of the pertinent documents and witnesses will not be an impediment to discovery in the United States. But Rule 30(b)(6) is not the cure-all that Schenker makes it out to be, and is no substitute for the ability to depose fact witnesses.

---

[10] And while Schenker posits that airlines should not complain about the burden and costs of transporting witnesses and evidence, *see* Sch. Br. at 17, airlines are just as susceptible to cost concerns as other large companies. *See Carney v. Singapore Airlines*, 940 F. Supp. 1496, 1503 (D. Ariz. 1996) (court found, in regard to a major airline, that just because "Defendant is a corporation does not mean that Plaintiffs should automatically be able to sue [it] wherever they wish because Defendant potentially has "deep pockets" and can afford litigation in a foreign court").

[11] As far as Defendants are aware, discovery in *Air Cargo* was not directed at opt-out Schenker.

7

First, there is "no binding authority permitting the court to compel a corporation deponent to designate a <u>specific</u> person to be its Rule 30(b)(6) witness," *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014) (citation omitted) (emphasis added), rather, the corporation must only "produce <u>someone</u> familiar with that subject." *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (emphasis added).  Thus, Rule 30(b)(6) is a limited tool which "gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf." *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996).

Second, Schenker's reliance on Rule 30(b)(6) obscures that fact that, if this case is heard in Germany, the litigants need not resort to the time-consuming processes of Rule 30(b)(6)[12] depositions or letters rogatory.  Rather, in Germany litigants may utilize European Commission Regulation 1206/2001 to elicit testimony from uncooperative non-party witnesses. *See* Defs. Br. at 16-17. As has been said by one federal court:

> [I]t seems . . . incredibly burdensome to engage in th[ose] lengthy process[es] when Plaintiffs could bring their claim in a country where more witnesses reside and where the parties could take advantage of European Commission Regulation 1206/2001 the purpose of which is to simplify and accelerate the taking of evidence.

*Vivendi S.A. v. T-Mobile USA, Inc.*, No. C06-1524JLR, 2008 WL 2345283, at *13 (W.D. Wash. June 5, 2008).

### IV. Public Interest Factors Counsel that this Case Should Not Be Heard in the United States

Schenker claims that Defendants have not "identified <u>any</u> public reason why Germany is

---

[12] A Rule 30(b)(6) deposition "by its nature can be time-consuming and inefficient," *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 126 (D.D.C. 2005), and can lead to delays of over a year. *See*, *e.g.*, *In re Enron Corp.*, 349 B.R. 115, 122 (S.D.N.Y. 2006) ("Travelers contends it waited over a year for EBS to produce its Rule 30(b)(6) witness.").

more convenient than this Court to litigate claims asserting a global price-fixing conspiracy."

Sch. Br. at 2 (emphasis added). Once again, this is incorrect. For example, as Defendants have previously explained:

> Germany has a strong interest in resolving a dispute brought by a German company against mostly European defendants concerning an alleged conspiracy affecting European commerce in which another German company (Lufthansa) is alleged to have been a major participant. Germany's interest is particularly strong given that one of the primary litigants is owned by the German government.

Defs. Br. at 18.

In addition, Deutsche Bahn's own statements indicate that Germany has the primary interest in addressing any alleged harm in this case. *See* Air Cargo Cartel Claims, *supra* at 5 ("In pursuing these legal actions, we are seeking just compensation for our owners – the German government and, ultimately, German taxpayers.") (emphasis added).

## IV.    Conclusion

For the above-stated reasons, the Court should dismiss the Complaint on the grounds of *forum non conveniens*.

Dated: February 6, 2015                                  Respectfully submitted,

/s/ Ankur Kapoor
Ankur Kapoor
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
212.350.2700 (telephone)
212.350.2701 (facsimile)
akapoor@constantinecannon.com

9

        Charles J. Simpson, Jr.
        ZUCKERT, SCOUTT & RASENBERGER, L.L.P.
        888 17th Street NW, Suite 700
        Washington, D.C. 20006
        202.298.8660 (telephone)
        202.342.0683 (facsimile)
        cjsimpson@zsrlaw.com
        *Counsel for All Nippon Airways Co., Ltd.*

        */s/ Heather Lamberg-Kafele*
        Heather Lamberg-Kafele
        Alexandra V. Filippova
        SHEARMAN & STERLING LLP
        801 Pennsylvania Avenue NW, Suite 900
        Washington, D.C. 20004
        202.508.8000 (telephone)
        202.508.8100 (facsimile)
        hkafele@shearman.com
        sasha.filippova@shearman.com

        K. Mallory Brennan
        SHEARMAN & STERLING LLP
        599 Lexington Avenue
        New York, NY 10022
        212.848.4000 (telephone)
        212.848.7179 (facsimile)
        mallory.brennan@shearman.com
        *Counsel for Cargolux Airlines International S.A.*