UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SCHENKER AG,

                      Plaintiff,

v.

SOCIÉTÉ AIR FRANCE, KONINKLIJKE
LUCHTVAART MAATSCHAPPIJ N.V.,
MARTINAIR HOLLAND N.V., CARGOLUX
AIRLINES INTERNATIONAL S.A., NIPPON
CARGO AIRLINES CO., LTD., ALL NIPPON
AIRWAYS CO., LTD., QANTAS AIRWAYS
LIMITED, and SAS CARGO GROUP A/S.

                      Defendants.

-------------------------------------------------------------x

Case No. 14-CV-04711 (JG) (VVP)

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V. AND MARTINAIR HOLLAND N.V. TO DISMISS PLAINTIFF'S COMPLAINT

LINKLATERS LLP
James R. Warnot, Jr.
Thomas A. McGrath
Brenda D. DiLuigi
Elizabeth Raulston
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 (telephone)
(212) 903-9100 (facsimile)

*Counsel for Defendants Société Air France,
Koninklijke Luchtvaart Maatschappij N.V.
(doing business as KLM Royal Dutch
Airlines), and Martinair Holland N.V.*

February 12, 2015

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF RELEVANT FACTS ........................................................................ 3

    A.    The Parties And Their Business Relationship During The Relevant Period ............... 3

    B.    Schenker Opts Out Of The Class Action Settlement In The Air Cargo Litigation ........................................................................................................ 4

    C.    The Dutch Action Is Initiated To Resolve The Parties' Global Disputes ................... 5

    D.    Schenker's Duplicative Litigation In This Court ........................................................ 8

ARGUMENT .................................................................................................................. 9

I.     THE COURT SHOULD DISMISS OR STAY THIS ACTION PURSUANT TO THE PRIOR ACTION PENDING DOCTRINE .................................................. 9

    A.    The Issues And Parties In The Two Actions Are Substantially Similar ................... 11

        1.    Similarity Of The Issues ................................................................................... 11

        2.    Similarity Of The Parties .................................................................................. 13

    B.    The Interests Of Judicial Economy Are Served By Dismissal Or A Stay Of The New York Action ............................................................................................ 17

    C.    The Dutch Action Was Filed More Than Three Years Before The New York Action ................................................................................................................ 18

    D.    The Netherlands Is An Adequate Forum For This Dispute ....................................... 20

    E.    General Considerations Of Fairness Mandate Dismissal Or A Stay Of The New York Action ........................................................................................................ 23

CONCLUSION ............................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Abdullahi v. Pfizer, Inc.*,
562 F.3d 163 (2d Cir. 2009) ....................................................................................20

*Advantage Int'l Mgmt., Inc. v. Martinez*,
No. 93 CIV. 6227 (MBM), 1994 WL 482114 (S.D.N.Y. Sept. 7, 1994) .........................10, 19, 23

*In re Air Cargo Ship. Servs. Antitrust Litig.*,
No. 06-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008), *aff'd in relevant part*,
No. 06-1775, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*,
697 F.3d 154 (2d Cir. 2012) ....................................................................................21

*Argus Media Ltd. v. Traditional Fin. Servs. Inc.*,
No. 09 Civ. 7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ...........................................11, 13

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998) ....................................................................................20, 21, 22

*Caspian Invs. Ltd. v. Vicom Holdings, Ltd.*,
770 F. Supp. 880 (S.D.N.Y. 1991) ..............................................................................14

*Clark v. Lacy*,
376 F.3d 682 (7th Cir. 2004) ...................................................................................13

*Cont'l Time Corp. v. Swiss Credit Bank*,
543 F. Supp. 408 (S.D.N.Y. 1982) ..................................................................10, 13, 17, 18, 23

*Credicom N.V. v. Colony Credicom L.P.*,
No. 99 CIV. 10486 (MBM), 2000 WL 282968 (S.D.N.Y. Mar. 16, 2000) ..................................18

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
773 F.2d 452 (2d Cir. 1985) .....................................................................................9

*de Melo v. Lederle Labs.*,
801 F.2d 1058 (8th Cir. 1986) ...................................................................................22

*Dragon Capital Partners, L.P. v. Merrill Lynch Capital Serv. Inc.*,
949 F. Supp. 1123 (S.D.N.Y. 1997) ...........................................................................14, 21, 22

*In re European Aeronautic Defence & Space Co. Sec. Litig.*,
703 F. Supp. 2d 348 (S.D.N.Y. 2010) .........................................................................21

*Evergreen Marine Corp. v. Welgrow Int'l Inc.,*
954 F. Supp. 101 (S.D.N.Y. 1997) ...............................................................16

*Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.,*
41 F. Supp. 2d 447 (S.D.N.Y. 1999) ............................................................22

*Freed v. J.P. Morgan Chase Bank, N.A.,*
756 F.3d 1013 (7th Cir. 2014) .............................................13, 14, 15, 16

*Interstate Material Corp. v. City of Chicago,*
847 F.2d 1285 (7th Cir. 1988) .....................................................................15

*Ioannides v. Marika Mar. Corp.,*
928 F. Supp. 374 (S.D.N.Y. 1996) ...............................................................24

*Iragorri v. United Techs. Corp.,*
274 F.3d 65 (2d Cir. 2001) ............................................................................24

*Kisano Trade & Invest Ltd. v. Lemster,*
737 F.3d 869 (3d Cir. 2013) ..........................................................................24

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936) .........................................................................................9

*Lesavoy v. Lane,*
304 F. Supp. 2d 520 (S.D.N.Y. 2004) *aff'd in part, vacated in part, remanded sub nom.*
*Lesavoy v. Gattullo-Wilson,* 170 F. App'x 721 (2d Cir. 2006) ................10, 17

*Lust v. Nederlandse Programma Stichting,*
501 F. App'x 13 (2d Cir. 2012) ..............................................................20, 21

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,*
46 F. Supp. 2d 249 (S.D.N.Y. 1999) ......................... 10, 11, 17, 18, 23, 24

*Nafziger v. McDermott Int'l, Inc.,*
467 F.3d 514 (6th Cir. 2006) ..........................................................................4

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
416 F.3d 146 (2d Cir. 2005) ...................................................................22, 24

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.,*
No. 12 CIV. 7249 PAE, 2013 WL 2531277 (S.D.N.Y. June 10, 2013) .......9, 10, 14, 23

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) .................................................................................20, 22

iii

*Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Group, LLC,*
No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y. Sept. 28, 2012)................11

*Reers v. Deutsche Bahn AG,*
320 F. Supp. 2d 140 (S.D.N.Y. 2004) ...............................................................................4

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.,*
466 F.3d 88 (2d Cir. 2006) ......................................................... 9, 10, 11, 14, 15

*Schneider Nat'l Carriers, Inc. v. Carr,*
903 F.2d 1154 (7th Cir. 1990) ...........................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
787 F. Supp. 2d 1036 (N.D. Cal. 2011) ...............................................................4

*Tarazi v. Truehope Inc.,*
958 F. Supp. 2d 428 (S.D.N.Y. 2013) ..................................... 10, 11, 13, 14, 15, 16, 18

*Transunion Corp. v. PepsiCo, Inc.,*
811 F.2d 127 (2d Cir. 1987) ...............................................................................22

*U.S.O. Corp. v. Mizuho Holding Co.,*
547 F.3d 749 (7th Cir. 2008) .......................................................................12, 19

*United Bank for Africa PLC v. Coker,*
No. 94 CIV. 0655 (TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003) ...................18

## OTHER AUTHORITIES

Press Release, DB seeks estimated damages of $2.5 billion in lawsuit against airlines in
air cargo cartel (Dec. 1, 2014), http://www.aircargocartelclaims.com/db-seeks-estimated-
damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ ...............................................2, 8, 17, 24

Deutsche Bahn 2013 Annual Report (2013), *available at*
http://www.deutschebahn.com/file/en/2211562/_YPyTYgSJrYyfpiMZWwldPW9wk/680
6228/data/2013_dbgroup.pdf.......................................................................................4

Defendants Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappij N.V. ("KLM"), and Martinair Holland N.V. ("Martinair") (collectively, the "AF-KLM Defendants") respectfully submit this memorandum of law in support of their motion to dismiss – or, at a minimum, stay – this action (the "New York Action") by Schenker AG ("Plaintiff" or "Schenker") in light of the prior pending litigation in the Netherlands (the "Dutch Action") covering the same conduct that is at issue in this case.

## PRELIMINARY STATEMENT

In August 2014, Schenker brought this action seeking to recover damages. Its claims, however, are based on the same alleged global price-fixing conspiracy that is the subject of litigation between Schenker and the AF-KLM Defendants that was filed in 2011 in the Netherlands. Under the long-established "prior action pending" doctrine and considerations of comity, this Court should defer to the Dutch Action and dismiss or stay this case as to the AF-KLM Defendants.

Schenker contends that the filing of its action in the United States was prompted by legitimate concerns of "efficiency" and in the interest of seeking "redress for injuries impacting U.S. commerce in a U.S. court."[1] But there are no arguable "efficiencies" to be achieved by permitting this litigation to proceed when there is already a comprehensive proceeding in place covering the entirety of Schenker's claims against the AF-KLM Defendants. To the contrary, Schenker's public statements expose its filing as forum shopping – and for the sole purpose of seeking treble damages, which may not be available in the Netherlands. Indeed, Schenker recently launched a press campaign in which, among other things, it announced

---

[1]   *See* Letter from Sheldon T. Zenner of Katten Muchen Rosenman LLP, counsel for Schenker, to the Honorable Viktor V. Pohorelsky, United States Magistrate Judge (Dec. 12, 2014), ECF No. 35 (referred to herein as "Plaintiff's Pre-Motion Letter" or "Pl. Pre-Motion Ltr.").

publicly its intention to seek treble damages in the United States, touting that "Treble Damages could increase the total risks for sued Airlines up to more than $3.3 billion."[2]  As the same press release acknowledges, before filing this action Schenker commenced litigation against several airlines (including some of the other defendants in this case) in yet another forum: its home forum, Germany.  That case, too, involves the very same global conspiracy claims as those presented in this case and the Dutch Action, and purports to cover all of Schenker's worldwide purchases of airfreight shipping services, *yet expressly carves out claims for damages relating to U.S.-route cargo services* for the purpose of enabling Schenker to seek treble damages for those claims in this Court.

Thus, by its own choosing, Schenker is litigating substantively identical claims in multiple jurisdictions.  There is, however, no justifiable basis for allowing it to do so – and at a minimum, the number of courts adjudicating Schenker's global conspiracy claims should be reduced to two.  Because the entirety of Schenker's claims against the AF-KLM Defendants will be resolved via the Dutch Action, this Court should exercise its inherent authority to dismiss – or in the alternative, stay – the New York Action.

---

[2]     Press Release, DB seeks estimated damages of $2.5 billion in lawsuit against airlines in air cargo cartel (Dec. 1, 2014), http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (last accessed February 12, 2015).

## STATEMENT OF RELEVANT FACTS[3]

**A.      The Parties And Their Business Relationship During The Relevant Period**

Air France is a corporation organized under the laws of France and headquartered in Roissy-CDG Cedex, France.  Complaint ("Compl.") ¶ 17.  Air France's primary activities are worldwide passenger transportation, airfreight shipping services, and maintenance services.[4] KLM is a corporation organized under the laws of the Netherlands and headquartered in the Netherlands.  Compl. ¶ 18.  KLM's primary activities are worldwide passenger transportation, airfreight shipping services, maintenance services, and charter flights and regular services.  Van Wissen Decl. ¶ 3.  In 2004, Air France and KLM merged, and in 2005, the airfreight shipping services divisions of Air France and KLM merged operations to form Air France-KLM Cargo. *Id.*; Compl. ¶ 20.  Currently, Air France and KLM are subsidiaries of Air France-KLM, the holding company of the Air France-KLM Group.  Van Wissen Decl. ¶ 3.

Martinair is a Dutch company headquartered in Amsterdam, the Netherlands. Compl. ¶ 19.  Martinair's core business activity is the provision of airfreight shipping services. Van Wissen Decl. ¶ 3.  In 2008, KLM, which was previously the majority shareholder of Martinair, acquired one hundred percent of Martinair's stock, making Martinair a wholly-owned subsidiary of KLM.  Compl. ¶ 20.

Schenker is a German corporation with its principal place of business in Essen, Germany.  Compl. ¶ 16.  Schenker is owned and controlled by the Federal Republic of Germany,

---

[3]      Factual allegations drawn from the Complaint are assumed to be true solely for purposes of this motion.

[4]      *See* Declaration of Maikel van Wissen in Support of Motion of Defendants Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Martinair Holland N.V. to Dismiss Plaintiff's Complaint, dated February 12, 2015 ("van Wissen Decl.") ¶ 3.

Citations in the form "van Wissen Decl. Ex. __" are to the exhibits accompanying the van Wissen Declaration.

through Deutsche Bahn AG ("Deutsche Bahn"), the German national railway.[5]  Schenker

provides freight forwarding services for customers transporting goods worldwide.  Compl. ¶ 16.

During the years 2000 through 2006, Schenker purchased airfreight shipping services from the

AF-KLM Defendants.  *Id.*[6]

**B.      Schenker Opts Out Of The Class Action Settlement In The Air Cargo Litigation**

On July 8, 2010, Air France, KLM and Martinair entered into a proposed

settlement with the plaintiffs in the pending *In re Air Cargo Shipping Services Antitrust*

*Litigation.  See* Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants

Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Martinair Holland N.V.,

Exhibit A, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 1:06-md-01775 (JG) (VVP)

(E.D.N.Y. July 14, 2010), ECF No. 1209.  On October 21, 2010, this Court issued an order

authorizing the dissemination of notice of the proposed settlement to all members of the putative

class.  Order Authorizing Dissemination of Class Notice and Scheduling Hearing for Final

Approval of Proposed Settlements, *In re Air Cargo Shipping Servs. Antitrust Litig*, 1:06-md-

01775 (JG) (VVP) (E.D.N.Y. Oct. 21, 2010).  On March 14, 2011, this Court granted final

approval of the settlement pursuant to Fed. R. Civ. P. 23(e), finding it to be "fair, reasonable, and

adequate to the Class."  Order Approving Air France-KLM Settlement Agreement and Final

---

[5]     *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 147 (S.D.N.Y. 2004) ("Plaintiffs concede that
Deutsche Bahn is an instrumentality of the Republic of Germany."); *see also* Deutsche Bahn 2013 Annual
Report, at 62 (2013), *available at* http://www.deutschebahn.com/file/en/2211562/_YPyTY-
gSJrYyfpiMZWwldPW9wk/6806228/data/2013_dbgroup.pdf (last accessed February 12, 2015).

[6]     Though the Complaint provides that "Schenker is the assignee of the legal right to prosecute and recover
damages in this action on behalf of all of the Schenker affiliated companies that purchased U.S. Airfreight
Shipping Services from Defendants during the Relevant Period," Compl. ¶ 16, the Complaint does not
name any specific affiliates that it claims purchased airfreight shipping services from the AF-KLM
Defendants. Accordingly, for purposes of the Court's analysis, only Schenker is considered to be a named
party. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1041 (N.D. Cal. 2011)
(granting motion to dismiss on the ground that plaintiffs were required to identify the assignors on whose
behalf they brought antitrust claims); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 519 (6th Cir. 2006)
(dismissal of complaint appropriate where complaint failed to articulate "which particular plaintiffs were
asserting certain of the alleged causes of action").

Judgment, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 1:06-md-01775 (JG) (VVP)

(E.D.N.Y. Mar. 14, 2011), ECF No. 1414.  However, on January 18, 2011, Schenker opted out of

the settlement.  Compl. ¶ 214.

## C.    The Dutch Action Is Initiated To Resolve The Parties' Global Disputes

On February 28, 2011, Ms. Susanne Stemmer, a representative of Schenker, wrote

to representatives of Air France to request a meeting specifically to address issues raised by the

November 9, 2010 decision of the European Commission regarding alleged violations of

antitrust law.  *See* van Wissen Decl. Ex. 1.  On March 9, 2011, Mr. Christopher Rother, a

representative of Schenker's parent company, Deutsche Bahn, again wrote to Air France's

representatives, stating that Schenker could not "remain inactive regarding the consequences of

the *worldwide* air cargo cartel for a prolonged period of time" and requesting a meeting with

representatives of "Air France/KLM" regarding the potential for compensation for damages both

within the European Union and "all other parts of the world."  Van Wissen Decl. Ex. 2 (emphasis

added).

On April 7, 2011, the AF-KLM Defendants commenced an action (the "Dutch

Action") in the Rechtbank Amsterdam (the "Amsterdam District Court") by serving a writ of

summons on Schenker and a number of its affiliates.  *See* van Wissen Decl. Ex. 3.[7]  Through the

writ of summons, the AF-KLM Defendants seek a declaration that they are not liable to Schenker

for any alleged infringement of competition law, including but not limited to U.S. federal

antitrust law and European competition law, in connection with airfreight shipping services

provided to Schenker and its affiliates.  *Id.* at 24.

---

[7]       Schenker AG has appeared in the Dutch Action via its Dutch counsel, Loyens & Loeff ("Loyens").  Van
Wissen Decl. ¶ 7.

Following service of the writ of summons, the parties attempted to engage in negotiations to resolve the matter amicably. Van Wissen Decl. ¶ 7. To facilitate this process, the parties signed an agreement, effective December 20, 2011 (the "Confidentiality Agreement"), in which the AF-KLM Defendants agreed to stay the Dutch Action pending those discussions. *See id.* As part of the agreement, however, the AF-KLM Defendants expressly reserved the right to resume the Dutch Action if Schenker initiated secondary litigation covering the parties' dispute in *any* jurisdiction. *Id.* Were this to occur, the AF-KLM Defendants were required to notify Schenker of their intention to proceed with the Dutch litigation, and provide Schenker with a reasonable time to respond to the writ of summons. *Id.*[8]

Notably, the Confidentiality Agreement also provides that the agreed-upon stay of the pending Dutch Action may <u>not</u> be used by Schenker as a basis for arguing that jurisdiction over the matter should be asserted elsewhere:

> Notwithstanding their entering into this Agreement and engaging in Amicable Discussions, the Parties reserve all rights and shall not assert any arguments in any litigation, pending now or filed in the future, that this Agreement or the Amicable Discussions have any effect on such litigation, except to the extent explicitly set forth herein. Specifically, and for the avoidance of doubt, no Party shall contend that this Agreement, the Amicable Discussions, <u>*or any postponement of any pending or threatened proceedings to facilitate the Amicable Discussions should, or may, be considered or shall have any effect on the determination of the jurisdiction*</u> *in which any litigation between the Parties regarding the Dispute may be heard or the choice of law or choice of forum regarding such litigation.*

---

[8] Pursuant to the procedures of the Amsterdam District Court, when parties have voluntarily agreed to stay proceedings (to pursue settlement discussions or otherwise) for a certain period of time, the case is referred to the docket list of postponed cases, and may, upon the request of either of the parties, be (i) resumed, (ii) removed from the docket, or (iii) referred to the next postponed cases docket date. *See* van Wissen Decl. ¶ 9. If the case is removed from the docket following a stay of the proceedings (which may also occur *ex officio* at the discretion of the court), such a removal does not have a legal effect in itself, in that it does not end the proceedings; rather, according to the Dutch Rules of Procedure, the case may be resumed by request of any of the parties. *Id.* ¶ 10. The Dutch Action was referred to the docket of postponed cases for the first time on January 4, 2012 and then removed by the Amsterdam District Court from the docket list on April 3, 2013. *Id.* ¶ 11. Subsequently, on August 29, 2014, the AF-KLM Defendants filed a request with the Amsterdam District Court to resume the case, which the court granted. *Id.*

*Id.* (emphasis added).

The parties entered into four subsequent agreements to extend the terms of the Confidentiality Agreement – and thus the stay of proceedings – until June 30, 2012, December 31, 2012, June 30, 2013 and December 31, 2013, respectively. *Id.* ¶ 8. However, following expiration of the most recent extension, the parties continued to communicate via e-mail. For example, in early 2014, counsel for the AF-KLM Defendants reached out via e-mail to Schenker's counsel, Loyens. *Id.* ¶ 12.[9] Rather than responding or continuing discussions, *id.*, on August 7, 2014, Schenker filed the Complaint in this action. Therefore, as contemplated by the Confidentiality Agreement, AF-KLM Defendants resumed the Dutch Action on August 29, 2014. *Id.* ¶ 11.

Since August 2014, the parties have made a number of submissions in the Dutch Action. *Id.* ¶ 13. For example, the parties have filed multiple requests with the court on issues involving case management and scheduling. *Id.* Moreover, on December 3, 2014, the AF-KLM Defendants filed a statement in addition to their writ of summons with an update of all relevant events from the date of the writ, including a motion requesting the addition of Schenker's affiliate, Barnsdale,[10] as a party to the proceedings. In addition, on January 7, 2015, Schenker and its affiliates filed a motion in the Dutch Action seeking dismissal on jurisdictional and other grounds. *Id.* ¶ 14.[11] The motion is scheduled to be heard by the Amsterdam District Court on June 18, 2015. *Id.*

---

[9] Under the terms of the Confidentiality Agreement, the AF-KLM Defendants are precluded from disclosing the substance of the communications between the parties, and thus are unable to provide any specifics in this Memorandum as to the content of the early 2014 communication with Schenker's counsel.

[10] Barnsdale is the Schenker-affiliated claims vehicle that is the named claimant in the proceedings pending in Germany. *See* note 12, *infra*, for a further description.

[11] In support of the motion to dismiss the Dutch Action, Schenker's U.S. counsel, Katten Muchen Rosenman LLP, filed a separate submission in which it purports to suggest – in clear violation of the prohibitions contained in the Confidentiality Agreement – that the Amsterdam District Court should not continue to

7

**D.      Schenker's Duplicative Litigation In This Court**

Schenker's Complaint in the instant action is based on the same conduct that is at issue in the Dutch Action: the claims in both actions are based on an alleged conspiracy to fix the prices of global airfreight shipping services, specifically by imposing agreed fuel and security surcharges, including in connection with cargo shipments to and from the U.S., during the period 1999 to 2006. *Compare* Compl. ¶ 3 *with* van Wissen Decl. Ex. 3 ¶¶ 21, 24. Though the claims in the Dutch Action are more comprehensive and are intended to address Schenker's claims on a global basis, in both cases the courts ultimately will be called upon to determine whether and to what extent the AF-KLM Defendants are liable for damages relating to U.S. cargo shipments on behalf of Schenker. Moreover, in a press release issued on December 1, 2014, Schenker's parent company, Deutsche Bahn, made clear that the filing of the New York Action was motivated by Schenker's pursuit of treble damages in the United States. *See* Press Release, DB seeks estimated damages of $2.5 billion in lawsuit against airlines in air cargo cartel (Dec. 1, 2014), http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (last accessed February 12, 2015). Schenker's attempted forum shopping should be rejected, and this action should be dismissed – or alternatively, stayed – in favor of the Dutch Action, pursuant to the inherent authority of this Court.[12]

---

exercise jurisdiction over the Dutch Action given the lack of progress attributable to the parties' agreed-upon stay of that litigation. *See* van Wissen Decl. ¶ 14 (referencing counsel's assertion that "the Dutch Action has not proceeded in any substantive way since the Writ was served").

[12]     Certain defendants in this case have moved to dismiss the complaint on *forum non conveniens* grounds, arguing that Germany would be a more convenient forum for the litigation (the "FNC Motion"). *See* Certain Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 38). Because the Dutch Action already covers the claims asserted in the New York Action against the AF-KLM Defendants, the AF-KLM Defendants have not joined in the FNC Motion. To the extent the Court is not inclined to dismiss or stay the litigation pending the resolution of the Dutch Action, the AF-KLM Defendants reserve the right to join in the FNC Motion at a later date.

At present, however, because the Dutch Action is pending, the German courts may lack jurisdiction over the AF-KLM Defendants. As noted in the FNC Motion, Schenker's affiliated claims vehicle, Barnsdale Cartel Damage Solutions AG ("Barnsdale"), has already initiated an antitrust case in Germany (the

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS OR STAY THIS ACTION PURSUANT TO THE PRIOR ACTION PENDING DOCTRINE**

This Court should exercise its inherent power to dismiss or stay the New York Action based on the prior pending Dutch Action. *See Landis v. N. Am. Co.*, 299 U.S. 248 (1936); *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12 CIV. 7249 PAE, 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013). The prior action pending doctrine recognizes the "principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). Comity of the courts ensures that "proper deference" is given to "a pending foreign proceeding that has yet to reach [proper] judgment." *Id.* at 92.

The Second Circuit has long recognized that these principles apply to the exercise of a district court's discretionary authority to defer to foreign proceedings. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985). And while federal courts generally are obligated to exercise jurisdiction over the cases before them, concerns of comity prevail where "exceptional circumstances exist that justify the surrender of that jurisdiction." *Royal & Sun*, 466 F.3d at 93 (citations omitted). Courts within the Second Circuit determine whether such circumstances are present by weighing the following non-exclusive list of factors: (a) the

---

"German Litigation") against a number of carriers, including Qantas, based on the same underlying facts, and recently expanded that litigation to include other defendants such as SAS and Cargolux. *See* FNC Motion at 2-3; *see also* van Wissen Decl. ¶ 15. However, Barnsdale did not name the AF-KLM Defendants (*see id.*), presumably because it is concerned that the German court lacks jurisdiction over them due to the pendency of the Dutch Action. As previously noted, Schenker is currently seeking dismissal of the Dutch Action on various grounds, including lack of jurisdiction. *Id.* ¶ 14. Though the AF-KLM Defendants believe Schenker's efforts will be unsuccessful, were the court to dismiss the Dutch Action, the AF-KLM Defendants would join in the FNC Motion, as a European forum (where key witnesses are located and Schenker's claims are currently being litigated on a global basis) would be preferable to the United States.

similarity of the parties and issues involved; (b) the interests of judicial economy; (c) temporal sequence of filing of the actions; (d) the adequacy of the alternative forum; and (e) the convenience of, and potential prejudice to, either party. *See Ole Media*, 2013 WL 2531277, at *3 (citing *Royal & Sun*, 466 F.3d at 94).

The same factors are applied regardless of whether the court is evaluating a request for a dismissal or a stay of the later-filed action; however, the outcome will depend on the weight ultimately accorded to each factor. *See Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013). Courts within the Second Circuit have dismissed (rather than stayed) cases based on prior pending actions where the balance of factors weighs more heavily for abstention. *See, e.g., Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93 CIV. 6227 (MBM), 1994 WL 482114, at *2 (S.D.N.Y. Sept. 7, 1994) (concluding that "because the entire dispute between [the parties] ultimately would be aired before [the New York federal] court and the Spanish court, dismissal, rather than a stay, of one of the proceedings is appropriate")[13]; *see also Lesavoy v. Lane*, 304 F. Supp. 2d 520 (S.D.N.Y. 2004) *aff'd in part, vacated in part, remanded sub nom. Lesavoy v. Gattullo-Wilson*, 170 F. App'x 721 (2d Cir. 2006); *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 252 (S.D.N.Y. 1999); *Cont'l Time Corp. v. Swiss Credit Bank*, 543 F. Supp. 408, 410 (S.D.N.Y. 1982).

In cases where the balance of factors is a closer question, courts have opted for a stay of the later-filed proceedings in deference to first-filed litigation.[14] *See Ole Media*, 2013

---

[13]    Although *Advantage International* was decided prior to the Second Circuit's decision in *Royal & Sun*, the court applied the same factors in concluding that dismissal was appropriate – namely, "the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them, and the temporal sequence of filing for each action." *See Advantage Int'l*, 1994 WL 482114, at *2 (citations and internal quotations omitted).

[14]    The Second Circuit has observed that, as compared to an outright dismissal, a stay amounts to "a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle to fairly resolving all of the rights

WL 2531277, at *6 ("Even where courts have declined to dismiss an action pending a prior

parallel action in a foreign court, a stay has often been viewed as the appropriate intermediate

measure."); *see also Tarazi*, 958 F. Supp. 2d at 438-39 (granting stay of litigation pending

resolution of parallel Canadian proceedings); *Quanzhou Joerga Fashion Co., Inc. v. Brooks*

*Fitch Apparel Group, LLC*, No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y.

Sept. 28, 2012) (staying proceedings pending outcome of litigation in China); *Argus Media Ltd.*

*v. Traditional Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec.

29, 2009) (stay of proceedings in favor of litigation in United Kingdom).  As set forth below,

application of the factors favors dismissal or a stay of this action.

###### A.    The Issues And Parties In The Two Actions Are Substantially Similar

The threshold question to be addressed by the Court is whether the Dutch Action

and New York Action are in fact parallel.  "For two actions to be considered parallel, the parties

in the actions need not be the same, but they must be substantially the same, litigating

substantially the same issues in both actions." *Royal & Sun*, 466 F.3d at 94.  This test is readily

met.

###### 1.    Similarity Of The Issues

As to the issues, where proceedings are based on substantially the same conduct,

courts have dismissed or stayed cases in deference to the prior pending action. *See Quanzhou*

*Joerga Fashion Co.*, 2012 U.S. Dist. LEXIS 143334, at *31 (staying case pending the outcome

of a prior action pending in China, in part because that case "involve[d] precisely the same

events and the same loss as is claimed here"); *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 252

(finding "substantial identity of issues" between two actions because "[b]oth cases arise from the

---

of the parties." *Royal & Sun*, 466 F.3d at 96.  Accordingly, to the extent that the Court declines to dismiss
the New York Action in favor of the Dutch Action, the AF-KLM Defendants respectfully submit that a stay
would be appropriate.

same set of transactions, and the essential controversies are squarely before the British court").

Indeed, "[t]here is no reason for identical suits to be proceeding in different courts in different

countries thousands of miles apart," *U.S.O. Corp. v. Mizuho Holding C*o., 547 F.3d 749, 750 (7th

Cir. 2008), as is the case here.

      The claims in the Dutch Action and this action are based on the same alleged

conduct and arise out of the same events.  Both actions center on an alleged global price-fixing

conspiracy relating to airfreight shipping services, including in connection with cargo shipments

to and from the U.S., between 1999 and 2006.  *Compare* Compl. ¶ 3 (alleging an "unlawful

global conspiracy . . . during the period from late 1999 until 2006 and thereafter . . . to fix, raise,

maintain, and/or stabilize the prices of airfreight shipping services . . . including the prices for air

cargo shipments to, from, and within the United States") *with* van Wissen Decl. Ex. 3 at 24

(seeking declaration that the AF-KLM Defendants are not liable to Schenker for damages "in

connection with *any* violation of the competition law, including any violation that has been

investigated and/or concluded by the American Public Prosecutor and the European

Commission") (emphasis added); ¶¶ 21 ("From 1996, various airlines introduced a so-called

'fuel surcharge' in which they showed the market how increasing fuel prices were reflected in

the prices they used themselves"), 24 ("According to the [European] Commission, KLM, Air

France, Martinair and a number of other airlines coordinated during a period of around six years

their behaviors with regard to the fuel surcharges and security surcharges").

      Though Schenker attempts to differentiate the cases by arguing that the New York

Action seeks "redress for injuries impacting U.S. commerce", Pl. Pre-Motion Ltr. at 3, both cases

cover U.S. commerce.  Moreover, the claims in both cases focus on the AF-KLM Defendants'

*worldwide* conduct, rather than conduct only relating to air cargo shipments to and from the U.S.

*See* Compl. ¶ 218 ("During the Relevant Period, Defendants participated in a *global* Cartel, and

pursuant to that Cartel fixed the aforementioned Fuel and Security Surcharges and Base Rates for

U.S. Airfreight Shipping Services and concertedly refused to include Fuel and Security

Surcharges revenues in any incentive, rebate, or discount program.") (emphasis added); van

Wissen Decl. Ex. 3 at 24 (seeking declaration that the AF-KLM Defendants are not liable to

Schenker for damages "in connection with *any* violation of the competition law") (emphasis

added).  Where, as here, a ruling in the court presiding over the first-filed action will be

"instructive on the ultimate resolution" of the later-filed case, the actions are sufficiently similar

to warrant dismissal or a stay.  *Tarazi*, 958 F. Supp. 2d at 435 (citing *Argus Media,* 2009 WL

5125113, at *6).

### 2.    Similarity Of The Parties

The parties are also sufficiently similar to warrant dismissal or a stay of the New

York Action.  Schenker, the only named Plaintiff in this action, is a party to the Dutch Action,

and all of the AF-KLM Defendants are parties to the Dutch Action.  The presence of additional

defendants in this case does not make the parties dissimilar for purposes of the Court's analysis.

*See Tarazi*, 958 F. Supp. 2d at 434 (staying U.S. litigation in favor of Canadian action despite the

presence of additional defendant in the U.S. action); *Cont'l Time Corp.*, 543 F. Supp. at 410

(dismissing New York action in favor of pending action in Switzerland notwithstanding the

presence of additional defendants and additional claims in the U.S. proceedings); *see also Freed

v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1020 (7th Cir. 2014) ("[T]he parallel nature of

the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be

dispelled by repackaging the same issue under different causes of action." (citing *Clark v. Lacy*,

376 F.3d 682, 686–87 (7th Cir. 2004))).  To the contrary, courts have repeatedly held that the

parties to both actions need not be identical; "the relevant test is whether the parties are

substantially similar." *Ole Media*, 2013 WL 2531277, at *3 (citing *Royal & Sun*, 466 F.3d at

94–95); *Dragon Capital Partners, L.P. v. Merrill Lynch Capital Serv. Inc.*, 949 F. Supp. 1123,

1127 (S.D.N.Y. 1997) (noting that "parties and issues need not be identical in order for one

action to be stayed in deference to an earlier action" (citing *Caspian Invs. Ltd. v. Vicom*

*Holdings, Ltd.*, 770 F. Supp. 880 (S.D.N.Y. 1991))).

Contrary to Schenker's assertion, substantial similarity does not require that the

party named in the U.S. proceeding, but not the foreign proceeding, be an affiliate of the party in

the foreign proceeding.  Rather, substantial similarity exists where the parties' interests are

aligned.  *See Tarazi*, 958 F. Supp. 2d at 434; *see also Freed*, 756 F.3d at 1019 (noting that parties

in separate actions are considered substantially similar when their interests are aligned).  For

example, in *Tarazi*, the court examined whether the parties to actions pending in Canada and

New York were sufficiently similar for the actions to be deemed parallel.  *Tarazi*, 958 F. Supp.

2d at 434.  In that case, the parties in both cases were identical, with the exception of a single

defendant, which was a party only to the New York action.  *Id.*  Though the defendant was not an

affiliate of any of the parties to the Canadian action, the court nevertheless held that, because its

interests were aligned with the interests of the parties in the Canadian action (in that a ruling

against the plaintiff would benefit the defendants in both cases), the parties in the case were

substantially similar.  *Id.*

Likewise, in *Freed*, the Seventh Circuit held that two actions were parallel, and

stayed the later-filed action, despite the presence of an additional unaffiliated defendant in the

second action, where the additional defendant's liability was based on the same underlying

course of conduct.  *Freed*, 756 F.3d at 1019.  There, the court observed that the plaintiffs'

allegations in the later-filed proceeding centered on "the exact scheme and conduct" as in the

first-filed action, resulting in breaches of contract and fiduciary duty. *Id.* at 1020.  As a result, the court found that the interests of the defendants in the two cases – *i.e.*, the interest in obtaining a ruling that there was no liability to the plaintiff – were sufficiently similar to render the actions parallel. *Id.*[15]

Such is the case here.  Although there are currently two additional defendants in this action (Qantas and ANA), their interests are aligned with the interests of the AF-KLM Defendants.  Among other things, the Dutch Action seeks a declaration that Schenker was not damaged by the alleged global price-fixing conspiracy; a finding that no such damage existed would of course benefit *all defendants* in the New York Action. *See Tarazi*, 958 F. Supp. 2d at 434 (noting that additional defendant's "interest in the Canadian action, to the extent it has one, is aligned with [the other defendants'] in that both entities seek a ruling" as to the enforceability of the agreement at issue).

Moreover, although Schenker could have sought to bring the other defendants in this case[16] into the Dutch Action rather than commencing two additional actions – *i.e.*, the German Litigation and the New York Action – it chose not to do so but instead commenced duplicative litigation.  Indeed, Schenker surely could, in the interest of judicial economy and

---

[15]     *See also Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (stay appropriate despite presence of additional unaffiliated defendants in later-filed case).  Although the *Interstate Material* and *Freed* cases involved abstention in the context of parallel federal and state proceedings, the Second Circuit has observed that the same standards apply for determining whether two actions (foreign and domestic) are parallel, and, in doing so, has cited to Seventh Circuit jurisprudence. *See Royal & Sun*, 466 F.3d at 94 (citing *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)).

[16]     Following the voluntary dismissals of Nippon Cargo Airlines Co., Ltd. on August 25, 2014 (*see* ECF No. 5), SAS Cargo Group A/S on December 5, 2014 (*see* ECF No. 26), and Cargolux Airlines International, S.A. on February 10, 2015 (*see* ECF No. 51), there are currently two remaining additional defendants – Qantas and ANA.  However, both of the remaining defendants have filed motions to dismiss this action, *see* ECF Nos. 38 and 39, and thus all of the defendants in this case have a common interest in the dismissal of the New York Action.  Indeed, the FNC Motion seeks dismissal of the case in favor of the German Litigation, and Qantas (which seeks dismissal on statute of limitations grounds, *see* ECF No. 39) is a named defendant in the German Litigation. *See generally* FNC Motion.

15

efficiency, seek to consolidate all of its claims before the Dutch court (and indeed, the FNC

Motion references the possibility that the Netherlands is an adequate alternative forum, *see* FNC

Motion at 10 n.7).  However, even assuming the German Litigation was to continue, the

dismissal of this case would at least eliminate one extraneous lawsuit.  *See Evergreen Marine*

*Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 105 (S.D.N.Y. 1997) (action stayed in favor of

Belgian proceeding where there were "already two proceedings and a stay of one of them

[would] substantially increase the chances that all related matters" could be adjudicated in one

forum).  Schenker therefore cannot credibly argue that the presence of additional defendants in

this case makes the parties dissimilar for purposes of the Court's analysis, as it is responsible for

proliferating separate lawsuits against the same group of defendants into multiple fora.

   In addition, because Schenker's claims are based on joint and several liability

among the alleged co-conspirators, this case – assuming it is not dismissed on other grounds as

to the remaining defendants – may proceed against the remaining defendants if the case is

dismissed as to the AF-KLM Defendants without any diminution in the damages it may recover

(subject of course to offset for damages recovered elsewhere).  *See Tarazi*, 958 F. Supp. 2d at

434-35 (finding stay appropriate where additional defendant in U.S. case "remains a defendant in

this case against whom the plaintiffs here may proceed, unless and until they are barred by the

preclusive operation of a judgment from the Canadian court"); *see also Freed*, 756 F.3d at 1020

(observing that parties' interests were aligned where threshold issues could be resolved in first-

filed litigation, and plaintiff could later pursue claims against additional defendant in separate

litigation, if necessary).  Accordingly, the parties, as with the issues, are sufficiently similar to

justify a dismissal or stay of this action.

**B.** **The Interests Of Judicial Economy Are Served By Dismissal Or A Stay Of The New York Action**

The interests of judicial economy are promoted by dismissal or a stay of the duplicative New York Action. Litigating the same issue involving the same parties in different forums wastes judicial resources, forces defendants to defend against the same allegations before two different tribunals, and may ultimately result in inconsistent judgments. *See Lesavoy*, 304 F. Supp. 2d at 536-37. For these reasons, courts often dismiss second-filed actions in deference to prior pending actions. *See id.*; *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 254 (dismissing action in deference to English action because "[w]here a single court is capable of fairly and competently adjudicating an entire controversy, there is little reason to divide the task between two courts"); *Cont'l Time Corp.*, 543 F. Supp. at 410-11 (dismissing an action in deference to a previously filed action in Switzerland, in part due to the risk of inconsistent judgments).

At present, Schenker has three actions pending in three separate jurisdictions covering the same allegations; it should not be permitted to waste the judicial resources of this Court, in addition to the courts in the Netherlands and Germany, particularly given that it seeks to litigate here primarily to avail itself of a possible treble damages award. *See* Press Release, DB seeks estimated damages of $2.5 billion in lawsuit against airlines in air cargo cartel (Dec. 1, 2014), http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (last accessed February 12, 2015). A dismissal or stay of this action would conserve the resources of this Court by confining this controversy to the courts in Europe. By contrast, permitting the New York Action to proceed on a subset of those claims (*i.e.*, the claims involving U.S.-related commerce only) would unnecessarily expend the Court's and parties' resources, and would create a risk of inconsistent rulings. Because the Amsterdam District Court in this case can adjudicate the "entire controversy" involving these parties – and,

17

indeed, will be called upon to do so regardless of whether this action proceeds – this action should be dismissed, or alternatively, stayed in deference to the Dutch Action. *See MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 253-54 (dismissal appropriate where first-filed action in London would "proceed in any event").

C.     **The Dutch Action Was Filed More Than Three Years Before The New York Action**

The temporal sequence of the filings also weighs in favor of dismissal or a stay of this action. "Courts considering the question of deference have traditionally accorded great weight to the first suit filed." *United Bank for Africa PLC v. Coker*, No. 94 CIV. 0655 (TPG), 2003 WL 22741575, at *3 (S.D.N.Y. Nov. 18, 2003). Courts therefore routinely dismiss or stay cases in deference to first-filed actions. *See Tarazi*, 958 F. Supp. 2d at 436 (staying case in deference to action filed two weeks prior in Canada); *Credicom N.V. v. Colony Credicom L.P.*, No. 99 CIV. 10486 (MBM), 2000 WL 282968, at *4 (S.D.N.Y. Mar. 16, 2000) (dismissing case in part because "the BVI proceedings were initiated nearly eight months before this action was filed"); *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 254 (dismissing case in part because action was filed in England over a month prior, putting plaintiff on notice of the prior pending foreign action before he filed in New York); *Cont'l Time Corp.*, 543 F. Supp. at 410 (dismissing case where Swiss action was filed six months prior).

In its Pre-Motion Letter, Schenker argues that the Dutch Action has been "dormant", in essence clearing the way for this litigation to proceed. *See* Pl. Pre-Motion Ltr. at 1. This claim should be rejected. As Schenker is well aware, the Dutch Action was stayed to enable the parties to pursue a settlement of their disputes on a global basis. That stay was initiated by Schenker and agreed to by the AF-KLM Defendants in good faith. *See* van Wissen

18

Decl. ¶ 7.[17]  After the expiration of the most recent extension of the Confidentiality Agreement, the AF-KLM Defendants continued to pursue discussions with Schenker; however, Schenker responded by filing the New York Action.  *Id.* ¶ 12.  In accordance with the terms of the parties' Confidentiality Agreement, the AF-KLM Defendants promptly resumed the Dutch Action, and the case has since continued to progress.  *Id.* ¶ 13.  The parties have since filed a number of submissions with the Amsterdam District Court, including filings relating to case management and scheduling.  *Id.*  Schenker has filed its motion to dismiss the Dutch Action (which is set for hearing on June 18, 2015), and the parties have filed papers regarding the possibility of naming an additional Schenker affiliate as a party to the litigation.  *Id.* ¶ 14.  Thus, there can be no legitimate argument that the Dutch Action is in any way "dormant."

Moreover, if the passage of time in the Dutch Action is indicative of anything, it is that Schenker has long been on notice that its claims would be adjudicated in the Netherlands – a factor that courts within this Circuit have considered in determining whether to stay or dismiss a later-filed action in favor of a foreign proceeding.  *See Advantage Int'l*, 1994 WL 482114, at *3.  Its filing of this duplicative proceeding more than three years later in the United States, where it has a tenuous connection at best, was motivated solely by a desire to pursue multiple avenues of recovery for the same alleged injuries.  *Id.* ("Where, as here, the interval between commencement of two lawsuits is three years, the most reasonable inference is that there was no [race to the courthouse] and that the later lawsuit is little more than an effort to

---

[17]  Schenker's argument is all the more disingenuous given that the parties' agreement memorializing the stay specifically precludes Schenker from arguing that any postponement of the Dutch proceedings has any bearing on jurisdiction or the appropriate forum in which Schenker's claims should be heard.  *See* van Wissen Decl. ¶ 7.  But that is precisely the argument on which Schenker intends to rely here – in clear violation of the terms of the Confidentiality Agreement – and its duplicative filing is precisely of the type that the prior action pending doctrine is intended to avoid.  *See U.S.O. Corp.*, 547 F.3d at 750 (deference to first-filed action appropriate because "parallel proceedings incite a race to judgment in the hope that the judgment in the home forum will favor the home litigant and be usable to block the other suit by interposing a defense of res judicata in it").

disrupt or usurp the earlier."). Accordingly, this factor, too, weighs in favor of dismissal or a stay.

### D.    The Netherlands Is An Adequate Forum For This Dispute

A dismissal or stay of this action is further warranted because the Netherlands provides an adequate forum to adjudicate the issues between the parties. The law in the Second Circuit is clear that there are only *two* requirements for an alternative forum to be adequate: "(1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'" *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Second Circuit precedent "makes clear that an alternative forum need not provide procedures and causes of action identical to those in plaintiff's preferred forum. So long as it entertains causes of action encompassing the type of conduct covered by the cause of action in the United States, the alternative forum may be deemed adequate." *Lust v. Nederlandse Programma Stichting*, 501 F. App'x 13, 14-15 (2d Cir. 2012) (finding that the Netherlands was an adequate alternative forum as differences in U.S. and Dutch laws did not "render Dutch remedies 'tantamount to no remedy at all'" (citing *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009))).

The Amsterdam District Court is an adequate forum for the parties' dispute. The parties are subject to service of process in the Netherlands, and have already appeared in the Dutch Action through counsel. *See* van Wissen Decl. ¶ 7.[18] Likewise, there can be no dispute

---

[18]    Though Schenker contends otherwise, *see* note 11, *supra*, the Amsterdam District Court has jurisdiction over the parties' dispute pursuant to forum selection clauses contained in the parties' agreements, and pursuant to the Brussels Regulation. The Brussels Regulation provides, in Article 2, that "[s]ubject to this Regulation, persons domiciled in a Member State shall, whatever their nationality, be sued in the courts of that Member State." van Wissen Decl. Ex. 5 arts. 2, 6. Article 6 of the Brussels Regulation further provides that "[a] person domiciled in a Member State may also be sued: 1. where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so

that the Netherlands permits litigation of the subject matter of the parties' dispute, as the

litigation is already underway there.[19] *Id.* ¶ 13.  The Second Circuit has observed that European

Courts provide an adequate forum for the adjudication of antitrust claims.  *Capital Currency*

*Exch.*, 155 F.3d at 609 (finding that a federal antitrust suit could be dismissed under the *forum*

*non conveniens* doctrine, notwithstanding the fact that England would not enforce the Sherman

Act given availability of a cause of action under European competition law).  As this Court has

observed: "[l]itigants in European courts have . . . gone on to recover for private antitrust

claims," such that "litigating private antitrust claims in European courts has only become more

accessible and remunerative since *Capital Currency Exchange*."  *In re Air Cargo Ship. Servs.*

*Antitrust Litig.*, No. 06-1775, 2008 WL 5958061, at *26 (E.D.N.Y. Sept. 26, 2008) (report and

recommendation), *aff'd in relevant part*, No. 06-1775, 2009 WL 3443405 (E.D.N.Y. Aug. 21,

2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012).[20]  In addition, courts have found that the Netherlands

provides an adequate forum for adjudicating cases involving violations of U.S. federal law.  *See*

*Lust*, 501 F. App'x at 15 (finding that the Netherlands was an adequate alternative forum in case

involving federal employment discrimination claims); *In re European Aeronautic Defence &*

---

closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings." *Id.* art. 6.

Therefore, the Amsterdam District Court has jurisdiction over those defendants domiciled in the Netherlands on the basis of Article 2 of the Brussels Regulation. *Id.* art. 2.  The court likewise has jurisdiction over the remaining defendants (including Schenker) pursuant to Article 6 because the same facts, alleged claims and losses, questions of law and legal framework apply to the non-domiciled defendants, thus making it "expedient to hear and determine them together to avoid the risk of irreconcilable judgments relating from separate proceedings." *Id.* art. 6(1); *see also* van Wissen Decl. ¶ 17.

[19]   Moreover, there are currently five different cases pending before the Amsterdam District Court against the AF-KLM Defendants (among others) relating to shippers' damages arising from the alleged global price-fixing conspiracy, some of them including cargo shipments to and from the U.S. *See* van Wissen Decl. ¶ 18.

[20]   The Amsterdam District Court is an adequate forum even if it ultimately were called upon to adjudicate U.S. competition law (as opposed to, or in addition to, local competition law) in resolving Schenker's claims. *See Dragon Capital Partners*, 949 F. Supp. at 1129 (noting that "in deferring to foreign jurisdictions, courts in this Circuit have not felt impeded by the mere fact that a foreign court may have to apply United States law to some of the claims before it") (citation and internal quotation marks omitted).

*Space Co. Sec. Litig.*, 703 F. Supp. 2d 348, 360 (S.D.N.Y. 2010) (the Netherlands adequate for federal securities fraud claims); *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 451 (S.D.N.Y. 1999) (the Netherlands adequate for federal copyright claims).[21]

Though Schenker may argue that the questionable availability of treble damages in the Netherlands renders it an inadequate forum,[22] it is well-established, both in the Second Circuit and elsewhere, that "the unavailability of treble damages [in an antitrust case] does not render a forum inadequate." *Capital Currency Exch.*, 155 F.3d at 610; *see also Piper Aircraft Co.*, 454 U.S. at 255 (Scotland was an adequate forum because "although [plaintiffs'] potential damages award [there] may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly"); *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (unavailability of RICO treble damages in the Philippines "irrelevant" to determination that the Philippines was an adequate forum); *de Melo v. Lederle Labs.*, 801 F.2d 1058, 1061 (8th Cir. 1986) (Brazil an adequate forum despite absence of punitive damages). Indeed, "the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 158 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also Dragon Capital Partners*, 949 F. Supp. at 1129 (holding that despite plaintiff's claim "that the Hong Kong court would have no authority to provide the full range of remedies available under United States law . . . the task of this Court is to ensure that Plaintiff will have access to

---

[21]   Moreover, Schenker has tacitly acknowledged that the Netherlands provides an appropriate forum for resolving disputes arising out of the parties' relationship, as certain of the cargo services contracts (*see, e.g.,* van Wissen Decl. Ex. 4) between the parties contain forum selection clauses designating Amsterdam, the Netherlands, as the exclusive forum for matters arising out of those contracts. *Cf. Evolution Online Sys.*, 41 F. Supp. 2d at 451 (noting that "the adequacy of Dutch law is also satisfied by plaintiff's clear acceptance of Dutch law in the various draft agreements of the contracts").

[22]   It should be noted, however, that in its motion to dismiss the Dutch Action, Schenker did not concede the unavailability of treble damages in the Netherlands, but instead argued that treble or other punitive damages do not violate public policy in the Netherlands and thus should be available. *See* van Wissen Decl. ¶ 14.

adequate relief, rather than to determine which forum would provide Plaintiff with the greatest relief") (citations and internal quotations omitted).  Because the Amsterdam District Court is competent to adjudicate all claims in this dispute, this factor weighs in favor of dismissal or a stay.

### E.    General Considerations Of Fairness Mandate Dismissal Or A Stay Of The New York Action

General considerations of fairness dictate the dismissal or a stay of this action. When determining whether the equities weigh in favor of dismissal or a stay, courts consider the convenience of and potential prejudice to the parties of litigating in the alternate forum.  *See, e.g., Ole Media Mgmt.*, 2013 WL 2531277, at *5; *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 254.

The AF-KLM Defendants will be inconvenienced if both actions proceed concurrently.  Schenker and each of the AF-KLM Defendants, as well as many of the key witnesses, are located either in the Netherlands or elsewhere in Europe, making the Netherlands a more convenient forum for the litigation for *all* parties involved.  *See* Compl. ¶¶ 16-19.  In addition, if this action proceeds, the AF-KLM Defendants will be forced to expend considerable resources defending actions involving the same issues and same parties before two different tribunals.  *See Advantage Int'l*, 1994 WL 482114, at *2 (dismissing action where defendant "[would] be forced to litigate the same issues both here and in Spain, with attendant inconvenience to the parties, waste of judicial resources, and risk of inconsistent judgments" (citing *Cont'l Time Corp.*, 543 F. Supp. at 410)).

By contrast, there is no conceivable prejudice to the parties if this action is dismissed or stayed.  The parties will litigate the same issues in the Dutch Action, regardless of whether the New York Action proceeds, and Schenker will have its claims adjudicated.  Though Schenker may claim to be prejudiced because it will have to forego its choice of forum, "a

plaintiff's choice of forum is entitled to much less weight when it is made after the filing of a

concurrent action arising out of the same series of transactions." *MLC (Bermuda) Ltd.*, 46 F.

Supp. 2d at 254.  Indeed, Schenker is litigating substantively identical claims in *three* different

jurisdictions – and this action was filed long after both the Dutch Action and the German

Litigation.  Moreover, as a foreign company, Schenker's choice of forum is accorded less

deference – particularly given that it seeks to litigate here for the primary purpose of obtaining

treble damages.  *See* Press Release, DB seeks estimated damages of $2.5 billion in lawsuit

against airlines in air cargo cartel (Dec. 1, 2014), http://www.aircargocartelclaims.com/db-seeks-

estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (last accessed February 12,

2015).  As the Second Circuit has noted:

> [W]hen a foreign plaintiff chooses a U.S. forum, it is much less reasonable
> to presume that the choice was made for convenience.  In such
> circumstances, a plausible likelihood exists that the selection was made for
> forum-shopping reasons, such as the perception that United States courts
> award higher damages than are common in other countries.

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (citation and internal quotation

marks omitted); *see also Norex Petroleum Ltd.*, 416 F.3d at 155 (noting possibility that potential

availability of treble damages under RICO may have motivated plaintiff to forum shop); *Kisano*

*Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 877 n.4 (3d Cir. 2013) ("[I]t is at least worth

noting that the possibility of a treble damages award" may have "motivated plaintiffs to choose a

United States forum."); *Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 378 (S.D.N.Y. 1996)

(noting that foreign "plaintiffs' presumed choice of this forum in pursuit of more liberal

American attitudes toward damage awards is not entitled to substantial weight").[23]

---

[23]   As has been highlighted in the *FNC* Motion, the fact that Schenker filed its global antitrust lawsuit in
       Germany, and voluntarily carved out the U.S. claims only to file a subsequent proceeding in the United
       States based on the same alleged conduct, confirms Schenker's forum shopping in the United States.  *See*
       FNC Motion at 7.

Because continuing to litigate claims in New York will be inconvenient for the parties, duplicative of the Dutch Action, and presents a significant risk of prejudice, the equities weigh heavily in favor of a dismissal or stay of the present action.

## CONCLUSION

For the reasons set forth above, the AF-KLM Defendants respectfully request that the Court dismiss Plaintiff's Complaint in favor of the prior pending Dutch Action.  In the alternative, the AF-KLM Defendants request that the Court stay this action pending a determination on the merits in the Dutch Action.

Dated:    New York, New York
          February 12, 2015

                              Respectfully submitted,

                              LINKLATERS LLP

                              By:    /s/ James R. Warnot, Jr.
                              James R. Warnot, Jr.
                              Thomas A. McGrath III
                              Brenda D. DiLuigi
                              Elizabeth Raulston
                              1345 Avenue of the Americas
                              New York, New York 10105
                              (212) 903-9000
                              (212) 903-9100 (fax)

                              *Counsel for Defendants Société Air France,*
                              *Koninklijke Luchtvaart Maatschappij N.V. (doing*
                              *business as KLM Royal Dutch Airlines), and*
                              *Martinair Holland N.V.*

25