UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHENKER AG, | ) |
| | ) |
| Plaintiff, | ) The Honorable John Gleeson |
| | ) |
| v. | ) Civil Action No. 14 CV 04711 (JG) (VVP) |
| | ) |
| SOCIÉTÉ AIR FRANCE, | ) |
| KONINKLIJKE LUCHTVAART | ) |
| MAATSCHAPPIJ N.V., MARTINAIR | ) |
| HOLLAND N.V., CARGOLUX | ) |
| AIRLINES INTERNATIONAL, S.A., | ) |
| NIPPON CARGO AIRLINES CO., | ) |
| LTD., ALL NIPPON AIRWAYS CO., | ) |
| LTD., QANTAS AIRWAYS LIMITED, | ) |
| and SAS CARGO GROUP A/S, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF SIDNEY J.H.M. BERENDSEN IN SUPPORT OF SCHENKER AG'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V. AND MARTINAIR HOLLAND N.V.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

I, Sidney J.H.M. Berendsen, declare as follows:

1. I am an attorney with the law firm of Loyens & Loeff N.V. and represent Schenker AG ("Schenker") in a declaratory judgment action filed against Schenker and others by Defendants Société Air France, Koninklijke Luchtvaart Maatschappij N.V. and Martinair Holland N.V. (collectively, "AF-KLM"), which is pending in the Rechtbank Amsterdam (the "Dutch Court"), the Netherlands, case reference C/13/571990 (the "Dutch Action").

2. I submit this Declaration in opposition to the Memorandum of Law in Support of Motion of Defendants Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Martinair Holland N.V. to Dismiss Plaintiff's Complaint (ECF No. 53) ("AF-KLM Motion to

Dismiss the U.S. Action"). I make this Declaration based on personal knowledge, except where otherwise noted herein, and would and could testify to the following if called upon to do so.

3. On April 7, 2011, AF-KLM commenced the Dutch Action in the Dutch Court by serving a writ of summons on Schenker and a number of affiliates (the "Writ"). Through the Writ, AF-KLM seek a declaration by the Dutch Court that AF-KLM is not liable to Schenker for any alleged infringement of competition law, including but not limited to, U.S. federal antitrust law and European competition law.

4. Following AF-KLM's service of the Writ, the parties to the Dutch Action agreed to stay the proceedings while they explored a potential resolution of the matter.[1] In connection with that exploration, the parties entered into a Confidentiality Agreement, effective December 20, 2011, with a termination date of March 2, 2012. The Confidentiality Agreement was subsequently extended by the parties four times and the last extension expired on December 31, 2013. After that date, the Confidentiality Agreement was terminated.

5. Contrary to AF-KLM's suggestion in their Motion to Dismiss the U.S. Action (at 7), there were no ongoing discussions between Dutch counsel for Schenker and for AF-KLM regarding the exploration of a potential resolution of the matter after the termination of the Confidentiality Agreement on December 31, 2013. Moreover, any progress, or lack of progress, of the Dutch Action post-December 31, 2013, including AF-KLM's decision not to reactivate the Dutch Action until August 29, 2014, eight months after the Confidentiality Agreement terminated, was not subject to the terms of the Confidentiality Agreement.

---

[1] The statement of Maikel van Wissen that the Dutch Action was stayed "at the request of Schenker" is not correct. *See* Declaration of Maikel van Wissen (ECF No. 54) ("van Wissen Decl.") ¶ 7, filed in support of the AF-KLM Motion to Dismiss the U.S. Action. The parties jointly wished to stay the Dutch Action.

6. On January 7, 2015, Schenker and affiliates filed in the Dutch Action a Motion Contesting Locus Standi On The Part Of KLM, *Et Al.* For Abuse Of (Procedural) Rights And/Or Lack Of Interest, Or Failing That, Contesting The Jurisdiction Of This [Dutch] Court ("Schenker Motion Contesting the Dutch Court's Jurisdiction"). Paragraphs 7 through 16, set forth below, provide a brief summary of certain of the arguments and analyses presented by Schenker to the Dutch Court in connection with its Motion Contesting the Dutch Court's Jurisdiction.

7. In the Schenker Motion Contesting the Dutch Court's Jurisdiction, Schenker argues, *inter alia*, that Article 24 of the Dutch Code of Civil Procedure ("DCCP") requires parties to furnish facts in connection with filing a claim in the Dutch Court and to make clear to the Court why it should accept the existence of those facts and base its decision on them.[2] The obligation to state reasons (in the context of what the parties have asserted) is an extension of this obligation to furnish facts. This burden stems not only from the principle that the Dutch Court and the opposing party must understand what the party is arguing, but also from the provision of Article 21 of the DCCP that parties are obliged to truthfully adduce all facts that are relevant to the judgment in the case.[3]

8. As Schenker argues in more detail in its Motion Contesting the Dutch Court's Jurisdiction, because AF-KLM failed to comply with its obligations to furnish facts and state reasons, or is in any rate in breach of these duties in connection with the Writ filed in the Dutch Court, the Writ is invalid under Article 111(2)(d), in conjunction with Article 120(1), of the DCCP or, alternatively, the Dutch Court must decline jurisdiction and dismiss the Dutch Action.[4]

---

[2] Asser Procesrecht/Van Schaick 2 2011/94 and Asser Procesrecht/Asser 3 2013/282 and 288.

[3] Asser Procesrecht/Asser 3 2013/288 and Van Mierlo, T&C Burgerlijke Rechtsvordering, Article 21 of the DCCP, note 2.

[4] Asser Procesrecht/Van Schaick 2 2011/96.

9. Schenker also argues in its Motion Contesting the Dutch Court's Jurisdiction that AF-KLM has abused its procedural rights in filing the Dutch Action. In that regard, the Supreme Court of Netherlands has ruled that initiating a case that is hopeless from the outset constitutes an abuse of right:

> Filing and pursuing an action on grounds that one knows to be an untruth constitutes an unlawful act or, respectively, an abuse of law, or failing that, may generate an abuse of law, and this is divorced from the question of whether it is thought that something (and, if so, what) can be obtained by means of such an action.[5]

10. The unlawful conduct on the part of AF-KLM through its participation in the illegal air cargo conspiracy has been conclusively established. The bases for this include: (a) the EC Decision in *Airfreight* (Case C.39258) Commission Decision 2014/c 371/09 [2010];[6] (b) the fines imposed and the settlements with other competition authorities and other authorities; (c) admissions of culpability by AF-KLM, *inter alia*, in the context of the leniency notice; and (d) settlements struck with victims of the cartel. Also, research has shown that, in 93% of cartel cases, the illegal conduct of the conspirators results in a marked-up price and hence causes loss[7]; the cartel in which AF-KLM participated, which is the subject of the Dutch Action, is no exception in causing such loss. In spite of the foregoing, AF-KLM seeks a declaratory judgment in the Dutch Action that it is *not* liable to Schenker for any damages. By arguing that its actions

---

[5] NL Supr. Ct. 29 June 2007, *NJ* 2007, 353 (MilieuTech/Waterschappen), legal ground 3.3.2.

[6] Pursuant to article 16(1) of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty, the Dutch Court cannot take decisions running counter to a decision adopted by the European Commission, although AF-KLM has appealed the EC Decision.

[7] *See* Study prepared for the European Commission "Quantifying antitrust damages", available at: http://ec.europa.eu/competition/antitrust/actionsdamages/quantification_study.pdf.

have not injured Schenker, despite all the foregoing, AF-KLM has filed a meritless action before the Dutch Court and has thus abused its right to litigate.[8]

11. Furthermore, Article 3.13, Dutch Civil Code, provides that no person seeking to avail himself of the benefits of the Dutch Court may rely on that Court where he abuses it. Such abuse occurs where the Court: (a) is used to no purpose other than to inflict harm on the other party; (b) where it is used for a purpose other than that for which it is intended; or (c) where, in light of the disequilibrium between the interest when exercised and the interest thereby harmed, it should not, according to the standard of reasonableness, have been exercised. As argued in the Schenker Motion Contesting the Dutch Court's Jurisdiction, in filing the Dutch Action, AF-KLM has engaged in all three abuses, as a result of which Schenker has asked that the Dutch Court find that AF-KLM lacks standing to bring its claim in the Dutch Court and to dismiss the Action.

12. In the Dutch Action, AF-KLM seeks to base the Dutch Court's jurisdiction on a number of choice of forum clauses in certain agreements and, in the alternative, on Article 2, read in conjunction with Article 6, of the Brussels Regulation.[9] These clauses are also generically referenced in a footnote in the AF-KLM Motion to Dismiss the U.S. Action, where AF-KLM argues that Schenker "tacitly acknowledged that the Netherlands provides an appropriate forum . . . based on certain of the cargo services contracts . . . between the parties."[10] This is untrue.

---

[8] *See, inter alia*, NL Supr. Ct. 29 June 2007, NJ 2007, NJ 2007, 353 legal ground 3.2.2; Stein, in: GS Vermogensrecht, article 3.13, note 17.1; Jansen, in GS Onrechtmatige daad, article 6:162 note 86.2.2; B.T.M. van der Weil, 'Onrechtmatige procederen', WPNR, 2005, afl. 6618, paragraph 3.2 and D.J. van der Kwaak. 'Kan procederen onrechtmatig zijn?', WPNR, 2002, afl. 6500, ¶ 3.

[9] *See* van Wissen Decl. Ex. 3 ¶ 3.1.

[10] *See* AF-KLM Motion to Dismiss the U.S. Action at 22 n.21.

13. Under Dutch law, first and foremost, a forum selection clause only applies between the parties who agreed the forum clause.[11] The vast majority of the handful of agreements containing the forum selection clauses on which AF-KLM bases the alleged jurisdiction of the Dutch Court, were entered into by entities that are not a party to the Dutch Action. Accordingly, these forum clauses are irrelevant to the proceedings at hand.

14. In addition, the forum selection clauses on which AF-KLM relies do not apply to infringements of competition law. The clauses quoted by AF-KLM in the Writ state the following:

> This Agreement shall be governed by the laws of the Netherlands. All disputes arising from this Agreement, if not resolved amicably, shall be submitted to the competent court, which for the purpose of this Agreement will be in Amsterdam, the Netherlands.[12]

and:

> This agreement shall be construed in accordance with, and governed by the Laws of the Kingdom of the Netherlands. Any dispute shall be submitted to the competent courts of Amsterdam.[13]

15. The aforementioned forum selection clauses are worded in broad and general terms and relate, essentially, to disputes arising from the customer agreements and blocked space agreements. The claims at issue in the Dutch Action do not arise from these (or any other) agreements, but from years of infringement of competition law by AF-KLM, of which Schenker was unaware. Based on the case law of the European Court of Justice, a forum selection clause only covers claims under competition law infringements if the parties harmed by the infringement were aware of the cartel and the damage the cartel was causing at the time

---

[11] Ibili, T&C Burgerlijke Rechtsvordering, Article 23 of Brussels I Regulation, note 6a and EU Court of Justice 7 February 2013, C543/10, ground 29.

[12] *See* point 60 of the Writ of Summons.

[13] *See* point 61 of the Writ of Summons.

the agreements were entered into and expressly bargained for such clauses.[14] Since that is patently not the case with regard to the forum selection clauses at issue, the Dutch Court does not have jurisdiction to hear AF-KLM's claims in the Dutch Action based on the forum selection clauses.

16. In the alternative, in its Writ, AF-KLM seeks to base jurisdiction of the Dutch Court on Article 2, read in conjunction with Article 6, Brussels Regulation. AF-KLM's reliance on jurisdiction for the Dutch Court on the basis of Article 6(1), Brussels Regulation is invalid because:

(a) the majority of the parties named as defendants in the Dutch Action purchased no air freight services from AF-KLM at all (in the period between January 2000 and August 2008) and hence have never had a claim against AF-KLM. In this context, AF-KLM has abused the linkage criterion of Article 6(1), Brussels Regulation, by nonetheless involving these parties in this action;

(b) The negative declaratory judgment that AF-KLM seeks is not covered by Article 6(1), Brussels Regulation; and

(iii) AF-KLM has failed to demonstrate that the claims asserted be "so closely connected," as is required by Article 6(1), Brussels Regulation.

17. As noted above, the foregoing Paragraphs 7 through 16 do not purport to set forth the full arguments and analyses included in the Schenker Motion Contesting the Dutch Court's Jurisdiction with regard to the points addressed, but rather constitute a brief summary of those arguments and analyses in the context of Schenker's opposition to the AF-KLM Motion to Dismiss the U.S. Action. Finally, although additional grounds supporting the dismissal of the Dutch Action are set forth in the Schenker Motion Contesting the Dutch Court's Jurisdiction,

---

[14] *See* Case C-352/13 *CDC Cartel Damage Claims Hydrogen Peroxide SA v. Degussa* (Op. of Adv. Gen., Dec. 11, 2014) (holding that forum-selection clauses do not apply to competition law claims unless expressly bargained for in part because of a "danger that the perpetrators of an infringement of EU competition law would be enabled to bring 'torpedo actions', in the form of a negative declaration"); *see also* the judgment of the District Court of Amsterdam of 4 June 2014, NJF 2014/314, ECLI:NL:RBAMS: 2014:3190, (*CDC Project 13 SA/Akzo Nobel*) and in particular legal grounds 2.21 and 2.22.

those grounds are not addressed herein as they do not specifically pertain to the arguments raised in the AF-KLM Motion to Dismiss the U.S. Action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true.

Dated: March 12, 2015     By: _mr. S.J.H.M. Berendsen_