# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SCHENKER AG, | ) | |
| | ) | |
| Plaintiff, | ) | The Honorable John Gleeson |
| | ) | |
| v. | ) | Civil Action No. 14 CV 04711 (JG) (VVP) |
| | ) | |
| SOCIÉTÉ AIR FRANCE, | ) | |
| KONINKLIJKE LUCHTVAART | ) | |
| MAATSCHAPPIJ N.V., MARTINAIR | ) | |
| HOLLAND N.V., CARGOLUX | ) | |
| AIRLINES INTERNATIONAL, S.A., | ) | |
| NIPPON CARGO AIRLINES CO., | ) | |
| LTD., ALL NIPPON AIRWAYS CO., | ) | |
| LTD., QANTAS AIRWAYS LIMITED, | ) | |
| and SAS CARGO GROUP A/S, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SCHENKER AG'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V. AND MARTINAIR HOLLAND N.V.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Sheldon T. Zenner (*pro hac vice*)
Mary Ellen Hennessy (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061

James J. Calder
Mark T. Ciani
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: 212.940.8800
Facsimile:  212.940.8776

**Table of Contents**

                                                                                                    **Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

    The Parties ....................................................................................................................3

    The *Air Cargo* Conspiracy and Subsequent Related Litigation..........................................3

    The Dutch Action...........................................................................................................4

ARGUMENT ............................................................................................................................6

I.     Standards For Abstention.....................................................................................................6

II.    Defendants Fail To Demonstrate That The Actions Are Parallel. .....................................8

    A.     The Actions Do Not Involve Substantially Similar Parties. ...................................8

    B.     The Actions Do Not Involve Substantially Similar Issues. ..................................10

III.    There Are No "Exceptional Circumstances" Warranting Abstention. .............................12

IV.    Defendants Fail To Demonstrate That Even Basic Considerations Weigh In Favor Of Abstention....................................................................................................................14

    A.     The Issues Are Not Substantially Similar and Judicial Resources Will Not Be Saved by Abstaining. .................................................................................15

    B.     The Timing of the Actions' Filings Does Not Weigh in Favor of Abstention. .....16

          1.     The Dutch Action Was Filed for Tactical Reasons, Which Weighs Against Abstention....................................................................................17

          2.     Little Progress Has Been Made in the Dutch Action Since the Stay Expired Over a Year Ago. .......................................................................19

    C.     This Forum Is the Most Convenient to Hear This Action. ....................................20

    D.     Schenker Will Be Prejudiced If This Court Abstains. ...........................................22

    E.     This Action Is Most Closely Connected to the United States................................24

CONCLUSION.........................................................................................................................24

**Table of Authorities**

**Page(s)**

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
  No. 13-cv-7307 (AJN), 2014 WL 4804465 (S.D.N.Y. Sept. 26, 2014) ........................ *passim*

*Advantage Int'l Mgmt., Inc. v. Martinez*,
  No. 93 CIV. 6227 (MBM), 1994 WL 482114 (S.D.N.Y. Sept. 7, 1994) ...............................13

*Aerotel, Ltd. v. IDT Corp.*,
  486 F. Supp. 2d 277 (S.D.N.Y. 2007)................................................................................10, 16

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. MD 06-1775 (JG) (VVP), 2008 WL 5958061, *31–35 (E.D.N.Y. Sept.
  26, 2008) (Pohorelsky, Mag.) *report and recommendation adopted in relevant
  part*, No. 06-MD-1775 (JG) (VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21,
  2009) ...............................................................................................................................6, 24

*Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*,
  No. CIV.A. 13-2510, 2014 WL 958957 (E.D. Pa. Mar. 12, 2014)........................................23

*Andy Stroud, Inc. v. Brown*,
  No. 08 Civ. 8246 (HB), 2009 WL 539863 (S.D.N.Y. Mar. 4, 2008) ......................................2

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.*,
  No. 09 Civ. 7966 (HB), 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ........................8, 14, 15

*Barnet v. Drawbridge Special Opportunities Fund LP*,
  No. 14-cv-1376 (PKC), 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014)...............................8, 12

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
  837 F.2d 33 (2d Cir. 1987)..................................................................................................12

*Col. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)...............................................................................................6, 13, 15

*Commercial Underwriters Ins. Co. v. Glowmaster Corp.*,
  105 F. Supp. 2d 268 (S.D.N.Y. 2000)...................................................................................17

*DiChiara v. Ample Faith Invs. Ltd.*,
  No. 06 Civ. 3838 (DLC), 2006 WL 3431197 (S.D.N.Y. 2008) .........................................2, 13

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002)..................................................................................................24

*Dixhuit v. Pruco Life Ins. Co. of N.J.*,
  No. 14-cv-2165(VEC), 2014 WL 4230586 (S.D.N.Y. Aug. 27, 2014) .................................. 6

*Dunkin' Donuts Franchised Rest. LLC v. Rijay, Inc.*,
  No. 06 Civ. 8237(WCC), 2007 WL 1459289 (S.D.N.Y. May 17, 2007) .............................. 19

*Elcan Indus., Inc. v. Cuccolini, S.R.L.*, No. 13CV4058 GBD DF,
  2014 WL 1173343, *7 (S.D.N.Y. Mar. 21, 2014) ................................................................ 14

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*,
  872 F. Supp. 81 (S.D.N.Y. 1995) .................................................................................... 12, 16

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215, 219 (2d Cir. 1978) *abrogated on other grounds by Pirone v.*
  *MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) ...................................................................... 18

*First City National Bank & Trust Co. v. Simmonds*,
  878 F.2d 76 (2d Cir. 1989) ..................................................................................................... 2

*Freed v. J.P. Morgan Chase Bank, N.A.*,
  756 F.3d 1013 (7th Cir. 2014) .............................................................................................. 10

*Freund v. Republic of France*,
  592 F. Supp. 2d 540 (S.D.N.Y. 2008) .................................................................................. 13

*Gov't Emps. Ins. Co. v. Five Boro Psychological Servs., P.C.*,
  939 F. Supp. 2d 208 (E.D.N.Y. 2013) .................................................................................. 15

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968) .................................................................................................... 9, 11, 16

*Herbstein v. Bruetman*,
  743 F. Supp. 184 (S.D.N.Y. 1990) .......................................................................... 10, 11, 12

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ........................................................................................... 17, 24

*Kitaru Innov. Inc. v. Chandaria*,
  698 F. Supp. 2d 386 (S.D.N.Y. 2010) ...................................................................... 13, 19, 22

*Klonis v. Nat'l Bank of Greece*,
  487 F. Supp. 2d 351 (S.D.N.Y. 2006) ........................................................................... *passim*

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984) ............................................................................................. 24

*Madanes v. Madanes*,
  981 F. Supp. 241 (S.D.N.Y. 1997) ............................................................................ 12, 16, 17

*Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*,
　　No. 13 Civ 5474, 2013 WL 6467889 (S.D.N.Y. Dec. 10, 2013)...........................................21

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
　　460 U.S. 1 (1983)...........................................................................................................8

*Norex Petroleum Ltd. v. Access Indus.*,
　　416 F.3d 146 (2d Cir. 2005)...........................................................................................22

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.*,
　　No. 12 civ 724 (PAE), 2013 WL 2531277 (S.D.N.Y. Jun. 10, 2013) ..............................14, 15

*Palm Bay Int'l, Inc. v. Marchesi Di Barolo, S.P.A.*,
　　659 F. Supp. 407 (E.D.N.Y. 2009) ......................................................................................19

*Quackenbush v. Allstate Ins. Co.*,
　　517 U.S. 707 (1996).............................................................................................................14

*Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Group, LLC*,
　　No. 10 Civ. 9078 MHD, 2012 WL 4767180 (S.D.N.Y. Sept. 28, 2012)..............................15

*Republic of Colom. v. Diageo North America Inc.*,
　　531 F. Supp. 2d 365 (E.D.N.Y. 2007) .............................................................................8, 14

*Rodriguez v. Creative Concepts Inc.*,
　　No. 3:12-cv-2978-P, 2013 WL 2370569 (N.D. Tex. May 30, 2013) ....................................21

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
　　466 F.3d 88 (2d Cir. 2006)............................................................................................ *passim*

*Sangeorzan v. Yangming Marine Transp. Corp.*,
　　951 F. Supp. 650 (S.D. Tex. 1997) .....................................................................................21

*Shipping Corp. of India v. Am. Bureau of Shipping*,
　　603 F. Supp. 801 (S.D.N.Y. 1985) ......................................................................................23

*Tarazi v. Truehope Inc.*,
　　958 F. Supp. 2d 428 (S.D.N.Y. 2013)..................................................................9, 10, 15, 22

*Taub v. Marchesi Di Barolo S.p.A.*,
　　No. 09-CV-599 ADS ETB, 2009 WL 4910590 (E.D.N.Y. Dec. 10, 2009) ......................8, 20

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
　　872 F. Supp. 52 (S.D.N.Y. 1994) ........................................................................................24

*von Spee v. von Spee*,
　　514 F. Supp. 2d 302 (D. Conn. 2007)..................................................................................13

iv

**Other Authorities**

15 U.S.C. § 1 ...........................................................................................................4

*Airfreight*,
   (Case Comp/39.258) Commission Decision 2014/C 371/09 [2010] ........................................4

*CDC Cartel Damage Claims Hydrogen Peroxide SA v. Degussa*
   (Case C-352/13) Op. of Adv. Gen. [Dec. 11, 2014] .............................................................18

Rajko Knez, *Torpedo Litigations Under Regulation 44/2001*,
   7 Rev. Eur. 17 (2005).............................................................................................18, 19

Trevor C. Hartley, *How to Abuse the Law and (Maybe) Come Out On Top: Bad-Faith Proceedings Under the Brussels Jurisdiction and Judgments Convention*,
   13 Kings County L. J. 139 (2002)........................................................................................11

Plaintiff Schenker AG ("Schenker"), by its counsel, respectfully submits this memorandum of law in opposition to defendants, Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappij ("KLM"), and Martinair Holland N.V.'s ("Martinair") (collectively, "Defendants"), motion to dismiss Schenker's Complaint on abstention grounds (the "Motion").

## PRELIMINARY STATEMENT

Defendants' Motion is not predicated on a failure to state a claim—that Defendants violated U.S. antitrust laws by conspiring to fix the surcharges on their airfreight shipping services is not at issue. Instead, Defendants ask this Court to abstain from exercising its exclusive jurisdiction over this case—which involves a U.S. cause of action based on U.S. injuries—in deference to an action Defendants filed in the Netherlands (the "Dutch Action"). They do so even though Schenker has moved to dismiss the Dutch Action based on Defendants' abuse of their procedural rights in filing that Action in the first place and in light of the Dutch court's lack of jurisdiction.[1]

As made clear by the Second Circuit, abstention is an extraordinary remedy only granted if there are "exceptional circumstances" that would justify this Court's surrender of its "virtually unflagging" obligation to exercise jurisdiction over Schenker's claims. *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006). Quite simply, Defendants have not demonstrated such "exceptional circumstances," as is their burden, and their Motion should be denied.

As a threshold matter, for a court to disregard its "virtually unflagging" obligation to exercise jurisdiction under abstention, the proceedings must be parallel. Here, they are not. This action involves different parties with no connection to the Dutch Action, and the Dutch Action is

---

[1] *See* Declaration of Sidney J.H.M. Berendsen in Support of Schenker AG's Memorandum of Law in Opposition to Defendants Société Air France, Koninklijke Luchtvaart Maatschappij, and Martinair Holland N.V.'s Motion to Dismiss Plaintiff's Complaint ("Berendsen Decl.") at ¶¶ 6–16.

premised on a legal theory disclaimed by the United States Supreme Court.

But even if this Court were to assume that the proceedings were parallel, Defendants fail to point to any "exceptional circumstances" justifying abstention.  *See id.* at 92.  Instead, the factors that Defendants argue weigh in favor of abstention are factors which "generally exist in parallel litigations."  *Klonis v. Nat'l Bank of Greece*, 487 F. Supp. 2d 351, 356 (S.D.N.Y. 2006); *see also Royal & Sun*, 466 F.3d at 95.  As such, they do not support this Court's abstention.  *Id.*  Further, it is apparent that the Dutch Action was filed for an improper purpose—to "torpedo" any potential action by Schenker, the harmed party—which significantly cuts against giving deference to such an action.  Finally, which forum has the closest connection to the action, a factor ignored by Defendants, also weighs against this Court's abstention.  Here, that forum is the United States as this is an opt-out action from this U.S. Court, premised on a U.S. claim, alleging injuries that occurred in the United States.

Because "exceptional circumstances" do not exist, Defendants have now done their best to reframe the issue.[2]  Although they pay lip service to *Royal & Sun*'s mandate, Defendants phrase their request for a dismissal or stay as one pursuant to the "prior action pending doctrine," rather than the doctrine of international comity abstention.  *See, e.g.*, Mov. Br. at 9.[3]  However, the prior pending action doctrine is not applicable to their Motion.[4]  Indeed, Defendants'

---

[2] In their letter to the Court requesting a pre-motion conference, Defendants' counsel identified Defendants' then-proposed motion to dismiss as a "request[] for abstention."  *See* Letter of James R. Warnot, Jr. to the Court dated Dec. 5, 2014 ("Warnot Letter"), ECF No. 33, at 1.

[3] Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint, ECF No. 53, will be cited herein as "Mov. Br."

[4] The "prior pending action" doctrine generally applies in deference to a first-filed *federal* court action.  *See, e.g.*, *Andy Stroud, Inc. v. Brown*, No. 08 Civ. 8246 (HB), 2009 WL 539863, at *9 (S.D.N.Y. Mar. 4, 2008) (citing *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).  The doctrine of international comity abstention, on the other hand, applies when a district court is faced with a previously filed *foreign* action.  *See, e.g.*, *DiChiara v. Ample Faith Invs. Ltd.*, No. 06 Civ. 3838 (DLC), 2006 WL 3431197, at *10 (S.D.N.Y. 2008) (disregarding defendants' contention that the court should defer to an action in Hong Kong under the "first filed" rule because that rule only applies "when the actions at issue are brought in separate federal courts").

2

decision to focus on an inapplicable doctrine is symptomatic of the Motion's fundamental disregard of *Royal & Sun*'s directive: *exceptional circumstances*, above and beyond those generally present in parallel actions, must exist that would justify this Court's surrender of its exclusive jurisdiction to a foreign court.   Such circumstances are not present here and Defendants' Motion should be denied.

## FACTUAL BACKGROUND

### The Parties

Plaintiff Schenker is a German corporation that provides logistical and freight forwarding support to customers transporting goods around the world, including to, from and within the United States.  Compl. ¶ 16.  Schenker is the assignee of the legal right to prosecute and recover damages in this action on behalf of "all of the Schenker affiliated companies that purchased U.S. Airfreight Shipping Services from Defendants," during the period from late 1999 until 2006 and thereafter.  *Id.* ¶ 16.  Defendant Air France is a French corporation and Defendants KLM and Martinair are Dutch corporations.  *Id.* ¶¶ 17–19.  Defendants provide airfreight shipping services to, from and within the United States.  *Id.*   During the relevant period, Schenker purchased millions of dollars of Defendants' services, which included the artificially inflated surcharges at issue in this case.  *Id.*  ¶¶ 17–21.

### The *Air Cargo* Conspiracy and Subsequent Related Litigation

Beginning in early 2000, Defendants and other air carriers formed an illegal cartel, levying inflated surcharges on their customers, such as Schenker.  *Id.* ¶ 3.  In February 2006, the Department of Justice and competition authorities around the globe raided various cartel members' offices.  *Id.* ¶ 191.  Soon after, consumers of airfreight services injured by the cartel's illegal activities filed numerous class actions in the United States, which were subsequently consolidated in the Eastern District of New York under the caption *In re Air Cargo Shipping*

*Servs. Antitrust Litig.*, No. 06-MD-1775-JG-VVP (E.D.N.Y.) ("*Air Cargo*").

On October 21, 2010, Schenker received notice that Defendants had entered into a proposed settlement with the *Air Cargo* class, which Schenker opted out of on January 18, 2011. Compl. ¶ 214. On August 7, 2014, Schenker filed this action against Defendants and others, alleging a Sherman Act violation, 15 U.S.C. § 1, and claiming damages based on the illegal surcharges Schenker was charged by Defendants and their co-conspirators relating to air cargo shipments to, from and within the United States. *Id*. ¶¶ 1, 3–4.

**The Dutch Action**

On November 9, 2010, not long before Schenker opted out of Defendants' settlement, the European Commission determined that certain airfreight carriers—including Defendants—illegally conspired to fix surcharges in violation of European competition laws. *Id.* ¶ 6; *Airfreight* (Case Comp/39.258) Commission Decision 2014/C 371/09 [2010] (the "EC Decision").[5]   During February and March of 2011, Schenker and Air France engaged in settlement discussions, despite Defendants' participation in the conspiracy as found by the European Commission. *See* Declaration of Maikel van Wissen ("van Wissen Decl.") Exs. 1, 2, ECF Nos. 54-1, 54-2.

On April 7, 2011, Defendants commenced the Dutch Action and served Schenker and certain affiliates with a Writ of Summons (the "Writ"), which set forth Defendants' request for negative declaratory relief, often referred to as a preemptive "torpedo" action. *See infra* at 17–18. Despite the EC Decision having established Defendants' participation in the conspiracy, the Dutch Action purports to address whether Defendants are liable to pay Schenker damages.[6]

---

[5] To date, the EC Decision has not been published. A summary is available here: http://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:52014XC1018(03)&from=EN.

[6] *But see* van Wissen Decl. Ex. 3 at 15, ECF No. 54-3 (on appeal, Defendants "reserve the right to dispute the findings of the European Commission").

In particular, Defendants seek to rely on a "pass-on" defense in requesting that the Dutch court declare that they did not injure Schenker. *See id.* Ex. 3 at 16–20. Defendants submitted no evidence with their Writ, as is generally required for claims in the Dutch courts, and failed to provide any legitimate support for that Court's jurisdiction. Berendsen Decl. ¶¶ 7–8. Accordingly, in response, Schenker and affiliates filed a motion contesting the Dutch court's jurisdiction, arguing that Defendants abused their procedural rights by preemptively filing the Dutch Action, and seeking the Dutch Action's dismissal ("Schenker Motion Contesting the Dutch Court's Jurisdiction"). *Id.* ¶¶ 6, 9–13.

From December 2011 until December 2013, the parties to the Dutch Action jointly agreed to stay the case. *Id.* ¶ 4. However, at any time after December 31, 2013, Defendants were at liberty to pursue the Dutch Action.[7] *See id.* ¶ 5. Defendants did not do so, instead waiting eight months, until more than three weeks after Schenker filed this action, to request that the Dutch court resume the Dutch Action. *Id.*; van Wissen Decl. ¶ 12.

Since Defendants' requested reactivation of the Dutch Action, only three relevant filings have been made in the Dutch court. First, on December 3, 2014, Defendants submitted a filing "updating" the Dutch court on the case's status and requesting that a Schenker affiliate be added to the Dutch Action. *Id.* ¶ 13. Second, on January 7, 2015, the Schenker Motion Contesting the Dutch Court's Jurisdiction was filed; a hearing on that motion is scheduled for June 18, 2015. *Id.* ¶ 14. Finally, on February 4, 2015, Schenker and affiliates responded to Defendants' December 3, 2014 submission. *Id.*

---

[7] Defendants imply that they could only request that the Dutch court reactivate the Dutch Action after Schenker filed its suit in the United States because Paragraph 3.4, the stand-still provision of the Confidentiality Agreement between the parties, permitted them to do so only after Schenker initiated legal action. Mov. Br. at 7, 19. But Paragraph 3.4 on its face only established the parties' rights and obligations "prior to the aforementioned [expiration] date," *i.e.*, December 31, 2013. Thus, Defendants were in no way foreclosed from seeking to resurrect the Dutch Action at any time after December 2013. *See* Berendsen Decl. ¶ 5.

In the meantime, in December 2013, a Schenker affiliate, Barnsdale Cartel Damage Solutions AG, filed an action in Cologne, Germany (the "German Action") against certain air carriers for damages based on shipping services the carriers provided on to Schenker, excluding services provided on flights into and out of the United States and Canada. *See* Mov. Br. at 8–9 n.12. As an opt-out from the *Air Cargo* class action, Schenker's maintenance of its *U.S.* claims before this Court, and *non-U.S.* claims in the German Action, was appropriate. In *Air Cargo*, this Court dismissed the class's European Union ("EU") claims based on comity concerns, effectively *requiring* the *Air Cargo* class to litigate their U.S. claims in the United States and their EU claims in Europe—precisely as Schenker, an opt-out from the settlement class, does today. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775 (JG) (VVP), 2008 WL 5958061, *31–35 (E.D.N.Y. Sept. 26, 2008) (Pohorelsky, Mag.) *report and recommendation adopted in relevant part*, No. 06-MD-1775 (JG) (VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009).

## ARGUMENT

### I.      Standards For Abstention.

Courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Royal & Sun*, 466 F.3d at 92 (citing *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Unless exceptional circumstances exist that justify the surrender of a district court's jurisdiction," foreign and U.S. lawsuits "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* against the other." *Dixhuit v. Pruco Life Ins. Co. of N.J.*, No. 14-cv-2165(VEC), 2014 WL 4230586, at *6 (S.D.N.Y. Aug. 27, 2014) (internal quotations omitted) (citing *Royal & Sun*, 466 F.3d at 92–93); *see also Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, No. 13-cv-7307 (AJN), 2014 WL 4804465, at *5 (S.D.N.Y. Sept. 26, 2014).

As an initial matter, for a U.S. court to abstain in deference to a foreign proceeding, the proceedings must be truly parallel. *Id.*; *see also Royal & Sun*, 466 F.3d at 95. Even if the proceedings are parallel, the party requesting that the court waive its jurisdiction must demonstrate "exceptional circumstances" such that abstention is warranted. *Id.* at 92. In *Royal & Sun*, the Second Circuit's flagship decision on international comity abstention, the court indicated that district courts may be additionally "guided" by certain other considerations, which may include the similarity of the parties and issues, the timing of the suits' filings, potential prejudices, convenience, and "the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* at 94. The court expressly cautioned, however, that "circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered *exceptional circumstances*." *Id.* at 95 (emphasis added).

Despite the lack of "exceptional circumstances" present here, Defendants request that this Court dismiss or stay this action in deference to the Dutch Action. Mov. Br. at 9. After *Royal & Sun*, a dismissal based on international comity abstention is exceedingly rare. Indeed, the fact that Defendants fail to cite a single decision post-*Royal & Sun* dismissing a U.S. action under abstention in favor of a foreign litigation reveals the extraordinary nature of their request. A stay of U.S. proceedings in deference to foreign proceedings is an equally exceptional request. *Royal & Sun*, 466 F.3d at 96 ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal"). A stay "necessarily contemplates that the federal court will have *nothing* further to do in resolving any substantive part of the case" and is *only* appropriate where "a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties" exists. *Id.* (emphasis added) (internal quotations and citations omitted).

As discussed below, that is not the case here.

Ultimately, a district court's task is "to determine whether exceptional circumstances exist that justify the surrender of [its] jurisdiction" via dismissal or stay. *Id.* at 93 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983)). And it is a movant's burden to demonstrate such exceptional circumstances. *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-cv-1376 (PKC), 2014 WL 4393320, at *25 (S.D.N.Y. Sept. 5, 2014). As Defendants have failed to meet that burden, their Motion should be denied.

## II.   Defendants Fail To Demonstrate That The Actions Are Parallel.

This Court must first determine if the Dutch Action and this action are actually parallel. "For two actions to be considered parallel, the parties . . . must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun*, 466 F.3d at 94.

### A.    The Actions Do Not Involve Substantially Similar Parties.

This action and the Dutch Action do not present substantially similar parties. Parties are only "substantially similar" when they are affiliated or there is some close relationship between them. *E.g.*, *Taub v. Marchesi Di Barolo S.p.A.*, No. 09-CV-599 ADS ETB, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009); *Republic of Colom. v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 415 (E.D.N.Y. 2007); *accord Argus Media Ltd. v. Tradition  Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009).

Here, in addition to Defendants, Schenker brings this action against Qantas Airways Ltd. ("Qantas"), which is not a party to the Dutch Action. Defendants and Qantas have no relationship or affiliation (in fact, they are industry competitors). Therefore, the parties are not substantially similar. *See Ace Arts LLC*, 2014 WL 4804465, at *5 (finding a proceeding not parallel because it was unclear whether the connection between the parties not named in the foreign action with those named was such that *res judicata* would apply).

Defendants rely on *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428 (S.D.N.Y. 2013), to assert that an additional defendant in the U.S. action does not defeat substantial similarity when that defendant's interests "align" with the defendants in the foreign litigation.  Mov. Br. at 14.  In *Tarazi*, the court recognized the general rule that, for parties to be similar, they must be "affiliates or have a similarly close relationship."  958 F. Supp. 2d at 434.  The court explained that this rule protects the interests of defendants who remain in the U.S. action.  *Id.*

Here, any potential declaration in the Dutch Action that Schenker passed on the damages it incurred from Defendants does not benefit or protect Qantas.  As Defendants concede, should this Court abstain as to Defendants, Qantas would face treble damages and joint and several liability alone.  *See* Mov. Br. at 16.  Moreover, Qantas would not be protected by any potential Dutch ruling in Defendants' favor on the alleged pass-on defense, because that defense is unavailable in the United States.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 487–94 (1968).  Thus, Qantas and Defendants' interests do not "align" with respect to the Dutch Action.  To the contrary, they diverge; Qantas would undoubtedly prefer to have Defendants in this action to share any of the liability.[8]

Defendants try to skirt this obvious conclusion by claiming that the Dutch Action "would of course benefit *all defendants*" here because, "[a]mong other things, the Dutch Action seeks a *declaration* that Schenker was not damaged by the alleged global price-fixing conspiracy."  Mov. Br. at 15 (second emphasis added).  But the Dutch Action only seeks a declaration that *Defendants* did not injure Schenker—it does not seek a declaration that Schenker was not injured by any other co-conspirator, much less a non-party to the Dutch Action like Qantas.  *See, e.g.*,

---

[8] In *Tarazi*, the interests of the defendant who was not a party to the Canadian proceedings were protected because the party in the Canadian proceeding was defending the validity of a contract with the unnamed party.  *Id.* Therefore, the court held that the parties were "substantially similar" for purposes of staying in deference to that action.  *Id.* at 435.  Here, there is no such "substantial similarity."

van Wissen Decl. Ex. 3 at 24 (requesting a declaration that "KLM, Air France, and Martinair are not liable to pay any damages to one or more Defendants").  How a successful result for Defendants in the Dutch Action could benefit Qantas in this action is unknown; indeed, as discussed, it negatively impacts Qantas.  Because Defendants and Qantas have no mutually aligned interests—much less a "close relationship"—this action and the Dutch Action do not have substantially similar parties.[9]  *See Tarazi*, 958 F. Supp. 2d at 434.

### B.    The Actions Do Not Involve Substantially Similar Issues.

Nor are the issues substantially similar, as abstention requires.  *See Royal & Sun*, 466 F.3d at 94.  Courts recognize that where the issues litigated in the foreign forum may not impact the U.S. action's resolution, the issues are not "substantially similar."  *See, e.g.*, *Ace Arts*, 2014 WL 4804465, at *5; *see also Aerotel, Ltd. v. IDT Corp.*, 486 F. Supp. 2d 277, 285 (S.D.N.Y. 2007).

Here, Defendants labor to show that the Dutch Action and this action are "based on the same alleged conduct and arise out of the same events."  Mov. Br. at 12.  This case, however, involves a U.S. claim brought by an injured cartel victim, based on its U.S. injuries; the Dutch Action, on the other hand, is a negative declaratory judgment brought by a conspirator, seeking to avoid all liability.  *See* van Wissen Decl. Ex. 3 at 16–20; *see also Herbstein v. Bruetman*, 743 F. Supp. 184, 188 (S.D.N.Y. 1990) (two actions presenting essentially "two independent causes of action" are not substantially similar).

But even more important than the stark differences in plaintiffs and remedies, the Dutch

---

[9] Defendants also cite *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1020 (7th Cir. 2014), for the proposition that the additional party to this action does not make the parties "dissimilar."  Mov. Br. at 13.  Even if this Court were persuaded by an out-of-circuit decision dealing with abstention to a state court proceeding, in *Freed*, the additional defendant's interests were "nearly identical" to the defendants in the state court proceeding—unlike here, as discussed above.  756 F.3d at 1019.  Making *Freed* even more inapposite, the court there relied on the fact that the difference in defendants was "entirely [Plaintiff's] choice," as he was the plaintiff in both actions; here, Defendants filed the Dutch Action.  *Id.* at 1019–1020.

Action's Writ is premised on Defendants' desire to claim a legal theory not recognized by U.S. law.  As the Writ puts it, Defendants request a declaration that Schenker and affiliates were not injured "insofar as [Schenker and affiliates] were able to pass on or in any other way shift the alleged damages to their own clients."  van Wissen Decl. Ex. 3 at 15, 20, 24.  Thus, assuming the Dutch court even has jurisdiction—which is in no respect established—the pass-on issue will likely be a critical issue in the Dutch Action.[10]

    In contrast, a pass-on defense is patently not at issue in this litigation, as American antitrust jurisprudence does not recognize the pass-on defense.  *See Hanover Shoe*, 392 U.S. at 487–94.  Indeed, Defendants' Writ seeks to highlight how the pass-on defense's unavailability in the United States differentiates the Dutch Action from a U.S. action.  *See, e.g.*, van Wissen Decl. Ex. 3 at 18 (arguing that the Dutch Court should apply the pass-on defense and asserting that the "American liability law . . . is not in principle opposed to granting 'overcompensation'").  Because of those differences, the Dutch Action is specifically premised on *avoiding* U.S. law.  *See, e.g.*, *id.* at 20.  Therefore, the proceedings do not involve "substantially similar issues."[11]

---

[10] The EC Decision has preclusive effect with regard to Defendants' infringements of competition law in European jurisdictions.  Berendsen Decl. ¶ 10 n.6.  Nonetheless, Defendants' Writ seeks a declaration that Defendants did not injure Schenker.  *See* van Wissen Decl. Ex. 3 at 20.  However, Defendants have paid criminal fines in the hundreds of millions of dollars and have settled with a class of freight forwarders similar to Schenker for almost $100 million.  Based on the magnitude of the fines and settlement, coupled with the EC Decision, this Court may be legitimately leary of the *bona fides* of any claim in the Dutch Action by Defendants that Schenker was not injured by their collusive actions.  Further, as discussed below, because the Writ "has no genuine case on the merits," it can properly be characterized as an abusive "torpedo" action, *i.e.*, a negative declaratory judgment action filed by a wrongdoer aiming to prevent the harmed party, here Schenker, from bringing suit in the jurisdiction of its choice.  Trevor C. Hartley, *How to Abuse the Law and (Maybe) Come Out On Top: Bad-Faith Proceedings Under the Brussels Jurisdiction and Judgments Convention*, 13 Kings County L. J. 139, 144 (2002); *see also infra* at 17–18.

[11] Given that the Supreme Court has disavowed the pass-on defense, it is doubtful that a hypothetical decision by the Dutch court that Defendants did not injure Schenker under the alleged pass-on defense would have any effect on Schenker's Sherman Act claim.  *See Herbstein*, 743 F. Supp. at 188 (proceedings are parallel only where the "parties and issues in both litigations are the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted") (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987)); *Madanes v. Madanes*, 981 F. Supp. 241, 263–64 (S.D.N.Y. 1997) (same).  Absent a demonstrable *res judicata* impact, abstention is inappropriate.  *See Ace Arts,* 2014 WL 4804465, at *5; *Eskofot A/S*, 872 F. Supp. at 90 (because a decision under European law would not "greatly impact" the court's "findings under American antitrust law," abstention was inappropriate).

*See Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 90 (S.D.N.Y. 1995) (refusing to abstain in part because "[t]he English action does not concern American antitrust law").

**III.   There Are No "Exceptional Circumstances" Warranting Abstention.**

Even if the Dutch Action and this action were parallel, which they are not, Defendants' Motion fails for an equally fundamental reason:  Defendants have failed to meet their burden of demonstrating the "exceptional circumstances" required for a district court to surrender its jurisdiction.  *See Royal & Sun*, 466 F.3d at 92–93; *Barnet*, 2014 WL 4393320, at *25.  As the Second Circuit made clear, "circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances."  *Royal & Sun*, 466 F.3d at 95.  "Rather, additional circumstances must be present—such as a foreign nation's interest in uniform bankruptcy proceedings—that outweigh the district court's general obligation to exercise its jurisdiction."  *Id.*

Defendants have identified *no* exceptional circumstances.  Their Motion is solely premised on a few, basic (and largely erroneous) propositions: the parties and issues are substantially similar; judicial economy can be saved; the Dutch Action was filed first; the Netherlands is an adequate forum; and Defendants will be inconvenienced by litigating two cases.  None of these factors, individually or together, creates an "exceptional circumstance." *See Klonis*, 487 F. Supp. 2d at 356 ("Most of the arguments advanced by the defendant relate to facts which will generally exist in parallel litigations," therefore abstention is inappropriate).

The Second Circuit is reluctant to find "exceptional circumstances," reflecting its commitment to the *Colorado River* principle that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction.  424 U.S. at 817.  In *Royal & Sun*, the Second Circuit noted that it had recognized just one "exceptional circumstance" meriting abstention: foreign

bankruptcy proceedings, which required deference out of respect for foreign nations' interests in the "equitable and orderly distribution of a debtor's property."[12]  466 F.3d at 93 (citing cases). Indeed, after *Royal & Sun*, district courts have suggested that "[t]he *only* context in which a parallel foreign proceeding might require dismissal is bankruptcy."  *DiChiara*, 2006 WL 3431197, at *8 (emphasis added); *see also Klonis*, 487 F. Supp. 2d at 356 (same).

Since *Royal & Sun*, some district courts in the Second Circuit have recognized other unique "exceptional circumstances."  In *Freund v. Republic of France*, 592 F. Supp. 2d 540, 578 (S.D.N.Y. 2008), for instance, the court deferred to French proceedings in compensating Holocaust survivors and their heirs because "Plaintiffs' claims are inextricably connected to France."  Similarly, in *von Spee v. von Spee*, 514 F. Supp. 2d 302, 318 (D. Conn. 2007), the court abstained in deference to a German dispute between German parties over German land where the German courts had reached 15 decisions in the matter, and therefore accepting jurisdiction would "reflect disrespect for the German court's decisions and rulings."

Tellingly, Defendants have not argued that respect for Dutch sovereignty requires abstention or that the parties' dispute is more closely connected to the Netherlands than the United States.  Thus, Defendants have failed to demonstrate "exceptional circumstances" and their Motion should be denied.  *See, e.g.*, *Klonis*, 487 F. Supp. 2d at 356 (holding that, because

---

[12] Defendants heavily rely on *Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93 CIV. 6227 (MBM), 1994 WL 482114, at *2 (S.D.N.Y. Sept. 7, 1994), and seek to justify its pre-*Royal & Sun* analysis by representing that, in that case, "the court applied the same factors [as *Royal & Sun*] in concluding that dismissal was appropriate."  Mov. Br. at 10 n.13.  But in *Advantage Int'l*, the court held that, in order for abstention to be appropriate, "[*a*]*ll* that is required in this Circuit is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, res judicata will apply."  1994 WL 482114, at *4 (emphasis added).  That case cannot be reconciled with *Royal & Sun*—a case which (1) held that the "existence of a parallel action in an adequate foreign jurisdiction must be the beginning, not the end" of an abstention analysis; and (2) counseled that "circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances."  *Royal & Sun*, 466 F.3d at 95.  *Royal & Sun* confirmed the rigorous standard required for abstention and this Court is unpersuaded by any pre- (or post-) *Royal & Sun* cases that fail to apply that standard.  *See Kitaru Innov. Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 n.4 (S.D.N.Y. 2010) (stating that pre-*Royal & Sun* cases that do not apply the exceptional circumstances test are inapposite).

"[i]nterests of [the] magnitude" of respecting foreign authority were absent, abstention was inappropriate); *Diageo N. Am. Inc.*, 531 F. Supp. 2d at 416 ("Defendants have failed to identify any 'exceptional circumstances' that warrant dismissal on the ground of international comity."); *Elcan Indus., Inc. v. Cuccolini, S.R.L.*, No. 13CV4058 GBD DF, 2014 WL 1173343, *7 (S.D.N.Y. Mar. 21, 2014) (because defendant had "not identified any 'exceptional circumstances,'" abstention was inappropriate).

## IV.   Defendants Fail To Demonstrate That Even Basic Considerations Weigh In Favor Of Abstention.

Certain post-*Royal & Sun* courts in this circuit, cited by Defendants, have simply applied a list of factors in finding abstention appropriate, engaging in what is essentially a *forum non conveniens* analysis.  *See Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, No. 12 civ 724 (PAE), 2013 WL 2531277 (S.D.N.Y. Jun. 10, 2013); *Argus Media Ltd.,* 2009 WL 5125113.  In doing so, however, those cases disregard both the spirit and substance of *Royal & Sun*.  As the Second Circuit explained, "while abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise . . . abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain."  *Royal & Sun*, 466 F.3d at 95 (internal quotations and brackets omitted) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 707, 722–23 (1996)).  This Court should take the Second Circuit at its word, and only abstain upon a showing of "exceptional circumstances," as opposed to a mere showing of facts that "routinely exist in connection with parallel litigations."  *Id.* at 95; *see also Klonis*, 487 F. Supp. 2d at 356.

But even if this Court chose not to require "exceptional circumstances" and to rely solely on the various general factors which the Second Circuit counseled may "guide" this Court's

14

analysis, Defendants' Motion should fail.[13]  *Royal & Sun*, 466 F.3d at 94.  An application of these and other factors confirms that abstention is inappropriate.[14]

> **A.    The Issues Are Not Substantially Similar and Judicial Resources Will Not Be Saved by Abstaining.**

Defendants assert that, if this Court were to exercise its jurisdiction over this case, judicial economy will be wasted.  Mov. Br. at 17.  For that reason, they posit that courts "often" dismiss actions in deference to prior-filed parallel suits.  *Id.*  But "federal courts have a virtually unflagging obligation" to exercise their jurisdiction "*even if this results in seemingly wasteful duplicative litigation.*"  *Gov't Emps. Ins. Co. v. Five Boro Psychological Servs., P.C.*, 939 F. Supp. 2d 208, 217 (E.D.N.Y. 2013) (emphasis added, internal quotations omitted) (citing *Colorado River*, 424 U.S. at 817) (Gleeson, J.).  Indeed, Defendants have not cited a single abstention case post-*Royal & Sun* dismissing an action in favor of a prior-filed foreign action.  Thus, Defendants' "often" assertion is at best hyperbole.  Equally important, however, little efficiency will in fact be saved if this Court defers to the Dutch Action.  This is so for two reasons.

First, the issue presently before the Dutch court has little direct bearing on resolving this litigation.  Courts recognize that when a foreign action will not resolve issues in the domestic action, judicial economy is not saved.  *See, e.g.*, *Aerotel, Ltd.*, 486 F. Supp. 2d at 285 (a ruling in

---

[13] Defendants improperly frame their argument under the elements listed by the district court in *Ole Media*, 2013 WL 2531277, at *3, rather than the factors suggested by the Second Circuit in *Royal & Sun*.  While these two sets of factors largely accord, *Ole Media* does not address the issue of the connection between the case and the respective fora which *Royal & Son* noted.  *Compare Ole Media*, 2013 WL 2531277, at *3 *with Royal & Sun*, 466 F.3d at 92.  Moreover, *Ole Media* appears to improperly conflate the prior pending action doctrine and abstention, contrary to *Royal & Sun*, 466 F.3d at 95, further undercutting *Ole Media*'s value.

[14] In Defendants' cited cases that improperly apply the *forum non conveniens* standard, and unlike this case, each factor considered weighed in favor of, or was neutral to, abstention.  *See infra* at 15–25; *Ole Media*, 2013 WL 2531277, at *3–6; *Tarazi*, 958 F. Supp. 2d at 434–39.  In other cases cited by Defendants, the courts found abstention appropriate without identifying any "exceptional circumstance" that would justify abstention.  *See Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 MHD, 2012 WL 4767180, at *11–12 (S.D.N.Y. Sept. 28, 2012); *Argus Media*, 2009 WL 5125113, at *6.  That those cases fail to apply *Royal & Sun*'s more rigorous analysis is apparent—indeed, they fail even to cite *Royal & Sun*.

the foreign action would "merely return the case to the other venue," which "would not be an efficient use of judicial resources . . . cut[ting] strongly against the granting of a stay"); *Eskofot A/S*, 872 F. Supp. at 90 (S.D.N.Y. 1995) (declining to abstain in deference to an English proceeding in part because "there are many important issues that will not be reached in the English action"); *see also Madanes*, 981 F. Supp. at 264.  Here, a key issue in the Dutch Action—whether Defendants' liability is eliminated by the Schenker and affiliates' alleged "passing on" of their injuries—is irrelevant to a determination of Schenker's Sherman Act claim. *See Hanover Shoe*, 392 U.S. at 487–94.  Therefore, abstaining in deference to the Dutch Action will not promote efficiency, particularly as the Dutch court's jurisdiction is at best in significant doubt.  *See Aerotel, Ltd.*, 486 F. Supp. 2d at 285.

Second, courts have held that where a foreign proceeding will resolve issues only as to certain parties, there is substantially less judicial economy saved by deferring to the foreign action.  *See Eskofot A/S*, 872 F. Supp. at 90 (noting that judicial economy will not be saved in part because one of two defendants will remain in the U.S. action litigating the alleged Sherman Act violation).  As Defendants recognize, this action "may proceed against the remaining defendants" even if this Court dismisses the claims against Defendants, so deferring to the Dutch Action will not conserve judicial resources.  *See* Mov. Br. at 16.

**B.**   **The Timing of the Actions' Filings Does Not Weigh in Favor of Abstention.**

Defendants also contend that the "temporal sequence of the filings" weighs in favor of abstention.  *Id.* at 18.  To the contrary, the nature of the Dutch Action makes irrelevant the fact that it was filed first.  Namely, the motivation behind the Dutch Action's filing and the relative lack of progress it has made, demonstrate that the Dutch Action does not deserve deference because it was filed first.

16

1.    **The Dutch Action Was Filed for Tactical Reasons, Which Weighs Against Abstention.**

Courts have noted that whether an action was filed for tactical reasons can be a relevant consideration in determining whether to abstain. *Cf. Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268, 270 (S.D.N.Y. 2000) (abstaining in deference to a state court action despite the fact that the federal declaratory action was filed first because a "declaratory judgment is not a prize to the winner of a race to the courthouse"); *Madanes*, 981 F. Supp. at 265 (plaintiff's motivation for filing the foreign proceeding was relevant in deciding against abstention because plaintiff filed the foreign action to procedurally preserve her claim). Indeed, in *Iragorri v. United Techs. Corp.*, a *forum non conveniens* case relied upon by Defendants, the Second Circuit expressly noted that district courts should "arm themselves with an appropriate degree of skepticism" when defendants ask them to waive jurisdiction, as defendants may be doing so only to litigate a more favorable forum. 274 F.3d 65, 71 (2d Cir. 2001). Here, the Dutch Action was admittedly filed for a tactical advantage: to avoid suit in the forum of Schenker's choice in an attempt to seize upon a defense not available in the United States.

The circumstances surrounding the Dutch Action's filing confirm Schenker's view that the Dutch Action was filed as a "torpedo" action. Such a suit is used to prevent a would-be claimant from bringing suit in its selected forum. As one scholar explains:

> Torpedo litigations refer to lawsuits conducted by the plaintiff, who expects (more or less for sure) that the other part (defendant) will file court proceedings against him/her . . . . The plaintiff, i.e. the defaulting party, is rushing to the court asking it to give negative declaratory judgment . . . . However, this is not really the first objective of the plaintiff. Above all the time is at stake. By filling [sic] the lawsuit the *lis pendens* begins and no other litigation shall, under normal circumstances, be possible.

17

Rajko Knez, *Torpedo Litigations Under Regulation 44/2001*, 7 Rev. Eur. 17, 18 (2005).[15]

As noted above, the Dutch Action, which seeks to bar Schenker from bringing suit in the jurisdiction of its choice, *see* Mov. Br. at 8 n.12, is a request for a negative declaration, that was filed on the heels of Schenker's opting out of Defendants' *Air Cargo* settlement and not long after the EC Decision was handed down.  That timing further evidences Defendants' untoward motivation in bringing the Dutch Action.  *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) ("[w]hen the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum.").  Moreover, Defendants' failure to prosecute the Dutch Action after the agreed-upon stay expired at the end of 2013—and further failure to ask the Dutch court to re-activate that proceeding until *after* this action was filed—more than suggest that Defendants' purpose in filing the Dutch Action is obstruction, not adjudication.[16]  *See* Knez, *Torpedo Litigations*, 7 Rev. Euro. at 18.  That fact is relevant to this Court's decision whether to waive its jurisdiction in deference to such a suit.

---

[15] As Defendants and their counsel are well aware, although torpedo actions have most often been used in patent and contract law, they are also used in an attempt to derail claims against global cartels.  *See* Linklaters Seminar Advertisement, "Cartel damages actions and their impact on conducting business" (Jan. 17, 2013), *available at* http://www.linklaters.com/Insights/Seminars/Pages/Cartel-damages-actions-impact-conducting-business.aspx (offering, in Linklaters' Amsterdam office, a discussion on, *inter alia*, "defendant's point of view on: 'torpedo' actions" and featuring Daniella Strik [Defendants' counsel in the Dutch Action] as a speaker); *see also* Linklaters Seminar Advertisement, "Follow-on damages claims in global cartels – recent trends and tactics" (Oct. 17, 2012), *available at* http://www.linklaters.com/Insights/Seminars/Pages/Follow-on-damages-claims-global-cartels–recent-trends-tactics.aspx (offering a discussion on, *inter alia*, "defendant's point of view on: 'torpedo' actions" and featuring "experts in the field" James Warnot, Defendants' counsel of record herein, and Ms. Strik as speakers).

[16] Defendants cannot soften the inference that the Dutch Action was filed to gain a tactical advantage because a few transactional agreements contain forum-selection clauses.  *See* Mov. Br. at 22 n.21.  Under European law, such forum-selection clauses do not apply to the competition law claims alleged herein.  *CDC Cartel Damage Claims Hydrogen Peroxide SA v. Degussa* (Case C-352/13) Op. of Adv. Gen. [Dec. 11, 2014) (holding that forum-selection clauses do not apply to competition law claims unless expressly bargained for in part because of a "danger that the perpetrators of an infringement of EU competition law would be enabled to bring 'torpedo actions', in the form of a negative declaration"); *see also* Berendsen Decl. ¶¶ 13–15.

### 2. Little Progress Has Been Made in the Dutch Action Since the Stay Expired Over a Year Ago.

Defendants suggest that courts "routinely dismiss or stay cases in deference to first-filed actions."  Mov. Br. at 18.  But the law is clear: "[T]he first-filed factor . . . does not turn exclusively on the sequence in which the cases were filed, but rather involves a comparison of how much progress has been made in the two actions." *Kitaru*, 698 F. Supp. 2d at 391 (internal quotations omitted) (quoting *Dunkin' Donuts Franchised Rest. LLC v. Rijay, Inc.*, No. 06 Civ. 8237(WCC), 2007 WL 1459289, at *19 (S.D.N.Y. May 17, 2007)).  The Dutch Action has progressed little, and what progress has been made occurred only *after* this action was filed.  In fact, it was only *after* Schenker filed this action that Defendants requested that the Dutch court bring the Dutch Action to the active docket.  Therefore, the fact that the Dutch Action was as a technical matter filed first should be accorded, at most, "minimal" weight.[17]  *See Palm Bay Int'l, Inc. v. Marchesi Di Barolo, S.P.A.,* 659 F. Supp. 407, 414 (E.D.N.Y. 2009) ("There is also no indication that the Italian litigation has reached a more advanced stage than this action.  Accordingly, this factor is accorded only minimal weight."); *Taub*, 2009 WL 4910590, at *6 (same).

Moreover, this action has progressed more quickly than the Dutch Action.  Only three substantive filings have been made in the Dutch Action, and there will not even be a hearing on

---

[17] In an apparent effort to justify the Dutch Action's lack of progress, Defendants baldly assert that Schenker's counsel violated Paragraph 3.12 of the parties' Agreement by pointing out to the Dutch court and this Court that American courts consider the progress made in a foreign-filed action under the *Royal & Sun* analysis.  *See* van Wissen Decl. ¶ 14; Mov. Br. at 19 n.17.  In point of fact, the Second Circuit instructs district courts to consider the progress of the purported parallel litigations, which progress is a matter of *fact*, regardless of how the progress (or lack thereof) came about.  *See Royal & Sun*, 466 F.3d at 92.  In any event, neither Defendants nor Schenker were bound by the Agreement's terms with regard to events occurring *after it expired at the end of 2013*, and from January 1, 2014 until August 2014, after the Agreement's expiration, the Dutch Action was *admittedly* dormant.  *See* van Wissen Decl. ¶¶ 11–12.  But even if somehow the Agreement was evergreen, as Defendants appear to be arguing, Paragraph 3.12's language only prohibits the parties from arguing that the Agreement impacts whether a jurisdiction "may . . . hear[]" a case.  *Id.* ¶ 7.  Here, there is no question that this Court *has* jurisdiction; at issue is whether it *should abstain from exercising* that jurisdiction.

19

the Schenker Motion Contesting the Dutch Court's Jurisdiction until June 18, 2015.  *See* van Wissen Decl. ¶¶ 13–14.  Here, even considering the filings only relating to Defendants, more progress has advanced.  Defendants filed a pre-motion conference letter, requesting leave to file its motion to dismiss to which Schenker responded.  Defs. Pre-Mot. Conf. Letter (Dec. 5, 2014), ECF No. 33; Pls. Pre-Mot. Conf. Letter (Dec. 12, 2014), ECF No. 35.  Extensive oral argument was had on those papers.  Pre-Mot. Conf. (Jan. 15, 2015), ECF No. 40.  Briefing on Defendants' Motion will conclude on March 26, 2015.  *Id.*  Thus, more progress has been made in this action.

Defendants also contend that the "passage of time" between the Dutch Action and the filing of this action suggests that "Schenker has long been on notice that its claims would be adjudicated in the Netherlands."  Mov. Br. at 19.  But the fact that Defendants filed a torpedo action in a court that lacks jurisdiction over their claim in no way suggests that Schenker's U.S. antitrust claims should or could be addressed in the Dutch Action.  In sum, Defendants cannot explain away the Dutch Action's limited progress and, thus, the fact that the Dutch Action was technically filed first is of little consideration.  *See Ace Arts LLC*, 2014 WL 4804465, at \*5 (disregarding "Defendants' limited assertion that the UK Action is now 'moving forward' following a stay [during a liquidation]," and not considering whether a foreign action filed more than a year prior).

### C.    This Forum Is the Most Convenient to Hear This Action.

Defendants argue, without support, that because "many of the key witnesses" in this case reside in Europe, "the Netherlands [is] a more convenient forum for the litigation for *all* parties involved."  Mov. Br. at 23 (emphasis in original).  Convenience, however, weighs in favor of this Court exercising its jurisdiction.

This Court has overseen the *Air Cargo* action—from which this opt-out action derives— for almost a decade.  In that case, "over 12 million pages of documents" have already been

produced.  Mem. and Order, *Air Cargo*, 06-MD-01775-JG-VVP (Mar. 19, 2013), ECF No. 1821.

That discovery and this Court's familiarity with the conspiracy at issue should markedly

convenience the parties here.  *See Rodriguez v. Creative Concepts Inc.*, No. 3:12-cv-2978-P,

2013 WL 2370569, at *5 (N.D. Tex. May 30, 2013) ("a prior production may make it as easy to

access documents in the place produced as the place originally stored"); *see also Maverick Fund,*

*L.D.C. v. Lender Processing Servs., Inc.*, No. 13 Civ 5474, 2013 WL 6467889 at *3 (S.D.N.Y.

Dec. 10, 2013) (finding the court's familiarity with the specific allegations through a related

class action to be a pertinent consideration in deciding what venue was appropriate).

Additionally, the Complaint alleges meetings held in furtherance of the conspiracy in at

least ten countries throughout North America, Asia, Europe, and Africa.  To the extent that any

forum is "convenient" to litigate this action—a U.S. claim based on U.S. transactions—it is this

New York forum, with its ease of international access, not Amsterdam.  *See Sangeorzan v.*

*Yangming Marine Transp. Corp.*, 951 F. Supp. 650, 655–56 (S.D. Tex. 1997) ("Because of the

nature of this case [involving witnesses and evidence in several countries], it . . . will be

expensive and riddled with inconveniences wherever it is tried" and so dismissing the case would

"simply shift inconvenience").

Defendants, however, maintain that they "will be inconvenienced if both actions proceed

concurrently," arguing that they will be "forced to expend considerable resources defending

actions involving the same issues and same parties between two different tribunals."  Mov. Br. at

23.  But even if this Court were to accept Defendants' premise, Defendants' cited authority

squarely rejects the suggestion that a defendant's inconvenience from litigating in two fora

merits abstention.  *See Tarazi*, 958 F. Supp. at 438 (defendants' claim of inconvenience by

litigating in two fora "does not constitute prejudice justifying deference to a parallel foreign

litigation").  Other courts are in accord; in *Kitaru*, for instance, the defendants contended that "they will be prejudiced by having to litigate in two forums simultaneously."  698 F. Supp. 2d at 391.  The *Kitaru* court held, however, that "[e]ven accepting Defendants' arguments on these points," abstention was not justified as "the burden of litigating in two forums simultaneously" is "commonly present when a parallel foreign proceeding is ongoing."  *Id.*  Thus, Defendants' bare contention that they will be inconvenienced by litigating two cases does not weigh in favor of abstention.  *Id.*; *see also Klonis*, 487 F. Supp. 2d at 356 (rejecting defendant's assertions of inconvenience and prejudice as "unexceptional").

        **D.**     **Schenker Will Be Prejudiced If This Court Abstains.**

Additionally, should this Court waive its jurisdiction and dismiss Schenker's claim against Defendants, Schenker would be unquestionably prejudiced.  Defendants assert that there is "no conceivable prejudice," because Schenker's inability to obtain treble damages or forego its choice forum is not prejudicial here.  Mov. Br. at 23.  Even assuming that to be true, which it is not, Defendants miss the more fundamental point.

If this action were dismissed, it is not established that the Dutch court even has jurisdiction to hear Defendants', much less Schenker's, claims.  Indeed, Schenker has moved to dismiss the Dutch Action on the grounds that the Dutch court lacks jurisdiction over the asserted claims and the action was improperly brought by Defendants.  Thus, a dismissal of this action will not ensure continued litigation of Schenker's claims in the Dutch Action.  *See, e.g.*, *Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 157 (2d Cir. 2005) (a court may not dismiss a case in deference to a foreign forum where defendants have not met their burden in demonstrating that the foreign court will accept jurisdiction over the claim).  Moreover, even assuming the Dutch court has jurisdiction over *some* claims, Defendants have not established that it has jurisdiction over claims relating to *all* shipments—shipments between New York and

22

Sydney, Australia, or San Francisco and Singapore, for example. *See Shipping Corp. of India v. Am. Bureau of Shipping*, 603 F. Supp. 801, 804 (S.D.N.Y. 1985) (the foreign court must "possess[ ] jurisdiction *over the entire action*" for dismissal to be appropriate (emphasis added)); *cf. Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. CIV.A. 13-2510, 2014 WL 958957, at *7 (E.D. Pa. Mar. 12, 2014) (where a foreign court's ruling would only cover a portion of the contracts at issue, abstention was inappropriate).

In any event, if Schenker were forced to litigate its damages relating on its U.S. shipments in the Dutch Action, those claims could be subject to the alleged pass-on defense. As discussed, that defense is unavailable under U.S. antitrust law. Although Mr. van Wissen states that the Dutch court has the capacity to apply United States law "where called upon to do so," neither he nor Defendants suggest that the Dutch court actually *will* apply U.S. antitrust law. *See* van Wissen Decl. ¶ 18. Nor could they—the Dutch Action they filed is premised specifically on *avoiding* an application of U.S. law and, further, claims that "the alleged claims of DB Schenker . . . *must be evaluated under Dutch law*." *Id.* Ex. 3 ¶ 68 (emphasis added). If Defendants actually believed that Schenker could simply counterclaim in the Dutch Action with its Sherman Act claim based on shipments to, from and within the United States and that the Dutch court would apply U.S. law to that claim—*i.e.*, not apply the pass-on defense—it is more than doubtful that Defendants would have brought the Dutch Action in the first place.[18]   At bottom, if

---

[18] Defendants imply that Schenker has forum shopped in filing suit here instead of bringing this action's claims in the Dutch Action, which they argue weighs in favor of abstention. Mov. Br. at 24. It would be eminently unfair to fault Schenker for not counterclaiming in the Dutch Action when: (1) Schenker opted out of the class action settlement in this Court in order to pursue its claims in this Court; (2) Schenker vigorously disputes the Dutch court's jurisdiction; (3) the Dutch Action was filed in a procedurally abusive manner; and (4) the Dutch Action was brought by Defendants with the express intent of evading U.S. law. *See* van Wissen Decl. Ex. 3 ¶ 58; *see, e.g.*, *Iragorri*, 274 F.3d at 75 (courts must consider whether defendants have forum-shopping motivations in deciding whether to stay or dismiss a case). Moreover, as discussed, this Court's ruling in *In re Air Cargo*, 2008 WL 5958061, at *31–35, dismissing the *Air Cargo* class's EU claims while retaining jurisdiction over the U.S. claims supports Schenker's decision to litigate its U.S. claims in the United States and its EU claims abroad. *See supra* at 6.

Schenker's U.S. claims deriving from its opt-out of the *Air Cargo* settlement are dismissed and its damages based on U.S. transactions are subject to a pass-on defense, Schenker would be unquestionably prejudiced.

### E.   This Action Is Most Closely Connected to the United States.

Last, although not addressed by Defendants, the Second Circuit has counseled courts to consider the forum with the closest connection to the action. *Royal & Sun*, 466 F.3d at 92. Here, the United States has a much closer connection to this action than the Netherlands. This is a U.S. claim based on U.S. injuries and the United States has a significant interest in adjudicating such claims. *See, e.g.*, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 924 (D.C. Cir. 1984) (in deciding whether to exercise jurisdiction over a U.S. antitrust claim based on a global conspiracy, noting "the United States has a substantial interest in regulating the conduct of business within the United States"); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 62 (S.D.N.Y. 1994) (holding that, even though some of the antitrust conduct occurred in, and impacted, the United Kingdom, the United States had a "strong interest" in the litigation because the conduct violated federal antitrust laws and affected competition in the United States); *accord DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (expressing the court's interest that plaintiffs' suit was based on federal securities laws). Further, this Court has overseen the *Air Cargo* action since its inception. Accordingly, no forum has a closer connection to this case than this one.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss or stay on abstention grounds should be denied in its entirety.[19]

---

[19] Defendants purport to "reserve the right" to join in a motion to dismiss on *forum non conveniens* grounds filed by two other defendants, if their Motion is not successful. Mov. Br. at 8 n.12. However, that motion is moot as those

Dated:  March 12, 2015              Respectfully submitted,

By:    /s/Sheldon T. Zenner        

Sheldon T. Zenner (*pro hac vice*)
Mary Ellen Hennessy (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
Email:  sheldon.zenner@kattenlaw.com
       maryellen.hennessy@kattenlaw.com

James J. Calder
Mark T. Ciani
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York  10022-2585
Telephone: 212.940.8800
Facsimile: 212.940.8776
Email:  james.calder@kattenlaw.com

*Attorneys for Schenker AG*

---

defendants have been dismissed from the litigation.  *See* Order dated Mar. 10, 2015 (Gleeson, J.).  Further, although Defendants stated their intention to "join in" that motion, they did not do so.  *See* Warnot Letter at 1 n.1.  In any event, Defendants never sought or received this Court's permission to file such a motion, as required by Judge Gleeson.  Judge John Gleeson Motion and Individual Practices, *Pre-Motion Conference Requests in Civil Cases* ¶ 3.A.  Accordingly, any request by Defendants to newly present such a motion should be denied.