UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SCHENKER AG,

                          Plaintiff,

v.

SOCIÉTÉ AIR FRANCE, KONINKLIJKE
LUCHTVAART MAATSCHAPPIJ N.V.,
MARTINAIR HOLLAND N.V., CARGOLUX
AIRLINES INTERNATIONAL S.A., NIPPON
CARGO AIRLINES CO., LTD., ALL NIPPON
AIRWAYS CO., LTD., QANTAS AIRWAYS
LIMITED, and SAS CARGO GROUP A/S.

                          Defendants.

Case No. 14-CV-04711 (JG) (VVP)

**ORAL ARGUMENT REQUESTED**

------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS SOCIÉTÉ AIR FRANCE, KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V. AND MARTINAIR HOLLAND N.V. TO DISMISS PLAINTIFF'S COMPLAINT

LINKLATERS LLP
James R. Warnot, Jr.
Thomas A. McGrath III
Brenda D. DiLuigi
Elizabeth Raulston
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 (telephone)
(212) 903-9100 (facsimile)

*Counsel for Defendants Société Air France, Koninklijke Luchtvaart Maatschappij N.V. (doing business as KLM Royal Dutch Airlines), and Martinair Holland N.V.*

March 26, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. THE COURT SHOULD DISMISS OR STAY THIS DUPLICATIVE ACTION ..................... 1

    A. Schenker Misstates Second Circuit Precedent .................................................................. 1

    B. The Issues And Parties Are Sufficiently Similar .............................................................. 2

    C. The Temporal Sequence Of The Actions Warrants Dismissal Or A Stay In Favor Of The Dutch Action ................................................................................................................ 4

    D. General Considerations Of Fairness And Judicial Economy Mandate Dismissal Or A Stay Of The New York Action ......................................................................................... 7

        1. Schenker Will Not Be Prejudiced By Dismissal Or A Stay ........................................ 7

        2. The Factors Of Convenience And Judicial Economy Weigh In Favor Of Dismissal Or A Stay ........................................................................................................... 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

Page

*Advantage Int'l Mgmt., Inc. v. Martinez*,
No. 93 CIV. 6227 (MBM), 1994 WL 482114 (S.D.N.Y. Sept. 7, 1994) ................................. 2, 5, 6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. MD 06-1775(JG)(VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008),
*adopted in relevant part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009) .................................. 6

*Andy Stroud, Inc. v. Brown*,
No. 08 Civ. 8246 (HB), 2009 WL 539863 (S.D.N.Y. Mar. 4, 2008) ........................................ 2

*Argus Media Ltd. v. Traditional Fin. Servs. Inc.*,
No. 09 Civ. 7966 (HB), 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ................................. 2, 4

*BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.*,
21 F. App'x 52 (2d Cir. 2001) .................................................................................................... 5

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998) .................................................................................................. 9, 10

*DiRienzo v. Philip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002) ..................................................................................................... 7, 9

*Dowling v. Hyland Therapeutics*,
767 F. Supp. 57 (S.D.N.Y. 1991) ............................................................................................... 8

*Eskofot A/S v. E.I. DuPont de Nemours & Co.*,
872 F. Supp. 81 (S.D.N.Y. 1995) ............................................................................................... 3

*Factors, Etc., Inc. v. Pro Arts, Inc.*,
579 F.2d 215 (2d Cir. 1978) ....................................................................................................... 5

*Fustok v. Banque Populaire Suisse*,
546 F. Supp. 506 (S.D.N.Y. 1982) ........................................................................................... 10

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001) ......................................................................................................... 7

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*,
46 F. Supp. 2d 249 (S.D.N.Y. 1999) .......................................................................................... 3

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*,
No. 12 CIV. 7249 PAE, 2013 WL 2531277 (S.D.N.Y. June 10, 2013) ..................................... 2

*Palm Bay Int'l Inc. v. Marchesi Di Barolo S.P.A.*,
659 F. Supp. 2d 407 (E.D.N.Y. 2009) ............................................................................................ 7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ....................................................................................................................... 9

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ....................................................................................................................... 8

*Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*,
No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y. Sept. 28, 2012) ............. 2, 9

*Republic of Colom. v. Diageo N. Am. Inc.*,
531 F. Supp. 2d 365 (E.D.N.Y. 2007) ........................................................................................ 4, 7

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
466 F.3d 88 (2d Cir. 2006) .......................................................................................................... 1, 2

*Sangeorzan v. Yangming Marine Transp. Corp.*,
951 F. Supp. 650 (S.D. Tex. 1997) ................................................................................................ 7

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
421 F. Supp. 2d 741 (S.D.N.Y. 2006) ............................................................................................ 8

*Taub v. Marchesi Di Barolo S.p.A.*,
No. 09-CV-599 ADS ETB, 2009 WL 4910590 (E.D.N.Y. Dec. 10, 2009) .................................. 4

*Transunion Corp. v. PepsiCo, Inc.*,
811 F.2d 127 (2d Cir. 1987) ......................................................................................................... 10

## OTHER AUTHORITIES

Press Release, Deutsche Bahn AG, DB seeks estimated damages of $2.5 billion in lawsuits against airlines in air cargo cartel, http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (Dec. 1, 2014) (last accessed March 26, 2015) .............................................................................................................................................. 6

## INTRODUCTION

Nearly *four years* after the filing of the Dutch Action,[1] Schenker belatedly claims that it should be permitted to pursue its duplicative litigation in this Court. In doing so, Schenker relies on a flawed – and unprecedented – interpretation of the Second Circuit's decision in *Royal & Sun*.[2] Schenker in essence argues that the Court should require a heightened showing *beyond* a weighing of the relevant factors set out by the Second Circuit for determining whether "exceptional circumstances" exist, and therefore should not defer to the first-filed Dutch Action. Here – where a foreign corporation seeks to litigate against exclusively foreign parties in the United States for the specific purpose of pursuing treble damages, and its claims are based on the same alleged global conspiracy that is the subject of two actions currently pending in Europe – the "exceptional circumstances" test warranting dismissal (or at a minimum, a stay) is easily met.

## ARGUMENT

### I. THE COURT SHOULD DISMISS OR STAY THIS DUPLICATIVE ACTION

#### A. Schenker Misstates Second Circuit Precedent

*Royal & Sun* does not require the two-tiered approach urged by Schenker: (i) what it refers to as "basic considerations" (*i.e.*, the list of factors outlined by the Second Circuit), and (ii) some other, unspecified factors to determine whether "exceptional circumstances" exist. *See* Pl. Opp. at 14-15. *Royal & Sun* imposes no second step beyond weighing a list of non-exclusive factors *for purposes of determining whether "exceptional circumstances" exist*. Instead, the Court considers:

> various factors, such as the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience

---

[1] Capitalized terms shall have the meanings ascribed to them in the AF-KLM Defendants' opening Memorandum of Law ("Opening Mem."). References to Schenker's opposition memorandum are cited as ("Pl. Opp.").

[2] *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006) ("*Royal & Sun*").

> of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction. . . . to determine whether the specific facts before it are sufficiently exceptional . . . .

*Royal & Sun*, 466 F.3d at 94; *see also Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12 CIV. 7249 PAE, 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013).[3] Accordingly, if the "balance of factors" weighs in favor of a dismissal or stay, that is the end of the analysis, and there is no second hurdle that the parties must overcome.[4] In this case, the balance of the *Royal & Sun* factors weighs in favor of dismissal or a stay.

### B. The Issues And Parties Are Sufficiently Similar

Schenker is wrong that the issues are dissimilar because this case "involves a U.S. claim brought by an injured cartel victim based on its U.S. injuries," while the sole issue in the Dutch Action is whether the "pass on" defense operates as a bar to liability. *See* Pl. Opp. at 10-11. Despite Schenker's attempted re-casting of the issues, it cannot be disputed that the same alleged global conspiracy is a core issue in both cases. Nor does the fact that Schenker is a defendant in one case and a plaintiff in the other render the parties or the issues dissimilar.[5] *See Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93 CIV. 6227 (MBM), 1994 WL 482114, at *2

---

[3] Though Schenker draws an artificial distinction between the "principles of international comity" and the "prior action pending" doctrine, *see* Pl. Opp. at 2 n.4, the prior action pending doctrine goes hand-in-hand with principles of comity. *See Ole Media*, 2013 WL 2531277, at *2 ("This 'prior action pending' doctrine recognizes the 'principles upon which comity is based . . . .'" (citing *Royal & Sun*, 466 F.3d at 94)); *Argus Media Ltd. v. Traditional Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009) (applying "prior action pending" doctrine in staying U.S. litigation in favor of U.K. proceedings).

[4] Schenker tacitly acknowledges as much in pointing to decisions in this Circuit following *Royal & Sun*, where, as Schenker concedes, "the courts found abstention appropriate without identifying any 'exceptional circumstances' that would justify abstention." Pl. Opp. at 15 n.14 (citing *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y. Sept. 28, 2012); *Argus Media*, 2009 WL 5125113, at *6). Rather than attempting to distinguish *Quanzhou Joerga Fashion* or *Argus Media* on their facts, Schenker ultimately resorts to the argument that those cases – as well as others cited by the AF-KLM Defendants, including *Ole Media* – are incorrectly decided because they do not apply an additional "exceptional circumstances" test beyond balancing the factors articulated in *Royal & Sun*. *See* Pl. Opp. at 14, 15 n.14.

[5] Schenker cannot argue that there is anything inherently wrong with filing a declaratory judgment action, which is common in the United States. For example, in *Andy Stroud, Inc. v. Brown*, a case cited by Schenker, the court dismissed an action in favor of a prior pending declaratory judgment action in another district court. No. 08 Civ. 8246 (HB), 2009 WL 539863 (S.D.N.Y. Mar. 4, 2009).

2

(S.D.N.Y. Sept. 7, 1994) ("That the parties may be referred to as plaintiff in one action and defendant in another does not render their identical legal claims dissimilar.").

Moreover, as is clear from the face of the Dutch writ of summons, the Dutch Action is not – as Schenker suggests – solely premised on whether the "pass on" defense applies. *See* van Wissen Decl. Ex. 3. Rather, the threshold question to be decided in the Dutch Action is whether the AF-KLM Defendants are liable to Schenker for an infringement of competition laws, *including the laws of the United States*,[6] as well as the European Union and other jurisdictions. *See* Reply Declaration of Maikel van Wissen ("van Wissen Reply Decl.") dated March 26, 2015 ¶ 3. The Dutch court will then determine whether the alleged conduct caused harm to Schenker – the absence of which could be due to, for example, other pricing components ultimately offsetting the surcharges so that the overall price did not increase. *Id.* As to the "pass on" defense (and other defenses limiting damages), the court will consider its applicability only if there is a predicate finding as to liability to Schenker. *Id.* The presence of additional causes of action or legal theories (including defenses such as the "pass on" defense) in one case does not make the cases dissimilar. *See MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 252 (S.D.N.Y. 1999) ("substantial identity of issues" present despite differences in claims and legal theories under U.S. and English law).[7]

The presence of Qantas – the sole remaining additional defendant, which itself has a pending motion to dismiss – does not defeat the similarity of the parties. While Schenker

---

[6] Schenker's Dutch counsel admits this in his Declaration: "Through the Writ, AF-KLM seek[s] a declaration by the Dutch Court that AF-KLM is not liable to Schenker for any alleged infringement of competition law, *including but not limited to, U.S. federal antitrust law* and European competition law." *See* Declaration of Sidney J.H.M. Berendsen, dated March 12, 2015 ("Berendsen Decl."), ECF No. 58, ¶ 3 (emphasis added).

[7] *Eskofot A/S v. E.I. DuPont de Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995), a case on which Schenker relies, is not to the contrary. There, the court found that the issues were not substantially similar between the pending U.S. and U.K. actions because – unlike the instant case – the U.S. action contained additional, and substantively different, claims. *Id.* at 90. Moreover, the court noted that it could "stay a proceeding based on comity and judicial efficiency even if the outcome of the foreign proceeding would not resolve all of the issues pending in the American action." *Id.*

3

argues that the parties are dissimilar because Qantas is not an affiliate of any of the AF-KLM Defendants, not one of the cases on which Schenker relies stands for the proposition that parties are similar only when they are affiliates. Rather, those cases involved claims that the parties *were* affiliated and thus the courts did not reach the issue of whether there were other circumstances present that could suffice to establish similarity.[8] By contrast, courts that have addressed the issue have found that substantial similarity is present where the parties' interests are aligned. *See* Opening Mem. at 14-15. In an effort to sidestep this issue, Schenker asserts that Qantas' interests are not aligned with those of the AF-KLM Defendants. In doing so, Schenker relies on the erroneous premise, discussed above, that the scope of the Dutch Action is limited to the effect of the "pass on" defense, Pl. Opp. at 9, 11, 16, which it is not. It is indisputable that Qantas would benefit from a ruling in the Dutch Action that there is no liability for an alleged global conspiracy, or that the alleged conspiracy caused no injury to Schenker, because Qantas likewise could not be held liable to Schenker for injuries that did not occur.[9]

### C. The Temporal Sequence Of The Actions Warrants Dismissal Or A Stay In Favor Of The Dutch Action

The temporal sequence of the filings should not be ignored based on Schenker's unsupported and erroneous assertion that the Dutch Action was initiated in bad faith – as a so-called "torpedo" action. *See, e.g.,* Pl. Opp. at 11 n.10, 17-18. Despite Schenker's repeated invocation of the term "torpedo", the filing of the Dutch Action was in no way inappropriate.[10]

---

[8] *See Taub v. Marchesi Di Barolo S.p.A.*, No. 09-CV-599 ADS ETB, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009) (claim that plaintiffs were "officers and/or affiliates" of entity in foreign litigation); *Argus Media*, 2009 WL 5125113, at *6 (acknowledging that "both actions involve Defendants' (and/or their affiliates') right to copy and distri[b]ute [the plaintiff's] copyrighted work"); *Republic of Colom. v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 415 (E.D.N.Y. 2007) (finding that the parties were sufficiently similar where they were "affiliated in some way").

[9] Moreover, even were the claims in the Dutch Action limited to damages relating to shipping services provided by the AF-KLM Defendants, a ruling in favor of the AF-KLM Defendants would benefit, not harm, Qantas, as Qantas would no longer be subject to joint and several liability for that commerce.

[10] Despite Schenker's contrary assertions, *see* Pl. Opp. at 1, 5; Berendsen Decl. ¶¶ 7-16, the AF-KLM Defendants have complied in all respects with the relevant evidentiary and other requirements for filing the Dutch Action. *See*

4

To the contrary, the Netherlands is an appropriate forum for multiple reasons: (i) two of the three AF-KLM Defendants (as well as eight of the Schenker-related entities in the Dutch Action) are located in the Netherlands, *see* Opening Mem. at 3; van Wissen Decl. ¶ 17; (ii) prior to the filing of the Dutch Action, there was already one action pending before the Amsterdam District Court against the AF-KLM Defendants relating to damages arising from the alleged global price-fixing conspiracy, *see* van Wissen Reply Decl. ¶ 14; (iii) an additional four actions have been filed by private plaintiffs in the same court involving substantively-similar allegations, *see id.*; (iv) the AF-KLM Defendants filed the Dutch Action in the Netherlands to have all substantively-similar claims adjudicated in a single forum, *see id.*; and (v) many of Schenker's agreements with the AF-KLM Defendants provide that claims in relation to their agreements are to be brought in the Netherlands, *see, e.g.,* van Wissen Decl. Ex. 4.[11]

Nor can Schenker legitimately claim that the AF-KLM Defendants inappropriately "jumped the gun" in filing the Dutch Action, *see* Pl. Opp. at 17-18, given that it was filed *more than three years before the New York Action.*[12] If anything, the timing of Schenker's filing suggests a belated effort to disrupt the Dutch Action. *See Advantage Int'l*, 1994 WL 482114, at *3.[13] In *Advantage International*, the court rejected the plaintiff's argument

---

van Wissen Reply Decl. ¶¶ 6-13. All of Schenker's arguments to the contrary are a re-hash of its motion currently pending before the Dutch court.

[11] Having failed to offer credible support for its proposition that the Dutch Action was commenced in bad faith, Schenker grasps at straws, citing to announcements on Linklaters' external website regarding training seminars where the words "torpedo actions" (but no detail about them) appear among a bullet-point list of seminar sub-topics, *see* Pl. Opp. at 18 n.15. Schenker's references to Linklaters' external speaking engagements have no bearing on the issues before the Court on this motion, but instead highlight the frailty of Schenker's position.

[12] Even were this a situation involving an arguable "race to the courthouse," Schenker's reliance on *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) would be misplaced. While in certain circumstances a lawsuit triggered by a notice letter may be viewed with additional scrutiny, the law in this Circuit is clear that such skepticism comes into play only where a declaratory action is "filed in response to [a] demand letter[] that give[s] specific warnings as to deadlines and subsequent legal action," *see BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 21 F. App'x 52, 55 (2d Cir. 2001), which was not the case here. *See* van Wissen Decl. Exs. 1, 2.

[13] While Schenker argues that the Court should ignore *Advantage International* because it pre-dates *Royal & Sun*, it is based on the same factors articulated in *Royal & Sun*. *See Advantage Int'l*, 1994 WL 482114, at *3.

5

that the defendant brought a declaratory judgment action in her home jurisdiction, Spain, for improper tactical reasons:

> Where, as here, the interval between commencement of two lawsuits is three years, the most reasonable inference is that there was no "race" [to the courthouse], and that the later lawsuit is little more than an effort to disrupt or usurp the earlier. . . . [T]he law does not frown upon a party's choice of a foreign forum, unless it was secured unfairly or is itself manifestly unfair . . . . to the extent that there is evidence of impermissible forum shopping, it is more apparent in [the plaintiff's] litigation strategy than in [the defendant's].

*Id.*[14] Also baseless is Schenker's claim that the AF-KLM Defendants in any way "fail[ed] to prosecute the Dutch Action." Pl. Opp. at 18. Schenker requested that the AF-KLM Defendants agree to dismiss the Dutch Action so that the parties could pursue a resolution; in the interest of compromise, the AF-KLM Defendants agreed to stay the action pending negotiations. *See* van Wissen Reply Decl. ¶ 15. Despite Schenker's contrary claim, following expiration of the most recent extension of the Confidentiality Agreement, the parties continued to communicate and explored the possibility of a further extension. *Id.* ¶ 16. For instance, in early 2014, counsel for the AF-KLM Defendants wrote to Schenker's counsel via e-mail to request certain information, and suggested a further extension of the Confidentiality Agreement. *Id.* Schenker's counsel, however, did not respond, and instead filed this action on August 7, 2014. *Id.*[15] Thus, as

---

[14] Though Schenker attempts to justify its duplicative litigation by pointing to the Court's 2008 ruling in *In re Air Cargo*, Pl. Opp. at 6, 23 n.18, that decision was premised on the Court's dismissal, on *forum non conveniens* and international comity grounds, of claims based on undeveloped areas of EU law. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775 (JG)(VVP), 2008 WL 5958061, at *30–35 (E.D.N.Y. Sept. 28, 2008), *adopted in relevant part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009). The reverse is not true: U.S. federal antitrust law is extensively developed, and foreign courts are competent to apply it. Thus, that decision is irrelevant to this case. Schenker's true motivation for filing the instant case is evident from its public actions: on the heels of its filing of this case, Schenker, and its parent, Deutsche Bahn, launched an extensive press campaign in which they touted their intention to secure a treble damages award in the United States, even establishing their own webpage – *www.aircargocartelclaims.com* – to do so. *See* Press Release, Deutsche Bahn AG, DB seeks estimated damages of $2.5 billion in lawsuits against airlines in air cargo cartel, http://www.aircargocartelclaims.com/db-seeks-estimated-damages-2-5-billion-lawsuits-airlines-air-cargo-cartel/ (Dec. 1, 2014) (last accessed March 26, 2015).

[15] Schenker seeks to justify its violation of Section 3.12 of the parties' Confidentiality Agreement by arguing that it prohibited the parties from arguing "whether" a particular court could hear a case, not "where" the case should be heard. Pl. Opp. at 19 n.17. That argument is belied by the plain language of Section 3.12, which prohibits the parties from arguing that the stay should have any impact on where the case is heard. *See* van Wissen Decl. ¶ 7.

6

contemplated by the Confidentiality Agreement, AF-KLM Defendants resumed the Dutch Action on August 29, 2014. *Id.*

### D. General Considerations Of Fairness And Judicial Economy Mandate Dismissal Or A Stay Of The New York Action

Schenker will not suffer prejudice or be inconvenienced if this action is dismissed or stayed. *See* Pl. Opp. at 20-24. As previously noted, there can be no dispute that Schenker is pursing the New York Action to avail itself of treble damages. *See* Section I.C, *supra*. Therefore, Schenker's choice of forum should receive little (if any) deference. *See, e.g., Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).[16] In any event, Schenker's arguments as to prejudice and inconvenience are hollow, as its claims against the AF-KLM Defendants will be fully adjudicated in a single forum, the Netherlands – which is indisputably a more convenient forum, and one that is more connected to the dispute between the parties to this litigation.

#### 1. Schenker Will Not Be Prejudiced By Dismissal Or A Stay

Schenker advances two faulty hypotheticals concerning prejudice: (1) it will be prejudiced if the Amsterdam District Court concludes that it does not have jurisdiction, and (2) it will be prejudiced if the Amsterdam District Court applies the "pass-on" defense to its claims. *See* Pl. Opp. at 22-24. These assertions are simply wrong.

First, Schenker's uncertainty as to the disposition of its jurisdictional attack in the Dutch Action is no impediment to the dismissal or stay of this case; to the contrary, courts routinely conditionally dismiss or stay actions pending a determination on the foreign court's

---

[16] Though Schenker appears to argue that reliance on decisions involving *forum non conveniens* considerations is improper, Pl. Opp. at 15, n.14, Schenker itself relies on a number of *forum non conveniens* decisions in its memorandum. *See, e.g., DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002); *Sangeorzan v. Yangming Marine Transp. Corp.*, 951 F. Supp. 650, 655–56 (S.D. Tex. 1997). In any event, courts in this Circuit have found that several factors involved in *forum non conveniens* and "prior action pending" cases overlap and thus those decisions are instructive here. *See, e.g., Palm Bay Int'l Inc. v. Marchesi Di Barolo S.P.A.*, 659 F. Supp. 2d 407, 413 (E.D.N.Y. 2009) ("The Court has already addressed several of these considerations [adequacy of alternate forum, convenience of each forum, and connection with each forum] in the context of Marchesi's forum non conveniens motion and need not repeat a discussion of these factors."); *see also Diageo N. Am*, 531 F. Supp. 2d at 413.

7

jurisdiction. *See, e.g., Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 756 (S.D.N.Y. 2006) ("Where a district court cannot definitively determine the adequacy of the foreign forum, the Second Circuit advises that the court can still dismiss the case with the condition that the plaintiff be able to reinstate the case if the alternative forum declines to assume jurisdiction."); *Dowling v. Hyland Therapeutics*, 767 F. Supp. 57, 59 (S.D.N.Y. 1991) (condition that defendants agree "not act to prevent plaintiffs from returning to this Court if the Court in Ireland declines to accept jurisdiction of this action").[17] Second, Schenker argues that it will be prejudiced by litigating in the Netherlands because it could be subject to the pass-on defense. Pl. Opp. at 23-24. As previously discussed, while the Dutch Court has not yet ruled on this issue, and Schenker will obviously argue that pass-on does not apply to U.S. claims, the availability (or lack thereof) of the pass-on defense bears only on the amount of damages that may be recovered, and thus is irrelevant to the Court's analysis. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981) (dismissal may be granted "even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery").

### 2. The Factors Of Convenience And Judicial Economy Weigh In Favor Of Dismissal Or A Stay

There can be no real dispute that the Netherlands provides a more convenient forum for the parties, despite Schenker's claims to the contrary. Pl. Opp. at 20-22. Two of the parties, KLM and Martinair, are located in the Netherlands (and Schenker and Air France are each located in Europe), whereas none are located in the United States. Rather than addressing these key facts, Schenker posits that the Court's administration of the *Air Cargo* case makes it a more convenient forum because "over 12 million pages of documents have already been

---

[17] Schenker also argues that it could be prejudiced if the Dutch Action does not cover routes between the U.S. and non-European destinations. *See* Pl. Opp. at 22-23. This argument is likewise without merit. As Schenker's Dutch counsel acknowledges, the Dutch Action covers liability for "*any* alleged infringement of competition law, including but not limited to, U.S. federal antitrust law and European competition law." Berendsen Decl. ¶ 3 (emphasis added). This includes *all* relevant routes between the parties. *See* van Wissen Reply Decl. ¶ 4.

8

produced" in that case. Pl. Opp. at 20-21. However, the progress of discovery in the *Air Cargo* litigation has no bearing on convenience of the parties in this case.[18] The AF-KLM Defendants entered into their settlement agreement with the class plaintiffs in July 2010 – long before depositions or any other significant discovery took place.[19] *Air Cargo,* ECF No. 1209. Since that time, the *Air Cargo* litigation has progressed well beyond the discovery phase: the Court issued its Report and Recommendation on class certification on October 15, 2014, *see id.*, ECF No. 2055, and summary judgment motions are due to be filed on April 20, 2015, *see id.*, ECF No. 2135.[20]

Schenker also argues that this action should proceed because this Court has a greater interest in applying U.S. law.[21] But where, as here, the alternative forum is capable of adjudicating the parties' claims, this factor bears little weight. *See Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) (noting that the Second Circuit has "never held that the United States' interest in applying its laws is a determinative factor").[22] Indeed, courts within the Second Circuit have routinely dismissed cases involving U.S. federal

---

[18] Schenker has conceded, as it must, that the cases are entirely separate. *See* Transcript of Oral Argument at 16:15-18, *Schenker AG v. Société Air France*, No. 14-CV-4711(JG) (E.D.N.Y. Feb. 27, 2015) (stating that Schenker is not "trying to relate back" to the *Air Cargo* case because "it's a different case"). *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985) (a plaintiff who opts out of a class "is removed from the litigation entirely").

[19] Indeed, the only documents produced to the class plaintiffs at the time of settlement were documents received by the U.S. Department of Justice. *See In re Air Cargo*, ECF Nos. 1030, 1036.

[20] Schenker conspicuously fails to argue that judicial economy would be served by retaining the New York Action; however, this is unsurprising, given that the *Air Cargo* proceedings and the instant case (if not dismissed) would proceed on vastly different tracks in terms of scheduling and administration. Judicial economy would clearly be best served by allowing a single court – the Amsterdam District Court – to adjudicate Schenker's claims against the AF-KLM Defendants on a global basis. *See* Opening Mem. at 17-18.

[21] Schenker erroneously suggests that the AF-KLM Defendants fail to address the connection between the parties' dispute and the Dutch forum. Pl. Opp. at 24. Those factors and factors of convenience are interrelated and thus are addressed together, *see* Opening Mem. at 23-25 – an approach that is consistent with the approach taken by the courts in this Circuit. *See, e.g., Quanzhou Joerga Fashion*, 2012 U.S. Dist. LEXIS 143334, at *11.

[22] *DiRienzo*, cited by Schenker, is inapposite, as that case involved U.S. plaintiffs and defendants, and "the majority of [plaintiffs'] securities transactions were conducted entirely in the United States, by Americans, in American dollars, on American stock exchanges." *DiRienzo*, 294 F.3d at 31. By contrast, this case involves entirely *foreign* parties, as well as an alleged *worldwide* conspiracy.

9

law claims, finding other fora adequate to adjudicate substantially similar claims.[23] By contrast, the Amsterdam District Court is currently overseeing six separate cases – including the Dutch Action, which covers all of Schenker's claims – involving the AF-KLM Defendants relating to damages arising from the alleged global price-fixing conspiracy, *see* van Wissen Decl. ¶ 18, and thus the Dutch court is more closely connected than the U.S. forum to the parties' dispute.

## CONCLUSION

The AF-KLM Defendants respectfully request that the Court dismiss Plaintiff's Complaint in favor of the prior pending Dutch Action. In the alternative, the AF-KLM Defendants request that the Court stay this action pending a determination on the merits in the Dutch Action, or at a minimum, pending determination of the jurisdiction motion in the Netherlands, at which point this issue could be revisited.

Dated:  New York, New York
        March 26, 2015            Respectfully submitted,

                                  LINKLATERS LLP

                                  By:   /s/ James R. Warnot, Jr.
                                  James R. Warnot, Jr.
                                  Thomas A. McGrath III
                                  Brenda D. DiLuigi
                                  Elizabeth Raulston
                                  1345 Avenue of the Americas
                                  New York, New York 10105
                                  (212) 903-9000

                                  *Counsel for Defendants Société Air France, Koninklijke Luchtvaart Maatschappij N.V. (doing business as KLM Royal Dutch Airlines), and Martinair Holland N.V.*

---

[23] *See, e.g., Capital Currency Exch.*, 155 F.3d at 609-10 (federal antitrust suit dismissed notwithstanding that England would not adjudicate Sherman Act claims); *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (dismissing case involving RICO claims where plaintiffs could bring similar fraud claims in the Philippines); *Fustok v. Banque Populaire Suisse*, 546 F. Supp. 506, 513-14 (S.D.N.Y. 1982) (deferring to an action pending in Switzerland because Swiss law fraud claims were comparable to claims under the U.S. Commodity Exchange Act).

10