UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

<u>FOR ONLINE PUBLICATION ONLY</u>

---

SCHENKER AG,

                                        Plaintiff,

        - versus -

SOCIÉTÉ AIR FRANCE, KONINKLIJKE
LUCHTVAART MAATSCHAPPIJ N.V.,
MARTINAIR HOLLAND N.V.,
CARGOLUX AIRLINES INTERNATIONAL
S.A., NIPPON CARGO AIRLINES CO.,
LTD., ALL NIPPON AIRWAYS CO., LTD.,
QANTAS AIRWAYS LIMITED, and SAS
CARGO GROUP A/S.

                                        Defendants.

---

MEMORANDUM
<u>AND ORDER</u>
14-CV-04711 (JG) (VVP)

**A P P E A R A N C E S:**

        KATTEN MUCHIN ROSENMAN LLP
                575 Madison Avenue
                New York, NY 10022-2585, and
                525 West Monroe Street
                Chicago, IL 60661-3693
        By:     James J. Calder
                Mark T. Ciani
                Sheldon T. Zenner
                Mary Ellen Hennessy
                Thomas P. Peabody
                *Attorneys for Plaintiff*

        BAKER & MILLER PLLC
                2401 Pennsylvania Avenue, NW
                Suite 300
                Washington, D.C. 20037
        By:     W. Todd Miller
                Ishai Mooreville
                *Attorneys for Defendant Qantas Airways Limited*

JOHN GLEESON, United States District Judge:

This case is a part of *In re Air Cargo Shipping Services Antitrust Litigation,* 06–md–1775 (E.D.N.Y.), an MDL based on an alleged price-fixing conspiracy among airlines providing freight shipping services.  Defendant Qantas Airways Limited ("Qantas") moves to dismiss Plaintiff Schenker AG's ("Schenker") Complaint ("Compl.") under Federal Rule 12(b)(6), arguing that the case was not filed within the Clayton Act's four-year statute of limitations, even after tolling is taken into account.  Qantas also moves the Court to take judicial notice of various documents and news reports attached as exhibits to its motion.  For the reasons that follow, the motion to take judicial notice is granted, and the motion to dismiss is denied.

FACTUAL BACKGROUND

Qantas is an air cargo carrier based in Australia that provides airfreight shipping services to customers around the world.  Compl. ¶ 22, ECF No. 1.  Schenker is a freight-forwarder based in Germany that provides logistical and freight forwarding support to customers that require the transportation of goods within, to, and from the United States.  *Id.* ¶ 16.  This case arises from Qantas's participation in a criminal price fixing conspiracy among various air carriers to fix surcharges imposed on airfreight shipping services.  *See id.* ¶ 3.  On January 14, 2008, Qantas pled guilty to a criminal violation of the Sherman Act.  Defendant's Brief ("Def. Br.") 3, ECF. No. 39.  On January 19, 2011, I granted preliminary approval of a settlement agreement between Qantas and class plaintiffs, pursuant to which it paid $26.5 million to settle the resulting class action brought against it and its co-conspirators.  Compl. ¶ 188.  Schenker opted out of that settlement on May 24, 2011.  *Id.* ¶ 214.

On August 7, 2014, Schenker filed the instant action against Qantas and other carriers.  *See id.* ¶ 1.  Schenker's complaint alleges that Qantas and other cargo airlines

2

worldwide conspired to set fuel surcharges in unison in direct relation to a fuel index that Lufthansa Airlines published on a regular basis on its website.  *Id.* ¶¶ 3-7, 230-33.

Qantas argues that the complaint should be dismissed because Schenker's claims are time-barred.  Def. Br. 1.  Specifically, Qantas maintains that the statute of limitations began to run on February 15, 2006, the day after the Department of Justice ("DOJ") and European Commission conducted office raids ("the raids") of multiple airline carriers' offices around the world for participating in an alleged price-fixing conspiracy.  *Id.*  Because of the extensive press coverage of the raids, Qantas argues, Schenker was on notice of its potential violations.  *Id.* 1, 4, 16.  Qantas acknowledges that it was not one of the airlines raided on February 14, 2006.  *Id.* 2.

Qantas further argues that Schenker cannot resort to fraudulent concealment (which would toll the statute of limitations) beyond February 15, 2006 because it became known at that time that the various fuel indices published and used by multiple defendants (other than Qantas) were likely artificial, and that the defendants had been using the same fuel indices.  *Id.* 10-11.  By running the statute of limitations from that date, Qantas asserts that Schenker's complaint was filed 68 days after the statute of limitations expired.[1]

In the days that followed the DOJ raids, multiple class action complaints asserting claims under the Sherman Act were filed against certain air cargo carriers.  *Id.* 3.  The first complaints were filed on February 17, 2006, three days after the raids took place.  *Id.*  These initial complaints named at least 16 separate air cargo carriers based in 14 different countries as

---

[1]     The four-year statute of limitations under the Clayton Act is 1,461 days ((365 X 4) + 1 leap day).  *U.S. v. Brown*, 740 F.3d 145, 149 (3d Cir. 2014).  Qantas argues that the latest the limitations period could have begun to run for Schenker's August 7, 2014 complaint to be timely was April 24, 2006.  *See* Def. Br. 1, at n.1.  It contends, however, that the limitations period actually began to run on February 15, 2006, making June 1, 2014 the latest the complaint could have been filed.  *Id.* 7, at n.17.  Specifically, "[f]rom February 15, 2006 (when the cause of action accrued) until February 8, 2007 (when the first Complaint was filed against Qantas) is a period of 358 days (including the start date but not the end date).  From May 24, 2011 (the day Schenker opted out of the Qantas settlement in the Air Cargo Class Action) until June 1, 2014 is a period of 1103 days (not including the start date or end date).  358 days + 1103 days = 1,461 days = four years."  *Id.*  Schenker filed the complaint on August 7, 2014, 68 days after June 1, 2014.

3

defendants.  *Id*.  Qantas was not named as a defendant in any of those complaints.  *Id*.  On

August 17, 2006, Qantas first disclosed that it was under investigation by DOJ for price-fixing.

*Id*. 20.

           Qantas was not named as a defendant in the Air Cargo Class Action until

February 8, 2007, nearly a year after the raids, in an amended complaint.  *Id*. 3.  Nine months

later, on November 27, 2007, the DOJ announced that Qantas would plead guilty to certain

antitrust violations.  *Id*.  As mentioned above, Qantas's guilty plea was entered on January 14,

2008.  *Id*.  The plea encompassed activities by Qantas from January 1, 2000, to February 14,

2006 and did not reference any activity in furtherance of the conspiracy beyond February 14,

2006, the day of the raids.  *Id*.

           Qantas argues that to have been timely, Schenker's complaint should have been

filed by June 1, 2014 (based on a statute of limitations accrual date of February 15, 2006).  Def.

Br. 7, at n.17; *see also supra* note 1.  The parties agree that because Schenker actually filed its

complaint on August 7, 2014, it was timely filed so long as the claim it asserts accrued at any

point after April 24, 2006 (four years before the filing of the complaint, taking tolling into

account).  *See* Def. Br. 1; Plaintiff's Opposition Brief ("Pl. Opp. Br.") 2, at n.2, ECF No. 44.

Qantas argues that Schenker has not alleged a continuing conspiracy or fraudulent concealment

of the conspiracy past February 15, 2006, so the complaint should be dismissed.

DISCUSSION

A.     *The Applicable Legal Standard*

           In evaluating a motion to dismiss, I must accept the factual allegations in the

complaint as true, and determine whether they "state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

4

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The plausibility standard applies to motions to dismiss based on statutes of limitations.  *See, e.g.*, *George v. Strayhorn*, No. 11-CV-3701 (PAC), 2014 WL 1259613, at *2 (S.D.N.Y. Mar. 24, 2014).  A motion to dismiss based on the statute of limitations may be granted only if "there is no factual question as to whether the alleged violations occurred within the statutory period[.]"  *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012) (citation omitted) (emphasis added).  I also must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff and liberally construe the complaint.  *See Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted).

A.      *Judicial Notice of Quantas's Exhibits*

Dismissal based on a statute of limitations is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."[2]  *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks and citation omitted).  Qantas asks the Court to take judicial notice of 21 exhibits (16 of which are news articles), that it has submitted in support of its argument that the statute of limitations began to run on February 15, 2006.  Defendant's Brief-2 ("Def. Br.-2"), ECF No. 39-3.  Qantas contends that these articles establish that information about the conspiracy was available at that time, triggering Schenker's duty to investigate its claims, despite the fact that Qantas was not identified as one of the airline carriers under investigation in the articles.

---

[2]      "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings" for purposes of a Rule 12(b)(6) motion. *Staehr*, 547 F.3d at 426 (internal citations omitted) (citing 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 & n. 33 (3d ed. 2004)).

In deciding when the statute of limitations began to run, a district court may consider publicly available documents that are offered solely for purpose of showing that the alleged information was publicly available. *Staehr*, 547 F.3d at 426. Here, Qantas submits the documents not for the truth of the matters they assert, but to show that Schenker was on inquiry notice, and could have discovered its claims had it been diligent. Defendant's Reply Brief ("Def. Rep. Br.") 2, ECF No. 49. The Second Circuit has held that a court may consider such publicly available documents when considering a Rule 12(b)(6) motion for the purpose of determining whether the information triggered inquiry notice. *Staehr*, 547 F.3d at 425-26. Thus, the motion to take judicial notice is granted. However, the documents do not provide sufficient help for, Qantas here; as a matter of law, I cannot find that the press coverage provided Schenker inquiry notice of Qantas violations.

"Inquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct." *Id*. at 427 (citation omitted). To determine whether Schenker was on inquiry notice, I must evaluate whether the "totality of the circumstances," including public media reports, revealed probable illegal activity by Qantas. *Hinds County, Miss. v. Wachovia Bank, N.A.*, 885 F. Supp. 2d 617, 627 (S.D.N.Y. 2012). The news sources (ECF Nos. 39-1, 2, 7-20) submitted by Qantas do not conclusively establish that Schenker was on inquiry notice of Qantas's involvement in the conspiracy. Three articles are post-raid articles that do not name Qantas; six are pre-raid articles that discuss increased surcharges or the fuel index, but do not mention a potential conspiracy or Qantas; four mention Qantas and the surcharges but make no allegation of a conspiracy; two discuss a potential conspiracy but do not name Qantas.[3] Only one mentions Qantas as a carrier

---

[3]   *See* ECF Nos. 39-5, 39-6, 39-14 (post-raid articles naming carriers other than Qantas); 39-16, 39-17, 39-18, 39-19, 39-20, 39-24 (do not mention conspiracy or Qantas); 39-12, 39-13, 39-21, 39-22 (discussing

which had imposed surcharges and also states "anti-trust issues come into play" when noting that

a Polar Air Cargo official identified the Lufthansa index as a tool the industry used as a

benchmark.  *See* ECF No. 39-23 (Airline Business article, Oct. 2004).  While notice of the

conspiracy in the airline industry generally and the fact that Qantas charged increased surcharges

may or may not have been sufficient for Schenker to infer that Qantas was involved in the

conspiracy, I cannot say as a matter of law that this provided inquiry notice.  *See, e.g.*,

*Staehr*, 547 F.3d at 428 (the article "was not enough to create a duty to inquire.  On this record,

we cannot say as a matter of law that an ordinary [plaintiff] who stumbled across this article

would have inferred that [the defendant] was involved at all.  That is a far cry from the District

Court's conclusion that it was 'especially likely' that [the defendant] was implicated by the

article.").  Indeed, Qantas's cited authority makes clear that the "suggestion of probable claims

necessary to trigger inquiry notice *must also be defendant-specific*[,]" and none of the

submissions clearly suggest Qantas's potential involvement in the conspiracy, thus triggering

inquiry notice.  *Hinds County, Mississippi v. Wachovia Bank N.A. (Hinds V)*, 885 F. Supp. 2d

617, 631 (S.D.N.Y. 2012) (emphasis added).

B.     *The Statute of Limitations*

          Qantas's motion to dismiss is based on the disputed factual contention that

Schenker's claim accrued no later than February 15, 2006, the day the press first reported that air

cargo carriers other than Qantas were raided by antitrust enforcers around the world.  Def. Br. 1.  By

running the statute of limitations from this date, Qantas argues that Schenker's complaint needed to

have been filed by June 1, 2014 to be timely.  Def. Br. 7, at n.17.

---

soaring oil costs and Qantas's surcharges but no mention of conspiracy); 39-11 (February 2000 report about the
European Commission's investigation of Europe's major airlines); 39-15(February 2003 Journal of Commerce
article mentioning potential conspiracy but not Qantas).

As a preliminary matter, Qantas concedes that the statute of limitations was tolled from February 8, 2007, the date Qantas was named as a defendant in the *Air Cargo* Class Action complaint, until May 24, 2011, the date on which Schenker opted out of Qantas's settlement with the class. *See* Def. Br. 6. Thus, the question here is when the statute of limitations began to run. Qantas argues that it began to run on the date of the raids on air carriers (February 15, 2006), making Schenker's August 7, 2014 filing of the complaint 68 days late. *See* Def. Br. 7, at n.17.

        1.    *Fraudulent Concealment*

Quantas argues that Schenker has failed to adequately plead fraudulent concealment past February 15, 2006, which would have tolled the statute of limitations. *See New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (the statute of limitations for an antitrust violation is tolled if plaintiff can show fraudulent concealment). "[T]he purpose of the fraudulent-concealment doctrine is to prevent a defendant from concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *Id.* (citing *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874) (internal quotations omitted)).

Schenker, on the other hand, argues that Qantas's and its co-conspirators' involvement in the conspiracy was fraudulently concealed until August 2006, when Qantas was publicly identified as a member of the conspiracy.[4] *See* Pl. Opp. Br. 7, 10. To establish fraudulent concealment, Schenker must plead: (1) that the defendant concealed the existence of the antitrust violation from it, (2) that plaintiff remained in ignorance of the violation until sometime within the four-year antitrust statute of limitations, and (3) that his continuing

---

[4]      August 17, 2006 is the date on which Qantas announced it was under investigation by the DOJ. Def. Br. 20.

ignorance was not the result of a lack of diligence on his part." *Hendrickson Bros., Inc.*, 840 F.2d at 1083 (citations omitted).

At the Rule 12(b)(6) stage, "a plaintiff need only plead fraudulent concealment, as opposed to affirmatively proving it." *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2011 WL 7053807, at *50 (E.D.N.Y. Jan. 4, 2011), *adopted* No. 08-cv-42 (JG)(VVP), 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (citation omitted). In alleging fraud, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Benchmark Export Servs. v. China Airlines Ltd.*, No. 06-MDL-1775 (JG)(VVP), 2010 WL 10947344, at *19 (E.D.N.Y. Sept. 22, 2010), *adopted* No. 10-CV-639 (JG)(VVP) (E.D.N.Y. Nov. 1, 2010) (citation omitted).

The first prong requires Schenker to show either that Qantas "took affirmative steps to prevent [the plaintiff's] discovery of the conspiracy, or that the conspiracy itself was inherently self-concealing." *In re Nine West Shoes Antitrust Litig*, 80 F.Supp.2d 181, 192 (S.D.N.Y. 2000) (citing *Hendrickson Bros.*, 840 F.2d at 1083). Schenker has adequately pleaded that Qantas concealed its involvement in the conspiracy. With regard to affirmative acts of concealment, the complaint alleges a number of actions that Qantas and its co-conspirators undertook to conceal the conspiracy. Specifically, it alleges that they engaged in secret meetings and private communications, agreed that they would not publicly reveal the acts they undertook in furtherance of the conspiracy, staggered pricing changes to mask their price coordination and avoid detection, publicly distributed misleading "fuel price indexes," and publicly announced false and pretextual reasons for artificially inflated prices. *See* Compl. ¶¶ 69, 70, 85, 96, 159, 163, 194 & 208. Schenker further notes that price-fixing conspiracies, such as the one here, are by their very nature self-concealing. Pl. Opp. Br. 10; *see In re Nine West Shoes*, 80 F. Supp. 2d

at 193 (citing *Hendrickson Bros., Inc.*, 840 F.2d at 1083) (price-fixing conspiracies are self-concealing so plaintiffs are not required to plead defendants' affirmative actions to prevent discovery of price-fixing claim).

Schenker must also plead that it was unaware of its claims until after April 26, 2006, four years (after tolling is taken into account) before it filed its complaint.  Qantas argues that because Schenker's complaint states that it "did not discover and could not have discovered . . . the existence of the conspiracy alleged [in the complaint] until February 2006 at the earliest[,]" Compl. ¶ 191, Schenker is barred from asserting that it was ignorant of its claims past this date.  While the complaint states that February 2006 is when the DOJ investigations became public, it does not admit that Schenker actually knew of its claims at that time, but rather that it would have been the earliest time possible that it could have learned of its claims.  As discussed above, Schenker has pleaded that it was incapable of uncovering the conspiracy due to Qantas's and its co-conspirators' deceptive practices and secret efforts to conceal the price-fixing conspiracy.  Compl. ¶¶ 204-09.  Schenker also pleaded that the increased fuel-surcharge remained in place through approximately mid-October 2006, and that Schenker continued to pay the inflated prices during this period – permitting the inference that it did not suspect Qantas was involved in the conspiracy.  *See* Compl. ¶ 144.  I do not find any factual allegations in the complaint that undermine Schenker's claim that it lacked knowledge of its potential antitrust claim that allow me to conclude, as a matter of law, that it had knowledge of Qantas's violations.  *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, No. 11–cv–564 (JG), 2014 WL 5394950, at *2 (E.D.N.Y. Sept. 16, 2014) (denying motion to dismiss and reserving determination of plaintiff's knowledge of anti-trust claim for summary judgment stage).

Qantas cites this Court's opinion in *Benchmark* for the proposition that the DOJ raids and investigations raised a "red flag" and should have triggered some inquiries on Schenker's part.  *See* Def. Br. 11 (citing *Benchmark*, 2010 WL 10947344, at *18).  *Benchmark*, however, found that parallel conduct (specifically, the announcement of the surcharge increases), was not enough to trigger the duty to inquire.  *Benchmark*, 2010 WL 10947344, at *18 (citations omitted).  While the February 2006 investigations of other airline carriers might be a bigger red flag than the parallel conduct in *Benchmark*, it cannot be said as a matter of law that they triggered the duty to inquire as to the potential involvement of an airline carrier that was not under DOJ investigation at the time. *See id*. (citations omitted).

Lastly, to establish fraudulent concealment, Schenker must show that its ignorance was not due to lack of diligence.  "General assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the [] pleading requirements."  *Masters v. Wilhemina Model Agency, Inc.*, No. 02-cv-4911 (HB), 2003 WL 1990262, at *2 (S.D.N.Y. Apr. 29, 2003) (citation omitted) (alterations in original).  However, Schenker asserts that any lack of diligence on its part was due to "the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination."  Compl. ¶ 206.  Courts within the Second Circuit have held that plaintiffs are not required to allege affirmative inquiries when such inquiries would be futile.  *See e.g.*, *In re Nine West*, 80 F. Supp. 2d at 193 (plaintiff alleged due diligence by pleading that it "could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendants"); *United States S.E.C. v. Power*, 525 F. Supp. 2d 415, 426 (S.D.N.Y. 2007) (allegations of affirmative acts of fraudulent concealment "suffices to satisfy the diligence

requirement"). Here, the complaint alleges that Qantas and its co-conspirators provided false business justifications for the artificially inflated services that deliberately conditioned Schenker reasonably to believe that the air cargo industry was competitive and that the prices charged were competitive prices. Compl. ¶¶ 198-99, 204 & 208. Schenker pleads that it believed Qantas's false and misleading explanations for the fuel surcharge increases, causing it to accept the increases without further inquiry. Compl. ¶ 204. The complaint also alleges that Schenker would not have been able to uncover the conspiracy even if it suspected foul play because it did not have access to the financial information necessary to uncover the artificially inflated prices. *Id*. These allegations are adequate grounds for showing that Qantas engaged in deceptive practices and that attempts to exercise due diligence would have been futile. *See Benchmark*, 2010 WL 10947344, at *18 (freight forwarders pleaded fraudulent concealment despite the fact that "plaintiffs do not assert any specific inquiries they made, but rather that any inquiries would have been futile in any case"); *In re Nine West*, 80 F.Supp.2d at 193 (plaintiffs sufficiently alleged due diligence by pleading that they could not have discovered the conspiracy through the exercise of due diligence because of the affirmative, deceptive measures the defendants undertook to conceal the conspiracy).

In sum, Schenker has alleged a fraudulent concealment with enough particularity to withstand the motion to dismiss.

2.      *Continuing Conspiracy*

Even if Schenker had not adequately pleaded fraudulent concealment, the complaint includes sufficient allegations to establish a continuing conspiracy past February 15, 2006. "A continuing conspiracy or continuing violation occurs when 'the violator's actions consist not only of some definitive act in violation of the antitrust laws, but also of a series of

subsequent acts that cause further injury to the plaintiff.'" *Benchmark*, 2010 WL 10947344, at *13 (citation omitted).  A continuing violation in a price-fixing conspiracy is one "that brings about a series of unlawfully high priced sales over a period of years, [and] each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1984) (internal quotation marks and citation omitted).   Here, Schenker alleged that Qantas's participation in anticompetitive price-fixing "lasted well beyond February 2006."  Compl. ¶ 141.  Specifically, the complaint alleges that Qantas and United Airlines employees met to discuss pricing in May 2006, that Qantas imposed inflated surcharges between May 3 and May 11, 2006, and that it charged inflated prices through mid-October 2006.  Compl. ¶¶ 141-44.  These allegations establish injury as late as October 2006, at which point the limitations period would begin to run for those acts.  *See Benchmark*, at *13-15.

The continuing violation exception only allows Schenker to recover for injuries that occurred within the limitations periods for the subsequent overt acts.  *See Klehr*, 521 U.S. at 189; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act").  But I need not address the issue of recoverable damages before April 24, 2006 because, as discussed above, Schenker has alleged that Qantas fraudulently concealed the conspiracy until at least August 17, 2006 (the date it announced it was under investigation by the DOJ), tolling the statute of limitations until that time.

CONCLUSION

For the reasons above, the motion to take judicial notice of Qantas's submissions is granted, and the motion to dismiss the complaint is denied.  I need not address Schenker's contentions that the motions should also be denied based on the relation back of the class action complaint naming Qantas as a defendant to the original class action complaint, and because tolling is suspended under 15 U.S.C. 16(i).

So ordered.


John Gleeson, U.S.D.J.


Dated: April 23, 2015
       Brooklyn, New York

14